# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE, on behalf of JOHN DOE, her minor child, | Hon. Joseph H. Rodriguez, U.S.D.J. Hon. Sharon A. King, U.S.M.J. |
| Plaintiffs, | Docket No. 1:21-cv-11189-JHR-SAK |
| v. | Civil Action |
| MARTY SMALL, SR., et al., | **DOCUMENT FILED ELECTRONICALLY** |
| Defendants. | Motion Return Date: August 2, 2021 |

---

BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) ON BEHALF OF DEFENDANTS ATLANTIC CITY BOARD OF EDUCATION, PAUL A. SPAVENTA, AND BARRY CALDWELL

---

Benjamin H. Zieman, Esq.
On the Brief

Benjamin H. Zieman, Esq. (082712013)
ANDERSON & SHAH LLC
457 Haddonfield Road, Suite 120
Cherry Hill, NJ 08002
856-393-2371 (p); 856-528-1700 (f)
bzieman@andersonshahlaw.com
*Attorney for Defendants Atlantic City Board of Education, former Superintendent Paul A. Spaventa, and current Superintendent Barry Caldwell*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................iii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................4

STANDARD OF REVIEW....................................................................................8

ARGUMENT

  POINT I

    THE TITLE IX CLAIM IN COUNT 1 SHOULD BE
    DISMISSED FOR FAILURE TO STATE A CLAIM ...................................9

      A. PLAINTIFF CANNOT MAINTAIN A TITLE IX CLAIM
        AGAINST INDIVIDUALS OR RECOVER PUNITIVE
        DAMAGES AS A MATTER OF LAW ..................................................10

      B. PLAINTIFF CANNOT MAINTAIN A TITLE IX CLAIM
        BASED ON ANY OFF-CAMPUS ABUSE ..........................................11

      C. PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE
        THAT AN "APPROPRIATE PERSON" HAD "ACTUAL
        KNOWLEDGE" OF ANY ON-CAMPUS SEXUAL
        ABUSE ..................................................................................................12

  POINT II

    ALL § 1983 CLAIMS AGAINST THE BOARD IN COUNTS 2
    AND 3 SHOULD BE DISMISSED FOR FAILURE TO STATE
    A CLAIM. .....................................................................................................19

      A. THE FAILURE TO SUPERVISE CLAIM AGAINST THE
        BOARD IN COUNT 3 SHOULD BE DISMISSED FOR
        FAILURE TO STATE A CLAIM...........................................................25

B. THE FAILURE TO TRAIN CLAIM AGAINST THE BOARD IN COUNT 3 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.............................................................25

C. THE FAILURE TO INVESTIGATE, INTERVENE, AND DISCIPLINE CLAIMS AGAINST THE BOARD IN COUNT 2 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ....................................................................28

POINT III

ALL § 1983 CLAIMS AGAINST SPAVENTA AND CALDWELL IN COUNTS 2 AND 3 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ..................................30

POINT IV

ALL COMMON LAW CLAIMS SEEKING TO HOLD THE BOARD VICARIOUSLY LIABLE FOR FRAZIER'S ALLEGED ABUSE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ..................................................................33

POINT V

ALL NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS AGAINST SPAVENTA AND CALDWELL IN COUNTS 5 AND 6 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ......................................................................37

POINT VI

ALL IIED CLAIMS AGAINST SPAVENTA AND CALDWELL SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ........................................................40

CONCLUSION....................................................................42

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                   <u>**Page**</u>

*A.B. v. Vineland Bd. of Educ.*,
 2018 U.S. Dist. LEXIS 107486 (D.N.J. Jun. 27, 2018) ............................................ 41

*A.B. v. Vineland Bd. of Educ.*,
 2019 U.S. Dist. LEXIS 93126 (D.N.J. Jun. 4, 2019) ................................................ 31

*A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*,
 372 F.3d 572 (3d Cir. 2004) ...................................................................................... 31

*A.W. v. Humble Indep. Sch. Dist.*,
 25 F. Supp. 3d 973 (S.D.Tex. 2014) .......................................................................... 16

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
 526 U.S. 40 (1999) ..................................................................................................... 20

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ..........................................................................................9, 30, 39

*Barkes v. First Corr. Med., Inc.*,
 766 F.3d 307 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*,
 575 U.S. 822 (2015) .................................................................................................... 31

*Barnes v. Gorman*,
 536 U.S. 181 (2002) .................................................................................................... 11

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,
 520 U.S. 397 (1997) ...........................................................................................21, 23, 24

*Beck v. City of Pittsburgh*,
 89 F.3d 966 (3d Cir. 1996) ......................................................................................... 29

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................... 9

*Belt v. GEO Grp. Inc.*,
 2007 U.S. Dist. LEXIS 25114 (E.D.Pa. Apr. 4, 2007) .............................................. 41

*Berg v. Cnty. of Allegheny*,
    219 F.3d 261 (3d Cir. 2000) ............................................................................ 22

*Bernard v. E. Stroudsburg Univ.*,
    700 Fed. Appx. 159 (3d Cir. 2017) ............................................................... 15

*Black v. Indiana Area Sch. Dist.*,
    985 F.2d 707 (3d Cir. 1993) ........................................................................... 21

*Bostic v. Smyrna Sch. Dist.*,
    418 F.3d 355 (3d Cir. 2005) .....................................................................14, 18

*Brown v. City of Pittsburgh*,
    586 F.3d 263 (3d Cir. 2009) ........................................................................... 21

*Brown v. Grabowski*,
    922 F.2d 1097 (3d Cir. 1990) ........................................................................ 29

*Buckelew v. Grossbard*,
    435 A.2d 1150 (N.J. 1981) ............................................................................. 37

*Buckley v. Trenton Sav. Fund Soc.*,
    544 A.2d 857 (N.J. 1988) ............................................................................... 41

*Bullock v. Ancora Psychiatric Hosp.*,
    2011 U.S. Dist. LEXIS 92307 (D.N.J. Aug. 18, 2011) ............................... 40

*Butler v. Mt. View Sch. Dist.,*
    2013 U.S. Dist. LEXIS 120867 (M.D.Pa. Aug. 26, 2013) .......................... 15

*Caltavuturo v. City of Passaic*,
    307 A.2d 114 (N.J. Super. Ct. App. Div. 1973) ......................................... 38

*Carswell v. Borough of Homestead*,
    381 F.3d 235 (3d Cir. 2014) .....................................................................24, 28

*Carter v. City of Philadelphia*,
    181 F.3d 339 (3d Cir. 1999) .....................................................................23, 32

*Chancellor v. Pottsgrove Sch. Dist.*,
    501 F. Supp. 2d 695 (E.D.Pa. 2007) .......................................................14, 18

iv

*Chavarriaga v. N.J. Dep't of Corr.*,
  806 F.3d 210 (3d Cir. 2015) ............................................................... 31

*City of Canton v. Harris*,
  489 U.S. 378 (1989) ................................................................... 23, 24

*City of Newport v. Fact Concerts, Inc.*,
  453 U.S. 247 (1981) ................................................................... 11, 30

*Collins v. City of Harker Heights*,
  503 U.S. 115 (1992) ........................................................................ 21

*Connick v. Thompson*,
  463 U.S. 51 (2011) ..................................................................... 23, 24

*Cosgrove v. Lawrence*,
  520 A.2d 844 (N.J. Super. Ct. Law Div. 1986), *aff'd*, 522 A.2d 483 (N.J.
  Super. Ct. App. Div. 1987) ............................................................... 35

*D.V. v. Pennsauken Sch. Dist.*,
  2013 U.S. Dist. LEXIS 111045 (D.N.J. Aug. 7, 2013) ............................... 15

*Davis v. Devereaux Found.*,
  37 A.3d 469 (N.J. 2012) ............................................................ 34, 35, 36

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ................................................................... passim

*Dawn L. v. Greater Johnstown Sch. Dist.*,
  586 F. Supp. 2d 332 (W.D.Pa. 2008) ............................................... 10, 11

*Dawn L. v. Greater Johnstown Sch. Dist.*,
  614 F. Supp. 2d 555 (W.D.Pa. 2008) .................................................... 12

*Di Cosala v. Kay*,
  450 A.2d 508 (N.J. 1982) ................................................................. 34

*Doe v. D'Agostino*,
  367 F. Supp. 2d 157 (D. Mass. 2005) .............................................. 16, 18

*Doe v. Sch. Bd. of Broward Cnty.*,
    604 F.3d 1248 (11th Cir. 2010) .............................................................. 12, 14

*Douglas v. Brookville Area Sch. Dist.*,
    836 F. Supp. 2d 329 (W.D.Pa. 2011) ....................................................... passim

*E.K. v. Massaro*,
    2013 U.S. Dist. LEXIS 144579 (D.N.J. Oct. 7, 2013) ......................... 10, 11

*Emerson v. Thiel Coll.*,
    296 F.3d 184 (3d Cir. 2002) ........................................................................ 10

*Escue v. N. Okla. Coll.*,
    450 F.3d 1146 (10th Cir. 2006) .................................................................. 15

*Fitzgerald v. Barnstable Sch. Comm.*,
    555 U.S. 246 (2009) ...................................................................................... 10

*Flood v. Sherk*,
    400 F. Supp. 3d 295 (W.D.Pa. 2019) ......................................................... 29

*Floyd v. Waiters*,
    171 F.3d 1264 (11th Cir. 1999) .................................................................. 13

*Forrest v. Parry*,
    930 F.3d 93 (3d Cir. 2019) .......................................................................... 22

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
    503 U.S. 60 (1992) ........................................................................................ 10

*Frugis v. Bracigliano*,
    827 A.2d 1040 (2003) ................................................................................... 38

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ................................................................................ 13, 14

*Gjeka v. Del. Cnty. Cmty. Coll.*,
    2013 U.S. Dist. LEXIS 73054 (E.D.Pa. May 23, 2013) ........................... 15

*Gould Elecs., Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000) .......................................................................... 8

*Hoag v. Brown*,
   935 A.2d 1218 (N.J. Super. Ct. App. Div. 2007) ........................................... 33

*In re Vertex Pharms., Inc. Sec. Litig.*,
   357 F. Supp. 2d 343 (D.Mass. 2005) ............................................................. 28

*Janowski v. City of N. Wildwood*,
   259 F. Supp. 3d 113 (D.N.J. 2017) ................................................................ 30

*Jerkins v. Anderson*,
   922 A.2d 1279 (N.J. 2007) ......................................................................38, 40

*Jett v. Dallas Indep. Sch. Dist.*,
   491 U.S. 701 (1989) ...................................................................................... 23

*Johnson v. Elk Lake Sch. Dist.*,
   283 F.3d 138 (3d Cir. 2002) .......................................................................... 29

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
   926 F.2d 1406 (3d Cir. 1991) .......................................................................... 9

*Kline v. Mansfield*,
   255 Fed. Appx. 624 (3d Cir. 2007) ................................................................ 26

*Kobrick v. Stevens*,
   2017 U.S. Dist. LEXIS 141692 (M.D.Pa. Sept. 1, 2017) .........................16, 18

*Kranson v. Valley Crest Nursing Home*,
   755 F.2d 46 (3d Cir. 1985) ............................................................................ 30

*L.E. v. Plainfield Pub. Sch. Dist.*,
   194 A.3d 105 (N.J. Super. Ct. App. Div. 2018), *certif. denied*, 202 A.3d
   621 (2019) ...................................................................................................... 38

*L.H. v. Pittston Area Sch. Dist.*,
   130 F. Supp. 3d 918 (M.D.Pa. 2015) ............................................................. 42

*Lockhart v. Willingboro High Sch.*,
   170 F. Supp. 3d 722 (D.N.J. 2015) ...........................................................25, 26

*Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*,
2015 U.S. Dist. LEXIS 139907 (W.D.Pa. Oct. 14, 2015) ........................................... 27

*M.S. v. Susquehanna Twp. Sch. Dist.*,
43 F. Supp. 3d 412 (M.D.Pa. 2014) ....................................................22, 29, 42

*Mark v. Borough of Hatboro*,
51 F.3d 1137 (3d Cir. 1995) ..................................................................... 21

*Mason v. Sportsman's Pub*,
702 A.2d 1301 (N.J. Super. Ct. App. Div. 1997) ........................................ 35

*Mavrikidis v. Petullo*,
707 A.2d 977 (N.J. 1998) ......................................................................... 36

*McKinney v. Mathew*,
2016 N.J. Super. Unpub. LEXIS 1543 (N.J. Super. Ct. App. Div. Jun.
29, 2016).............................................................................................39, 40

*Melnick v. Scott Twp.*,
2006 U.S. Dist. LEXIS 8678 (M.D.Pa. Feb. 16, 2006) .............................. 41

*Merman v. City of Camden*,
824 F. Supp. 2d 581 (D.N.J. 2010) ....................................................22, 29

*Monaco v. City of Camden*,
2018 U.S. Dist. LEXIS 30825 (D.N.J. Apr. 14, 2008) .............................. 29

*Monaghan v. Holy Trinity Church*,
646 A.2d 1130 (N.J. Super. Ct. App. Div. 1994) ........................................ 37

*Monell v. Dep't of Social Servs.*,
436 U.S. 658 (1978) ................................................................................. 21

*Montgomery v. DeSimone*,
159 F.3d 120 (3d Cir. 1998) ..................................................................... 29

*P.H. v. Sch. Dist. of Kansas City*,
265 F.3d 653 (8th Cir. 2001) ..............................................................16, 18

*Page ex rel. Page v. Sch. Dist. of Philadelphia,*
    45 F. Supp. 2d 457 (E.D.Pa. 1999) ............................................................... 42

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) ..................................................................................... 23

*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
    998 F.2d 1192 (3d Cir. 1993) ...................................................................... 28

*Phillips v. Cnty. of Allegheny,*
    515 F.3d 224 (3d Cir. 2008) ........................................................................ 20

*Phillips v. Nw. Reg'l Commc'ns,*
    667 F. Supp. 2d 555 (W.D.Pa. 2009) .......................................................... 36

*Polzo v. Cnty. of Essex,*
    960 A.2d 375 (2008) ..................................................................................... 37

*Reese v. Jefferson Sch. Dist.,*
    208 F.3d 736 (9th Cir. 2000) ................................................................. 15, 17

*Reitz v. Cnty. of Bucks,*
    125 F.3d 139 (3d Cir. 1997) ........................................................................ 23

*Romero v. City of New York,*
    839 F. Supp. 2d 588 (E.D.N.Y. 2012) ................................................... 16, 18

*Rosa H. v. San Elizario Indep. Sch. Dist.,*
    106 F.3d 648 (5th Cir. 1997) ................................................................. 13, 16

*Samuelson v. Or. State Univ.,*
    162 F. Supp. 3d 1123 (D.Or. 2016) ....................................................... 12, 17

*Schmidt v. Skolas,*
    770 F.3d 241 (3d Cir. 2014) ........................................................................ 27

*Sines v. Darling Ingredients, Inc.,*
    2020 U.S. Dist. LEXIS 153856 (D.N.J. Aug. 25, 2020) .............................. 37

*Smith v. Mensinger,*
    293 F.3d 641 (3d Cir 2002) ........................................................................ 32

*Soper v. Hoben,*
  195 F.3d 845 (6th Cir. 1999) ................................................................ 15

*Steinberg v. Sahara Sam's Oasis, LLC,*
  142 A.3d 742 (N.J. 2016) ..................................................................... 38

*Stoneking v. Bradford Area Sch. Dist.,*
  882 F.2d 720 (3d Cir. 1989) ............................................................21, 31

*Thomas v. Cumberland Cnty.,*
  749 F.3d 217 (3d Cir. 2014) ................................................................. 24

*Thompson v. Ferguson,*
  2020 U.S. Dist. LEXIS 245017 (E.D.Pa. Dec. 31, 2020) ......................... 28

*Tice v. Cramer,*
  627 A.2d 1090 (N.J. 1993) ................................................................... 33

*United States v. Silveus,*
  542 F.3d 993 (3d Cir. 2008) ................................................................. 28

*Walker v. City of New York,*
  974 F.2d 293 (2d Cir. 1992) ................................................................. 25

*Warren v. Reading Sch. Dist.,*
  278 F.3d 163 (3d Cir. 2002) ............................................................13, 16

*West v. Atkins,*
  487 U.S. 42 (1988) .............................................................................. 20

*Whitcraft v. Twp. of Cherry Hill,*
  974 F. Supp. 392 (D.N.J. 1996) ............................................................ 30

*Williams v. Bd. of Regents,*
  477 F.3d 1282 (11th Cir. 2007) .......................................................15, 17

*Williams v. Pennridge Sch. Dist.,*
  2018 U.S. Dist. LEXIS 205957 (E.D.Pa. Dec. 6, 2018)......................12, 17

*Young v. Pleasant Valley Sch. Dist.,*
  2010 U.S. Dist. LEXIS 119 (M.D.Pa. Jan. 4, 2010)................................. 10

*Zelnick v. Morristown-Beard Sch.*,
137 A.3d 560 (N.J. Super. Ct. Law Div. 2015) ............................................................ 37

## **Statutes**

42 U.S.C. § 1983 ....................................................................................................... 20

N.J. Stat. Ann. § 18A:11-1 ....................................................................................... 31

N.J. Stat. Ann. § 18A:17-20 ...................................................................................... 32

N.J. Stat. Ann. § 59:1-3 ............................................................................................ 36

N.J. Stat. Ann. § 59:2-2(a) ....................................................................................... 33

N.J. Stat. Ann. § 9:6-8.10 ......................................................................................... 29

## PRELIMINARY STATEMENT

Plaintiff John Doe claims that former substitute teacher Kayan Frazier sexually abused him both at his elementary school and at various private residences. Frazier's conduct was reprehensible, and he is being held to account criminally. But Frazier's misconduct does not give rise to a viable cause of action against the Atlantic City Board of Education, former Superintendent Paul A. Spaventa, or current Superintendent Barry Caldwell, who are now forced to defend against an array of statutory, constitutional, and common law claims that Plaintiff (through his mother) has asserted against them and against Principal La'Quetta Small (who has separate counsel). The claims against the Board, Spaventa, and Caldwell suffer from a multitude of analytical infirmities, so almost all of them should be dismissed for failure to state a claim.

Plaintiff's Title IX "hostile educational environment" claim in Count 1 is rife with problems. Under Title IX, a recipient of federal funds can be held liable if a person with authority to institute corrective measures on the recipient's behalf has "actual knowledge" of sexual harassment in the recipient's programs and then exhibits "deliberate indifference" in a way that causes the victim to undergo further harassment. But here, the case law precludes Plaintiff from holding the Board liable for any off-campus abuse. And with respect to the on-campus abuse alleged in the complaint, Plaintiff has not plausibly shown that the Board itself discriminated against him because the complaint does not say that anyone with authority to institute corrective measures on behalf of the Board (a) had "actual knowledge" of any on-campus abuse, or (b)

1

exhibited "deliberate indifference" in a way that caused him to undergo further on-campus abuse. Lastly, Plaintiff cannot maintain his Title IX claim against Spaventa or Caldwell in their individual capacities or seek punitive damages from the Board.

The array of § 1983 "failure to" claims against the Board in Counts 2 and 3 should also be tossed. All these claims require proof that a Board policymaker exhibited deliberate indifference to Plaintiff's constitutional rights. A "pattern" of prior constitutional violations is ordinarily required to demonstrate that level of culpability, as it puts policymakers on notice of a problem that needs correction. But in rare instances, it is also possible to maintain a "single incident" claim where the unconstitutional consequences of the "failure" at issue are "highly predictable."

Plaintiff's "failure to" claims do not plausibly satisfy either standard. For example, the complaint does not allege any other similar constitutional violations anywhere in the Atlantic City School District, let alone a "pattern" caused by the "training" and "supervision" deficiencies alleged in the complaint. Next, Plaintiff cannot maintain a "failure to supervise" claim based on the "single incident" theory because sexual abuse is not a "highly predictable" consequence of leaving a teacher unsupervised with a student. Additionally, although Plaintiff claims the Board failed to train Frazier's *co-workers* to detect signs of sexual abuse in students and to report signs or allegations of same, Plaintiff cannot maintain a "failure to train" claim based on the "single incident" theory because (a) the unlawfulness of child sexual abuse is obvious, and (b) such a claim is too attenuated from the underlying injury. Further, the failure to

"intervene" and "discipline" claims should be dismissed because the complaint does not allege that any Board policymakers were deliberately indifferent to a known threat or likelihood of injury to Plaintiff or were aware of Frazier's alleged abuse while it was ongoing. Lastly, Plaintiff cannot sustain any failure to "investigate" and "discipline" claims based on conduct that may have preceded Frazier's abuse of him because the complaint does not allege that the Board had a history of failing to adequately address any complaints of sexual abuse committed by Frazier or any other employees.

Additionally, all § 1983 claims against Spaventa and Caldwell in Counts 2 and 3 should be dismissed for four reasons. First, the official capacity claims are needlessly duplicative of the claims against the Board itself. Second, Plaintiff has failed to plausibly show how Spaventa and Caldwell participated in violating Plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in Frazier's alleged constitutional violations. Third, Spaventa and Caldwell cannot be held liable for maintaining a harm-causing policy or practice with deliberate indifference to the consequences. Superintendents like Spaventa and Caldwell are not policymakers, and any "failure to" claims against them would fail for the same reasons discussed above with respect to the Board. Fourth, Plaintiff cannot maintain a "failure to intervene" claim against Spaventa or Caldwell because the complaint does not allege they failed to put a stop to any sexual abuse that was happening right in front of them.

Lastly, most of the common law claims against Defendants should be dismissed. For instance, in Counts 5 through 8, Plaintiff pleads an array of common law claims

against Frazier in an apparent effort to hold the Board vicariously liable for his alleged misconduct. But Frazier was clearly acting outside the scope of his employment when he allegedly abused Plaintiff at school, so the Board cannot be held vicariously liable as a matter of law. Next, in Counts 5 and 6, Plaintiff pleads a series of negligence and gross negligence claims against all Defendants, including Spaventa and Caldwell. But these claims are not plausible because the complaint does not plead any facts showing how Spaventa or Caldwell breached a duty to Plaintiff. Finally, in Count 8, Plaintiff pleads a claim for intentional infliction of emotional distress ("IIED") against all Defendants, including Spaventa and Caldwell. But again, this claim is not plausible because the complaint does not allege that these individuals engaged in any conduct whatsoever, let alone conduct that could be characterized as extreme and outrageous. Instead, Plaintiff alleges that Spaventa and Caldwell failed to act, which is simply insufficient.

Thus, this Court should grant this motion and dismiss (a) all claims against Spaventa and Caldwell, and (b) all claims against the Board except for the vicarious liability components of Counts 5 and 6 based on Principal Small's alleged negligence.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

This matter arises out of a series of incidents of child sexual abuse that allegedly occurred at the Pennsylvania Avenue School in Atlantic City and at various private residences in both Atlantic City and Somers Point. *See generally* Dkt. No. 1, Complaint ("Compl."). Plaintiff John Doe ("Plaintiff") was a student at that elementary school, and Plaintiff Jane Doe ("Jane") is his mother. *See id.* ¶¶ 7, 32. Defendants include: (1)

Marty Small, Sr., in both his official capacity as Mayor of Atlantic City and individually; (2) La'Quetta Small, in both her official capacity as former Principal of the Pennsylvania Avenue School and individually; (3) Barry Caldwell, in his official capacity as current Superintendent of the Atlantic City Board of Education; (4) Paul A. Spaventa, in his official capacity as former Superintendent of the Atlantic City Board of Education; (5) the Atlantic City Board of Education ("Board"); and (6) Kayan Ahmed Frazier individually. *See id.* ¶¶ 8-14. The complaint refers to the Board, Spaventa, Caldwell, and Principal Small collectively as the "Atlantic City School District Defendants." *Id.* ¶ 13.

In March 2015, the Board hired Frazier, who is Principal Small's cousin, as a substitute teacher. *See* Compl. ¶¶ 28-29. At that time, Frazier lived with Principal Small and her husband, Mayor Small, and he was eventually assigned to the Pennsylvania Avenue School, where La'Quetta Small was principal. *See id.* ¶¶ 29-30. In "early 2016," Frazier met Plaintiff at that school and "took a particular interest" in him. *Id.* ¶¶ 32, 34. For instance, Frazier would "spend[] a disproportionate amount of time with [Plaintiff] as compared to other students" and would "take [him] out of class for walks in the hallway so that they could talk privately." *Id.* ¶ 35. In time, Frazier began taking Plaintiff to "the school library, ostensibly to chat." *Id.* ¶ 37. The complaint alleges Frazier used the "privacy" of that setting to begin "sexually assaulting" Plaintiff. *Id.*

In the spring of 2016, Frazier befriended Jane "so that he could be closer to [Plaintiff]." Compl. ¶¶ 39-41. After developing "some degree of trust in Frazier," Jane allowed Frazier to socialize with Plaintiff outside of school. *Id.* ¶¶ 43-48. For instance,

in "May or June of 2016," Jane allowed Frazier to take Plaintiff to the movies and to Chuck E. Cheese with Principal Small's son. *Id.* ¶ 43. That fall, Jane allowed her son to attend a "sleepover" Frazier was hosting "with his cousins who were roughly [Plaintiff's] age." *Id.* ¶¶ 46-47. After that first sleepover, which "concluded without apparent incident," Jane allowed Plaintiff "to spend more time at Frazier's house, with sleepovers becoming more regular." *Id.* ¶ 48. The abuse seemingly continued for an unknown period until Jane "prohibited Frazier from seeing [Plaintiff] and ended contact with Frazier." *Id.* ¶¶ 49-52. Jane took that action after she learned Frazier had gone against her wishes and told Plaintiff his father had passed. *See id.* ¶¶ 51-52.

This is a good point to talk about the substantively and temporally inconsistent allegations against the Board and its personnel. *See* Compl. ¶¶ 72-83. Substantively, the complaint alleges Principal Small failed to "question[]" that Frazier "was interacting with [Plaintiff] outside of school hours, and was taking him out and hosting him overnight." *Id.* ¶¶ 72-73. But the complaint also alleges – albeit without saying when or why – that Principal Small "prohibited her son from joining Frazier and [Plaintiff] on their weekend outings." *Id.* ¶ 74. Temporally, the complaint alleges Principal Small became aware of Frazier's off-campus interactions with Plaintiff "approximately in early 2016." *Id.* ¶ 72. But elsewhere, the complaint says these off-campus interactions occurred much later in the year, *i.e.*, between the spring and the fall of 2016. *See id.* ¶¶ 43-48. Unless Principal Small has precognitive abilities, she could not have been aware of Frazier's off-campus interactions with Plaintiff *before* they occurred.

These inconsistencies aside, the complaint goes on to say Principal Small reported Frazier to the Division of Child Protection and Permanency ("DCPP") on February 24, 2017, and to Source4Teachers, "an educational staffing management company that pairs schools with substitute teachers," in February 2017 and on March 15, 2017. Compl. ¶¶ 75-78. But apart from saying Principal Small reported Frazier's "unprofessional" and "inappropriate" conduct to those entities, the complaint does not specify *what* that conduct supposedly entailed. *See id.* Instead, the complaint says Frazier kept working at various schools in the Atlantic City School District for "thirteen (13) days in . . . March 2017" and thus "continued to have access to [Plaintiff] on school grounds and continually sexually abused and exploited [Plaintiff]." *Id.* ¶ 80.

Also in March 2017, the Institutional Abuse Investigation Unit ("IAIU") "began an investigation concerning Frazier's employment as a full-time substitute teacher within the Atlantic City School District, likely as a result of Principal Small's reporting" to DCPP. Compl. ¶ 81. During that investigation, the scope of which seems to shed light on the nature of the "unprofessional" and "inappropriate" conduct Principal Small reported to DCPP, Frazier "admitted that he let [Plaintiff] sleep in his bed" and that he "had been texting [a different] nine-year-old male." *Id.* ¶ 82. Neither Frazier nor Plaintiff disclosed any sexual abuse during the investigation. *See id.* "As a result of this investigation, on April 3, 2017, Frazier was terminated as a substitute teacher." *Id.* ¶ 83.

In October 2018, Jane learned Frazier was working for DCPP, so she "allow[ed] Frazier back into her and [Plaintiff's] life." Compl. ¶¶ 55-56. Based on the sequential

nature of the paragraphs in the complaint (which are otherwise devoid of any dates), it appears Frazier kept abusing Plaintiff "at Frazier's old residence in Atlantic City," at "his then-apartment in Somers Point," and at "the residence of Defendants Marty Small and La'Quetta Small." *Id.* ¶¶ 59-62. In February 2019, the FBI received a tip relating to suspected child pornography. *Id.* ¶¶ 63-64. After an investigation, Frazier was arrested and charged under various federal child pornography statutes. *See id.* ¶¶ 65-69.

On May 13, 2021, Plaintiffs filed an eight-count complaint. Count 1 is a Title IX claim against the "Atlantic City School District Defendants." Count 2 is a § 1983 claim for failure to intervene, investigate, and protect against the "Atlantic City School District Defendants." Count 3 is a § 1983 claim for failure to train and supervise against the "Atlantic City School District Defendants." Count 4 is a claim under 18 U.S.C. § 2255 against Frazier. Count 5 is a negligence claim against all Defendants. Count 6 is a gross negligence/recklessness claim against all Defendants. Count 7 is an assault and battery claim against Frazier. Count 8 is a claim for IIED against Frazier and the "Atlantic City School District Defendants." *See* Compl. ¶¶ 91-153.

## STANDARD OF REVIEW

"In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). The moving party bears the burden of showing that no claim has been presented. *See Kehr Packages,*

*Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

### POINT I

### THE TITLE IX CLAIM IN COUNT 1 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The Title IX claim in Count 1 should be dismissed for three reasons. First, Plaintiff cannot maintain a Title IX claim against the individual "Atlantic City School District Defendants" and cannot recover punitive damages. Second, Plaintiff cannot base his Title IX claim on any alleged off-campus abuse. Third, Plaintiff has failed to plausibly show that an "appropriate person" at his school had "actual knowledge" that Frazier was abusing him at school or that anyone was "deliberately indifferent" to such

abuse in a way that caused Plaintiff to undergo further on-campus abuse. Thus, the Title

IX claim in Count 1 should be dismissed for failure to state a claim.

### A. PLAINTIFF CANNOT MAINTAIN A TITLE IX CLAIM AGAINST INDIVIDUALS OR RECOVER PUNITIVE DAMAGES AS A MATTER OF LAW.

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be

excluded from participation in, be denied the benefits of or be subjected to

discrimination under any educational program or activity receiving Federal financial

assistance." 20 U.S.C. § 1681(a). Title IX is enforceable through an implied private right

of action for damages, *see Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75-76 (1992),

but only against entities receiving federal financial assistance, *not* individuals. *See*

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *Emerson v. Thiel Coll.*, 296

F.3d 184, 190 (3d Cir. 2002); *Young v. Pleasant Valley Sch. Dist.*, 2010 U.S. Dist. LEXIS

119, at *29 (M.D.Pa. Jan. 4, 2010). Additionally, punitive damages cannot be recovered.

*See E.K. v. Massaro*, 2013 U.S. Dist. LEXIS 144579, at *18 (D.N.J. Oct. 7, 2013); *Dawn*

*L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 383 (W.D.Pa. 2008).

Here, two aspects of the Title IX claim in Count 1 can be dismissed in short

order. First, while Count 1 is asserted against the "Atlantic City School District

Defendants" as a group, *see* Compl. p. 17, Plaintiffs cannot hold Spaventa or Caldwell

individually liable. *See Fitzgerald*, 555 U.S. at 257; *Emerson*, 296 F.3d at 190; *Young*, 2010

U.S. Dist. LEXIS at *29.  Second, while the "prayer for relief" indicates that Plaintiffs

are seeking punitive damages, *see* Compl. p.28, Plaintiffs cannot recover such damages

under Title IX. *See E.K.*, 2013 U.S. Dist. LEXIS 144579, at *18; *Dawn L.*, 586 F. Supp. 2d at 383. In fact, Title IX "contains no express remedies," *Barnes v. Gorman*, 536 U.S. 181, 187 (2002), which is fatal to any attempt to obtain punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n.21 (1981) ("The general rule today is that no punitive damages are allowed unless expressly authorized by statute.").

## B. PLAINTIFF CANNOT MAINTAIN A TITLE IX CLAIM BASED ON ANY OFF-CAMPUS ABUSE.

Turning to the Title IX claim against the Board itself, Plaintiff claims he was subjected to "a hostile educational environment." Compl. ¶ 93. To be actionable, the alleged sexual harassment must have taken place "in a context subject to the school district's control." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645 (1999). Relying on the "plain language" of Title IX, which prohibits sexual harassment that occurs "'under' 'the operations of' a funding recipient," the Court in *Davis* held that an entity's liability is confined to "circumstances wherein [it] exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.* (quoting 20 U.S.C. §§ 1681(a), 1687). "Only then can the recipient be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the recipient's programs." *Id.*

From this basic premise, "courts have found that harassment that takes place off of school grounds and/or outside of school hours does not occur under circumstances where the District exercised substantial control over either the harasser or the context in which the harassment occurred." *Williams v. Pennridge Sch. Dist.*, 2018 U.S. Dist.

LEXIS 205957, at *20-21 (E.D.Pa. Dec. 6, 2018) (collecting cases); *see also Samuelson v. Or. State Univ.*, 162 F. Supp. 3d 1123, 1131-32 (D.Or. 2016) (granting motion to dismiss a Title IX claim where a school "had no control over" the "off-campus party" where the plaintiff was drugged or the "off-campus apartment" where she was later raped).

Here, the Title IX claim in Count 1 should be dismissed to the extent it is based on Frazier's alleged off-campus abuse of Plaintiff. Most of the alleged abuse took place at various private residences. *See* Compl. ¶¶ 48-50, 59-62. In fact, the Title IX claim itself says it is based on abuse "perpetrated by a teacher . . . both within school *and without.*" *Id.* ¶ 93(d) (emphasis added). But a school's potential exposure under Title IX is confined to situations where "the misconduct occurs during school hours and on school grounds" because under those circumstances, "the misconduct is taking place 'under' an 'operation' of the funding recipient." *Davis*, 526 U.S. at 646; *see also Dawn L. v. Greater Johnstown Sch. Dist.*, 614 F. Supp. 2d 555, 568 n.3 (W.D.Pa. 2008) (excluding from Title IX analysis conduct that occurred "outside of the School"). Thus, Frazier's alleged off-campus abuse of Plaintiff is not actionable under Title IX.

### C. PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE THAT AN "APPROPRIATE PERSON" HAD "ACTUAL KNOWLEDGE" OF ANY ON-CAMPUS SEXUAL ABUSE.

Even if a Title IX claimant was harassed on school grounds, "not all sexual harassment by teachers is sufficient to impose liability on a school district." *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1254 (11th Cir. 2010). Indeed, "it would 'frustrate

the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998). Rather, for liability to exist, an "appropriate person" must have had "actual knowledge of discrimination *in the recipient's programs* and [then] fail[ed] to adequately respond" in a way that amounted to "deliberate indifference to discrimination." *Id.* at 290 (emphasis added); *see also Davis*, 526 U.S. at 643 (explaining that Title IX places on districts "the duty not to permit teacher-student harassment *in [their] schools*") (emphasis added). This "high standard" ensures that schools are only held liable "where their own deliberate indifference effectively 'caused' the discrimination." *Davis*, 526 U.S. at 642-43.

An "appropriate person" is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." *Gebser*, 524 U.S. at 290;l *see also Floyd v. Waiters*, 171 F.3d 1264, 1264 (11th Cir. 1999) (explaining that an appropriate person is someone "high enough up the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct"). A school principal "ordinarily" qualifies as an "appropriate person," *Warren v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir. 2002), but "fellow teachers" do not, unless they have been given "both the duty to supervise the employee who has sexually abused a student and also the power to halt the abuse." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997); *see also Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 346 (W.D.Pa. 2011) (holding that a music teacher

13

was not an "appropriate person" because there was no evidence that he "had the 'authority to institute corrective measures'") (quoting *Gebser*, 524 U.S. at 277).

Meanwhile, "actual notice" is not satisfied merely by pleading "information sufficient to alert the [appropriate person] to the possibility that a teacher was involved in a sexual relationship with a student." *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 360-61 (3d Cir. 2005). The court in *Bostic* rejected such a standard because *Davis* held that "a recipient intentionally violates Title IX . . . where the recipient is deliberately indifferent to *known acts* of teacher-student discrimination," and because "a 'possibility' cannot be equated with a 'known act.'" *Id.* at 361 (quoting *Davis*, 526 U.S. at 643) (emphasis in original). Rather, "[a]n educational institution has 'actual knowledge' if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." *Id.*; *see also Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 708 (E.D.Pa. 2007) ("[T]he plaintiff in a Title IX damages suit based on a teacher's behavior must prove actual knowledge of misconduct, not just actual knowledge of the risk of misconduct.") (citation omitted). Thus, "some prior allegations of harassment may be sufficiently minimal and far afield from the conduct underlying the plaintiff's Title IX claim that they would not alert a school district official of the risk of a Title IX plaintiff's sexual harassment." *School Board of Broward County*, 604 F.3d at 1258.

Even if an "appropriate person" was put on "actual notice," a plaintiff must also satisfy the "exacting standard" of deliberate indifference, *School Board of Broward County*, 604 F.3d at 1259, by showing that the school's remedial measures were "clearly

unreasonable in light of the known circumstances." *Douglas*, 836 F. Supp. 2d at 349 (quoting *Davis*, 526 U.S. at 648). And since *Gebser* "incorporate[d] a causation requirement" into the analysis, *id.* at 347, a Title IX claim will fail unless the plaintiff shows the deliberate indifference "led to further sexual harassment." *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1155 (10th Cir. 2006); *see also Bernard v. E. Stroudsburg Univ.*, 700 Fed. Appx. 159, 163 n.3 (3d Cir. 2017) (same). In other words, a Title IX claim is doomed if a plaintiff cannot point to any discrimination that took place *after* an appropriate person was put on actual notice. *See Reese v. Jefferson Sch. Dist.*, 208 F.3d 736, 740 (9th Cir. 2000); *Soper v. Hoben*, 195 F.3d 845, 855 (6th Cir. 1999). Thus, "a Title IX plaintiff at the motion to dismiss stage must allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff to further discrimination." *Williams v. Bd. of Regents*, 477 F.3d 1282, 1296 (11th Cir. 2007).[1]

Here, the Title IX claim in Count 1 should be dismissed for failure to plausibly allege that an "appropriate person" had "actual knowledge" of any on-campus sexual abuse. For example, while Spaventa and Caldwell likely qualify as "appropriate persons," the complaint does not allege that either of them knew about *any* abuse. Rather, they are lumped into a catch-all category of "Atlantic City School District

---

[1] Courts in this Circuit routinely consider the sufficiency of the notice and deliberate indifference allegations on a motion to dismiss. *See Butler v. Mt. View Sch. Dist.,* 2013 U.S. Dist. LEXIS 120867, at *19-21 (M.D.Pa. Aug. 26, 2013); *D.V. v. Pennsauken Sch. Dist.*, 2013 U.S. Dist. LEXIS 111045, at *30-31 (D.N.J. Aug. 7, 2013); *Gjeka v. Del. Cnty. Cmty. Coll.*, 2013 U.S. Dist. LEXIS 73054, at *23-24 (E.D.Pa. May 23, 2013).

Defendants," which is not sufficient to withstand dismissal. *See A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 995-96 (S.D.Tex. 2014) (dismissing Title IX claim alleging that "School Officials," a term defined in the complaint as including a superintendent and several other high-ranking school officials, were aware of teacher's abuse).

Nor can Plaintiffs rely on the allegations against the other teachers at his school. Instead of directly pleading what these other teachers knew, Plaintiff tries to indirectly impute a certain level of knowledge to them by saying they never "questioned" Frazier about his alleged abuse of Plaintiff in the school library or about the fact that Frazier was "spending a disproportionate amount of time with [Plaintiff] as compared to other students." Compl. ¶¶ 35-38. But these other teachers are not "appropriate persons" because the complaint does not say they had "both the duty to supervise [Frazier] and also the power to halt the abuse." *Rosa H.*, 106 F.3d at 660; *see also Douglas*, 836 F. Supp. 2d at 346. Regardless, it is not enough for an appropriate person to know that a teacher was openly spending a significant amount of time with a student or was showing favoritism towards a student. *See, e.g., P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 662-63 (8th Cir. 2001); *Kobrick v. Stevens*, 2017 U.S. Dist. LEXIS 141692, at *27, *46-47 (M.D.Pa. Sept. 1, 2017); *Romero v. City of New York*, 839 F. Supp. 2d 588, 608 (E.D.N.Y. 2012); *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 166-67 (D. Mass. 2005).

Further, although Principal Small is likely an "appropriate person," *Warren*, 278 F.3d at 171, the allegations pertaining to her actual knowledge and deliberate indifference are patently insufficient. For example, the complaint says Frazier sexually

abused Plaintiff in the privacy of the school library. *See* Compl. ¶ 37. But the complaint does not specifically allege that Principal Small had actual knowledge of that on-campus abuse at *any* point, let alone that her deliberate indifference to any such abuse caused Plaintiff to undergo any *additional* on-campus abuse. These pleading deficiencies are fatal and compel dismissal. *See Williams*, 477 F.3d at 1296 ("[A] Title IX plaintiff at the motion to dismiss stage must allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff to further discrimination."); *Reese*, 208 F.3d at 740 ("There is no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations. Thus, under *Davis*, the school district cannot be deemed to have 'subjected' the plaintiffs to the harassment."); *Samuelson*, 162 F. Supp. 3d at 1131 ("Advance notice and the ability to take corrective action remain prerequisites for recipient liability in Title IX sexual harassment actions.").

The remaining allegations against Principal Small are also unavailing. For example, Principal Small supposedly knew that Frazier "was interacting with [Plaintiff] outside of school hours, and was taking him out and hosting him overnight, as her son initially joined Frazier and [Plaintiff] on several of their early outings, such as to the movies and Chuck E. Cheese." Compl. ¶¶ 72-73. But Principal Small's alleged knowledge of Frazier's off-campus conduct is of dubious analytical value because off-campus sexual harassment is not even actionable under Title IX in the first place. *See Davis*, 526 U.S. at 645-46; *Williams*, 2018 U.S. Dist. LEXIS 205957, at *20-21.

Regardless, Principal Small could not have been "deliberately indifferent to [any] *known acts* of teacher-student discrimination" because the knowledge attributed to her in ¶¶ 72-73 does not indicate (a) that Frazier was in fact abusing Plaintiff at school, or (b) that there existed a "sufficiently substantial danger" that Frazier was abusing Plaintiff at school. *Bostic*, 418 F.3d at 360-61 (quoting *Davis*, 526 U.S. at 643) (emphasis in original); *see also Chancellor*, 501 F. Supp. 2d at 708 (requiring "actual knowledge of misconduct, not just actual knowledge of the risk of misconduct"). In fact, the knowledge attributed to Principal Small is not even "sufficient to alert [her] to the *possibility* that [Frazier] was involved in a sexual relationship with [Plaintiff]." *Bostic*, 418 F.3d at 360 (emphasis added). *See P.H.*, 265 F.3d at 662-63; *Kobrick*, 2017 U.S. Dist. LEXIS 141692, at *27, *46-47; *Romero*, 839 F. Supp. 2d at 608; *Doe*, 367 F. Supp. 2d at 166-67. Even if it is, a "mere 'possibility'" of abuse is not enough to put Principal Small on "actual notice." *Chancellor*, 501 F. Supp. 2d at 708 (quoting *Bostic*, 418 F.3d at 361).

Lastly, it does not matter that Principal Small reported Frazier to DCPP and to Source4Teachers in early 2017. *See* Compl. ¶¶ 75-77. Apart from saying Principal Small reported Frazier's "unprofessional" and "inappropriate" conduct to those entities, the complaint does not specify *what* that conduct entailed or *why* Principal Small made those reports. Thus, it is impossible to infer that Principal Small was aware of a "sufficiently substantial danger" that Frazier was abusing Plaintiff at school.[2] *Bostic*, 418 F.3d at 361.

---

[2] Given the scope of the IAIU investigation, it seems Principal Small reported Frazier to DCPP for his off-campus interactions with Plaintiff. *See* Compl. ¶¶ 81-82.

And since Plaintiff does not describe the "circumstances" that were "known" to Principal Small, he has not shown that her chosen remedial measures were "clearly unreasonable in light of the known circumstances." *Douglas*, 836 F. Supp. 2d at 349.

Thus, the Title IX claim against the Board, Spaventa, and Caldwell in Count 1 should be dismissed for failure to state a claim.

## POINT II

### ALL § 1983 CLAIMS AGAINST THE BOARD IN COUNTS 2 AND 3 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The § 1983 "failure to" claims against the Board in Counts 2 and 3 should be dismissed for five reasons. First, the complaint does not allege any other similar constitutional violations anywhere in the District, let alone a "pattern" caused by the "training" and "supervision" deficiencies alleged in the complaint. Second, Plaintiff cannot maintain a "failure to supervise" claim based on the "single incident" theory because sexual abuse is not a "highly predictable" consequence of leaving a teacher unsupervised with a student. Third, although Plaintiff claims the Board failed to train Frazier's *co-workers* to detect signs of sexual abuse in students and to report signs or allegations of same, Plaintiff cannot maintain a "failure to train" claim based on the "single incident" theory because (a) the unlawfulness of child sexual abuse is obvious, and (b) such a claim is too attenuated from the underlying injury. Fourth, the failure to "intervene" and "discipline" claims should be dismissed because the complaint does not allege that any Board policymakers were deliberately indifferent to a known threat

or likelihood of injury to Plaintiff or were aware of Frazier's alleged abuse while it was ongoing. Lastly, Plaintiff cannot sustain any failure to "investigate" and "discipline" claims based on conduct that may have preceded Frazier's abuse of him because the complaint does not allege that the Board a had history of failing to adequately address any complaints of sexual abuse committed by Frazier or any other employees. Thus, all § 1983 claims against the Board in Counts 2 and 3 should be dismissed.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

[42 U.S.C. § 1983.]

Thus, under § 1983, "a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). But "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted).

Even if a plaintiff was deprived of a constitutional right by an individual acting under the color of state law, however, a plaintiff "may not rely on a theory of respondeat superior to impose liability on municipalities." *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). In other words, a municipal "policy" or "custom" must have been the "moving force behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Thus, "in a *Monell* case, the 'proper analysis requires [a court] to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [entity] is responsible for that violation.'" *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1149-50 (3d Cir. 1995) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).

Here, Plaintiff claims Frazier abused him at school while Frazier was working as a substitute, which qualifies as a deprivation of his liberty interest in his bodily integrity by a person acting under the color of law. *See Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 709 n.1 (3d Cir. 1993); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989). But even if Plaintiff's on-campus harm "was caused by a constitutional violation," his § 1983 claims should still be dismissed because he has not plausibly shown that the Board "is responsible for that violation." *Mark*, 51 F.3d at 1149-50.

As the Third Circuit recently explained, "a § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). First, "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.* "[A] plaintiff presenting an unconstitutional policy must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject. And, if alleging [an unconstitutional] custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 105-06.

Second, a plaintiff may claim that his or her injury was "caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest*, 930 F.3d at 105. A plaintiff proceeding on such a theory has the "demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Id.* at 106. This avenue of liability "arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline." *Id.* at 105; *see also Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) ("We have previously applied the Supreme Court's rulings in failure-to-train cases to other claims of liability through inaction."); *M.S. v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 421 (M.D.Pa. 2014) (same for "failure to intervene" claims); *Merman v. City of Camden*, 824 F. Supp. 2d 581, 589 (D.N.J. 2010) (same for "failure to investigate" claims).

22

Here, Plaintiff relies exclusively on the second avenue of municipal liability from *Forrest*, as he pleads several "failure to" claims in Counts 2 and 3. To maintain a "failure to" claim, a plaintiff must show that "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 463 U.S. 51, 61 (2011); *see also Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (stating that it is "difficult" to maintain a "failure to" claim against a municipality). Such "deliberate indifference" must be exhibited by the final policymakers themselves, *see Connick*, 463 U.S. at 61-62; *City of Canton*, 489 U.S. at 389, meaning "those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "[W]hether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

There are two ways to maintain a "failure to" claim under § 1983. First, a plaintiff can point to "[a] pattern of similar constitutional violations," which is "'ordinarily necessary' to demonstrate deliberate indifference." *Connick*, 563 U.S. at 62 (citing *Bryan County*, 520 U.S. at 409). "A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and '[t]heir continued adherence to an approach

23

that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the deliberate indifference – necessary to trigger municipal liability.'" *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Bryan County*, 520 U.S. at 407).

Second, "in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations," even "without showing a pattern of constitutional violations." *Bryan County*, 520 U.S. at 409. In this scenario, the "unconstitutional consequences" of the particular "failure" at issue must be "patently obvious." *Connick*, 563 U.S. at 64. For example, the Court in *City of Canton* "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* at 63 (discussing *City of Canton*, 489 U.S. at 390 n.10). "Given the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." *Id.* at 63-64 (quoting *Bryan County*, 520 U.S. at 409). But proving deliberate indifference under such a "single incident" theory is "a difficult task." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2014) (citation omitted).

### A. THE FAILURE TO SUPERVISE CLAIM AGAINST THE BOARD IN COUNT 3 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff's "failure to supervise" claim against the Board should be dismissed for two reasons. First, the complaint does not allege *any* other similar constitutional violations either within the Atlantic City School District or at the Pennsylvania Avenue School, let alone a "pattern" of similar constitutional violations by unsupervised Board employees. *See Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 734-35 (D.N.J. 2015) (granting motion to dismiss because the complaint did not identify a pattern of prior sexual assaults attributable to the school's alleged failure to supervise its employees). Second, Plaintiff cannot rely on the "single-incident" theory of liability because it is not "plainly obvious that [the Board's alleged] failure to supervise its employees would lead to increased sexual assault." *Id.* at 735; *see also Walker v. City of New York*, 974 F.2d 293, 299-300 (2d Cir. 1992) ("Where the proper [behavior] is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.").

### B. THE FAILURE TO TRAIN CLAIM AGAINST THE BOARD IN COUNT 3 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff's "failure to train" claim is a bridge too far. Plaintiff says the Board failed to train Frazier's *co-workers* to "detect signs of sexual harassment, abuse, or exploitation

in students" and to "report signs or allegations of same." Compl. ¶ 116. But courts are

skeptical that such a claim could ever be cognizable under § 1983:

> In any failure-to-train case, the governmental entity's failure to provide proper training is a step removed from the constitutional violation resulting from that failure. That is why a plaintiff seeking to hold a governmental entity liable in this context must demonstrate that his or her injury would have been avoided if the *offending employee* had been trained under a program that was not deficient in the identified respect. Where a plaintiff attempts to extend this theory to a government's failure to train *other employees* to detect or report the actions of an offending employee, the government's alleged inaction is a good deal further removed from the constitutional violation. For this reason, it is not clear whether such an attenuated failure-to-train claim is *ever* cognizable under § 1983.
>
> [*Douglas*, 836 F. Supp. 2d at 364 (citations omitted, emphasis in original).]

Regardless, the complaint does not allege *any* other similar constitutional

violations either within the District or at the Pennsylvania Avenue School, let alone a

"pattern" of similar constitutional violations caused by the training deficiencies alleged

in ¶ 116 of. *See Lockhart*, 170 F. Supp. 3d at 734-35 (granting motion to dismiss because

the complaint did not identify a pattern of prior sexual assaults attributable to the

alleged training deficiency); *Douglas*, 836 F. Supp. 2d at 364 (dismissing failure to train

claim for lack of "a pattern of sexual exploitation stemming from the failure of [the

school district's] teachers to detect or report signs of child abuse").

Further, Plaintiff cannot rely on the "single incident" theory. *See Kline v. Mansfield*,

255 Fed. Appx. 624, 630 (3d Cir. 2007) ("[B]ecause not committing the crime of sexually

abusing a child is obvious, the failure of [the district] to train its employees to spot signs of sexual abuse such as [the teacher's] 'grooming' methods was not deliberately indifferent."); *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 2015 U.S. Dist. LEXIS 139907, at *46-51 (W.D.Pa. Oct. 14, 2015) (granting motion to dismiss "single incident" claim against school which was premised on an allegation that it failed to train other teachers to "detect and report signs of sexual abuse" by the abusive teacher, reasoning that the claim was too "attenuated" from the plaintiff's constitutional injury).

One other point is worth addressing. In Count 2, Plaintiff attacks a Board policy entitled, "Harassment, Intimidation, and Bullying." Plaintiff claims that policy is problematic because it (a) requires school employees to report violations of that policy which are based on "reliable information" before the investigation which is supposedly necessary to confirm the reliability of that information can even take place, and (b) gives "would-be reporter[s]" too much "discretion" to make the initial reliability determination themselves. Compl. ¶¶ 117-19; *see also id.* ¶ 25.

There are three problems with Plaintiff's criticisms. First, Plaintiff has cited the wrong policy. The correct policy is "District Policy 4281 – Inappropriate Staff Conduct," and nothing therein conditions the obligation to report staff misconduct on the receipt of "reliable" information.[3] Second, even if Plaintiff has cited the right policy,

---

[3] *See* Exhibit A at pp.1-2. This policy is publicly available on the Board's website for anyone to access at any time, so it is a matter of public record subject to judicial notice. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (explaining that a court deciding a motion to dismiss may consider "matters of public record of which the court can take

an investigation is not always necessary before a recipient of information can conclude it is reliable. *See, e.g., United States v. Silveus*, 542 F.3d 993, 1000 (3d Cir. 2008) (discussing how police can rely on their "prior knowledge" to assess the reliability of a tip). Third, even if a *Monell* claim could be based on a policy that is deficient in the ways alleged, Plaintiff has not plausibly shown "a direct causal link between [the alleged deficiencies] and the alleged constitutional deprivation." *Carswell*, 381 F.3d at 244. The only school employee whose knowledge is pleaded in the complaint is Principal Small, but Plaintiff faults her for allegedly failing to report behavior that he thinks was sufficiently indicative of sexual abuse on its own, *see* Compl. ¶ 73, not that she (or anyone else) wrongly failed to report that behavior after concluding it was not based on reliable information.

### C. THE FAILURE TO INVESTIGATE, INTERVENE, AND DISCIPLINE CLAIMS AGAINST THE BOARD IN COUNT 2 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The claims against the Board for failure to "intervene" and "discipline" should be dismissed because the complaint does not plausibly allege that any Board policymakers "had knowledge of and exhibited deliberate indifference in the face of a known threat or likelihood of injury to" Plaintiff or were "aware of the constitutionally

---

judicial notice"); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (explaining that a "matter of public record" is a document to which the public has "unqualified access"); *Thompson v. Ferguson*, 2020 U.S. Dist. LEXIS 245017, at *3 & n.2 (E.D.Pa. Dec. 31, 2020) (taking judicial notice, on a motion to dismiss, of a prison policy which was publicly available on its website); *In re Vertex Pharms., Inc. Sec. Litig.*, 357 F. Supp. 2d 343, 352 n.4 (D.Mass. 2005) (taking judicial notice, on a motion to dismiss, of a FDA policy which was publicly available on its website).

violative sexual relationship while the relationship was ongoing." *M.S.*, 43 F. Supp. 3d at 421-25 (citing *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 144 n.1 (3d Cir. 2002)); *see also Flood v. Sherk*, 400 F. Supp. 3d 295, 308-09 (W.D.Pa. 2019) ("[D]istrict courts in the Third Circuit appear to uniformly refuse to consider a school principal to be a final policymaker . . . under § 1983."). Identical reasoning compels dismissal of the claim for "failure to report." *See* Compl. ¶ 107(a). Also, while the obligation to report child abuse comes from N.J. Stat. Ann. § 9:6-8.10, "[s]ection 1983 does not provide a cause of action for violations of state statutes" and "a state statute cannot, in and of itself, create a constitutional right." *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990).

Nor can Plaintiff sustain any failure to "investigate" and "discipline" claims based on conduct that may have preceded Frazier's abuse of Plaintiff. Under § 1983, a municipality might be held liable if it has a history of inadequately investigating complaints against employees and insufficiently disciplining those employees "which, in turn, suggest[s] tacit approval of and encouragement for its [employees'] unconstitutional misconduct." *Merman*, 824 F. Supp. 2d at 589. But here, the complaint does not allege the Board had a history of failing to adequately address any complaints of sexual abuse committed by Frazier, *see Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996), or by any other employees. *See Merman*, 824 F.3d at 594; *Monaco v. City of Camden*, 2018 U.S. Dist. LEXIS 30825, at *34 (D.N.J. Apr. 14, 2008). The complaint simply does not allege that a policymaker failed to act despite "knowledge of a prior pattern of similar incidents." *Montgomery v. DeSimone*, 159 F.3d 120, 127 (3d Cir. 1998).

Lastly, Plaintiff cannot base his *Monell* claims on any alleged Board policy deviations. *See* Compl. ¶¶ 104-07. *See Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985) ("[T]he carelessness of an employee in failing to follow a policy . . . does not fasten [§ 1983] liability on the governmental agency."); *Whitcraft v. Twp. of Cherry Hill*, 974 F. Supp. 392, 398 (D.N.J. 1996) ("[A] police department's deviation from an internal guideline does not itself trigger a violation of constitutional dimension.").

Thus, all § 1983 claims against the Board in Counts 2 and 3 should be dismissed for failure to state a claim.[4]

## POINT III

### ALL § 1983 CLAIMS AGAINST SPAVENTA AND CALDWELL IN COUNTS 2 AND 3 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

There are four reasons why all § 1983 claims against Spaventa and Caldwell in Counts 2 and 3 should be dismissed for failure to state a claim.

First, the § 1983 claims against Spaventa and Caldwell in their official capacities are needlessly duplicative of the § 1983 claims against the Board itself. *See Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131-32 (D.N.J. 2017).

Second, Plaintiff has failed to show how Spaventa and Caldwell were personally involved in the alleged constitutional violations. *See Iqbal*, 556 U.S. at 676. In the context of § 1983 claims against supervisors, "[a] plaintiff makes sufficient allegations of a

---

[4] Despite the request for punitive damages in the "prayer for relief," Plaintiff cannot seek such damages from the Board under § 1983. *See City of Newport*, 453 U.S. at 271.

defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015); *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). But the complaint does not contain *any* facts showing how Spaventa or Caldwell "participated in violating [Plaintiff's] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M.*, 372 F.3d at 586. Instead, Spaventa and Caldwell are lumped into a catch-all category of "Atlantic City School District Defendants," which is not sufficient. *See A.B. v. Vineland Bd. of Educ.*, 2019 U.S. Dist. LEXIS 93126, at *21-23 (D.N.J. Jun. 4, 2019) (granting motion to dismiss supervisory liability claims against three high-ranking school personnel based on a similar "group pleading problem").

Third, Plaintiff cannot rely on the other theory of supervisory liability which provides: "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M.*, 372 F.3d at 586 (quoting *Stoneking*, 882 F.2d at 725); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015) (stating that "failure to" claims against supervisors are "considered a subcategory of policy or practice liability"). For one thing, superintendents are not policymakers. *See* N.J. Stat. Ann. § 18A:11-1(c) (granting school boards the power to "make, amend, and repeal rules . . . for the employment, regulation

of conduct and discharge of its employees"); N.J. Stat. Ann. § 18A:17-20 (providing that superintendents have a seat on the school board "but shall have no vote"); District Policy 0120 – Authority and Powers (stating that the Board is responsible for "development" and "implementation" of policy).[5] Regardless, any "failure to" claims against Spaventa and Caldwell would fail for the same reasons discussed above with respect to the Board. *See Carter*, 181 F.3d at 356 ("[T]he standard for personal liability [of a supervisor] under section 1983 is the same as that for municipal liability.").

Fourth, although Plaintiff says the Atlantic City School District Defendants "had a reasonable opportunity to intervene," Compl. ¶ 106, he cannot maintain a "failure to intervene" claim against Spaventa or Caldwell because the complaint does not say they failed to put a stop to any abuse that was happening right in front of them. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir 2002) ("If a police officer . . . fails or refuses to intervene when a constitutional violation . . . takes place *in his presence*, the officer is directly liable under Section 1983. However, an officer is only liable if there is a realistic and reasonable opportunity to intervene.") (citations omitted, emphasis added).

Thus, all § 1983 claims against Spaventa, and Caldwell in Counts 2 and 3 should be dismissed for failure to state a claim.

---

[5] *See* Exhibit B at p.1; footnote 4, *supra*.

## POINT IV

### ALL COMMON LAW CLAIMS SEEKING TO HOLD THE BOARD VICARIOUSLY LIABLE FOR FRAZIER'S ALLEGED ABUSE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In Counts 5 through 8, Plaintiff pleads several common law claims against Frazier in an effort to hold the Board vicariously liable for his alleged misconduct. To this end, the complaint says Frazier "was an agent and/or employee of the Pennsylvania Avenue School, acting or failing to act within the scope, course, and authority of his employment and his employer." Compl. ¶ 14. But that assertion is fundamentally incompatible with the facts pleaded in the complaint, which clearly show that Frazier acted outside the scope of his employment when he allegedly abused Plaintiff at school. Thus, all common law claims in Counts 5 through 8 seeking to hold the Board vicariously liable for Frazier's alleged abuse of Plaintiff should be dismissed.

In New Jersey, the tort liability of public entities like the Board is controlled by the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 *et seq*. Under the NJTCA, if the employee was acting within the scope of his employment, then unless the claim is barred by an applicable NJTCA immunity, the entity can be held vicariously liable for the employee's tort. *See Tice v. Cramer*, 627 A.2d 1090, 1094 (N.J. 1993); N.J. Stat. Ann. § 59:2-2(a); *see also Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007) (explaining that N.J. Stat. Ann. § 59:2-2(a) "adopts the general concept of vicarious liability expressed by cases decided prior to the adoption of the [NJTCA]").

33

The "scope of employment" standard "refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Di Cosala v. Kay*, 450 A.2d 508, 513 (N.J. 1982) (citation omitted). Thus, an employee's conduct is within the scope of his employment if "it is the kind he is employed to perform," "it occurs substantially within the authorized time and space limits," "it is actuated, at least in part, by a purpose to serve the master," and "if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." *Davis v. Devereaux Found.*, 37 A.3d 469, 489-90 (N.J. 2012) (quoting Restatement (Second) of Agency § 228 (1)).

"Conversely, an employee's act is outside of the scope of his or her employment 'if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" *Davis*, 37 A.3d at 490. (quoting Restatement § 228 (2)). "Only rarely will intentional torts fall within the scope of employment." *Id*. When an employee commits a crime, it will not fall within the scope of employment unless "the employee's responsibilities include[d] enforcement of the employer's rules" and "[t]he employee's attempt to compel compliance with those rules was met with resistance and provoked a physical altercation." *Id*. at 491. But a master cannot be held vicariously liable for "serious" crimes which are "different from what servants in a lawful occupation are expected to do" or "clearly inappropriate to or unforeseeable in the accomplishment of the authorized result." *Id*. at 490.

Here, Frazier was not acting within the scope of his employment when he allegedly abused Plaintiff on school property, so all common law claims seeking to hold the Board vicariously liable for that alleged abuse should be dismissed. For example, Frazier's alleged conduct was clearly not the behavior he was "employed to perform" as part of his duties as a substitute teacher, and there is no indication that his conduct was "actuated, at least in part, by a purpose to serve the master." *Davis*, 37 A.3d at 490. In fact, this case is remarkably like *Cosgrove v. Lawrence*, 520 A.2d 844, 849 (N.J. Super. Ct. Law Div. 1986), *aff'd*, 522 A.2d 483 (N.J. Super. Ct. App. Div. 1987), where the court held that a therapist who initiated a sexual relationship with his patient during their therapy sessions was not acting within the scope of his employment because his conduct "was not of the kind he was employed to perform but was different in kind from that authorized" and "was too little actuated by a purpose to serve the master."

Additionally, even if Frazier used any "force," the use of force was not an inseparable part of his job, so his conduct was "unexpectable." *Davis*, 37 A.3d at 490; *cf. Mason v. Sportsman's Pub*, 702 A.2d 1301, 1310 (N.J. Super. Ct. App. Div. 1997) (finding that a bouncer acted within the scope of his employment by trying to eject a bar patron because, among other things, his use of force was "not unexpectable"). And the complaint does not allege that Frazier was trying to "compel compliance" with any Board rules. *Id.* at 491. In sum, Plaintiff cannot hold the Board vicariously liable for Frazier's "serious" on-campus crimes because they are "different from what servants in

35

a lawful occupation are expected to do" and "clearly inappropriate to or unforeseeable in the accomplishment of the authorized result." *Id.* at 490.[6]

One last point is worth mentioning, and it is based on yet another internal inconsistency in the complaint. The foregoing discussion was premised on the assumption that Frazier was a Board employee. *See* Compl. ¶ 14. But that assumption may not be accurate since the complaint alleges that Principal Small reported Frazier to Source4Teachers, "an educational staffing management company that pairs schools with substitute teachers in their area and fills vacancies as needed." Compl. ¶¶ 76-77. Based on that description, it appears Frazier was an independent contractor, *not* a Board employee. If so, the Board cannot be held vicariously liable for Frazier's alleged misconduct as a matter of law. *See* N.J. Stat. Ann. § 59:1-3 (stating that the word "employee" as used in the NJTCA "does not include an independent contractor"); *Mavrikidis v. Petullo*, 707 A.2d 977, 985 (N.J. 1998) ("[T]he doctrine of *respondeat superior* does not ordinarily apply in the context of an independent contractor.").

Thus, all common law claims in Counts 5 through 8 seeking to hold the Board vicariously liable for Frazier's alleged abuse of Plaintiff should be dismissed.

---

[6] For the sake of completeness, it bears noting that the Board cannot be held vicariously liable for Frazier's off-campus misconduct or for anything that allegedly happened after he was terminated in April 2017. *See Davis*, 37 A.3d at 489-90 (explaining that an employee's conduct is within the scope of his employment if, among other things, "it occurs substantially within the authorized time and space limits"); *Phillips v. Nw. Reg'l Commc'ns*, 667 F. Supp. 2d 555, 580 n.17 (W.D.Pa. 2009) ("[I]t it is clear that at the time [the assailant] acted, he was no longer an [] employee [of the defendant entity] and cannot be said to have been acting within the scope of that former employment.").

## POINT V

## ALL NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS AGAINST SPAVENTA AND CALDWELL IN COUNTS 5 AND 6 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff's negligence and gross negligence claims against Spaventa and Caldwell in Counts 5 and 6 should be dismissed because the complaint does not plead any facts plausibly showing how Spaventa or Caldwell breached a duty to Plaintiff. Instead, Counts 5 and 6 are based entirely on a series of bald, conclusory allegations, which is not sufficient. Thus, all negligence and gross negligence claims against Spaventa and Caldwell in Counts 5 and 6 should be dismissed for failure to state a claim.

Negligence "will never be presumed"; indeed, "there is a presumption against it." *Buckelew v. Grossbard*, 435 A.2d 1150, 1157 (N.J. 1981). To sustain a negligence claim in New Jersey, "a plaintiff must prove four core elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" *Polzo v. Cnty. of Essex*, 960 A.2d 375, 384 (2008) (citation and brackets omitted). "Gross negligence has the same elements as ordinary negligence because '[n]egligence differs from gross negligence only in degree, not in kind.'" *Zelnick v. Morristown-Beard Sch.*, 137 A.3d 560, 567 (N.J. Super. Ct. Law Div. 2015) (quoting *Monaghan v. Holy Trinity Church*, 646 A.2d 1130, 1133 (N.J. Super. Ct. App. Div. 1994)); *see also Sines v. Darling Ingredients, Inc.*, 2020 U.S. Dist. LEXIS 153856, at *14 (D.N.J. Aug. 25, 2020) (same). "Whereas negligence is 'the failure to exercise ordinary or reasonable care' that leads to a natural and probable

injury, gross negligence is 'the failure to exercise slight care or diligence.'" *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 754 (N.J. 2016) (citations omitted).

With respect to the first two elements of a negligence claim (and thus a gross negligence claim), "[s]chool officials have a general duty 'to exercise reasonable supervisory care for the safety of students entrusted to them, and [are accountable] for injuries resulting from failure to discharge that duty.'" *Jerkins v. Anderson*, 922 A.2d 1279, 1285 (N.J. 2007) (quoting *Caltavuturo v. City of Passaic*, 307 A.2d 114, 117 (N.J. Super. Ct. App. Div. 1973)). "The supervisory duty extends to 'foreseeable dangers . . . [that] arise from the careless acts or intentional transgressions of others.'" *L.E. v. Plainfield Pub. Sch. Dist.*, 194 A.3d 105, 112 (N.J. Super. Ct. App. Div. 2018), *certif. denied*, 202 A.3d 621 (2019) (quoting *Frugis v. Bracigliano*, 827 A.2d 1040, 1050 (2003)). For example, in *Frugis*, the Court "held that the supervisory duty extended to protect students from the transgressions of an adult – a school principal who privately photographed students [in his school office] in inappropriate poses." *Id.* (citing *Frugis*, 827 A.2d at 1050).

But schools are not "guarantors of students' safety." *Jerkins*, 922 A.2d at 1291. "A school district's responsibility has temporal and physical limits, and its obligation to act reasonably does not diminish the responsibilities that parents or guardians have to their children." *Id.* Indeed, the supervisory duty itself stems from the fact that "parents entrust their children to the care of schools," which is why the scope of a school official's duty is always framed in terms of the students who are "entrusted to them" and who are "in [their] charge . . . throughout the school day." *Id.* at 1285; *see also L.E.*,

194 A.3d at 111. That is also why, in *McKinney v. Mathew*, 2016 N.J. Super. Unpub. LEXIS 1543, at *12 (N.J. Super. Ct. App. Div. Jun. 29, 2016), the court declined "to expand both the 'temporal and physical limits' of the school officials' responsibility by imposing a duty to supervise the conduct of a high school student before he arrives on school property and before he is entrusted to the care of the school."

Here, Plaintiff's negligence and gross negligence claims against Spaventa and Caldwell in Counts 5 and 6 should be dismissed for failure to state a claim. In Count 5, Plaintiff claims "All Defendants" breached their duties "to take ordinary reasonable care in the execution of their respective professional . . . responsibilities imposed by law." Compl. ¶ 133. Plaintiff then claims "the Atlantic City School District Defendants" as a group failed to "promptly and effectively respond to the instances of known sexual harassment and abuse perpetrated by . . . Frazier." *Id.* ¶ 134. Similarly, Count 6 says, "All Defendants . . . had a duty of care towards [Plaintiff] to take reasonable steps to prevent . . . Frazier from using the authority, access, and instrumentalities afforded to him by his position within the Atlantic City School District to target, groom, and sexually abuse . . . [Plaintiff]." *Id.* ¶ 141. In the next paragraph, Plaintiff says, "All Defendants acted in a . . . grossly negligent manner with gross and callous indifference to the consequences, and thus breached their . . . duties of care." *Id.* ¶ 142.

But these conclusory allegations are not sufficient to state a plausible claim against Spaventa and Caldwell because they are devoid of any factual support. *See Iqbal*, 556 U.S. at 678. Spaventa and Caldwell are mentioned in the caption and in the

paragraphs introducing them as parties, but the complaint does not contain facts showing how *they* personally breached a duty of care to Plaintiff while he was at school. That deficiency is fatal and compels dismissal. *See Bullock v. Ancora Psychiatric Hosp.*, 2011 U.S. Dist. LEXIS 92307, at *37 (D.N.J. Aug. 18, 2011) (granting motion to dismiss negligence claim because the complaint did not "allege facts sufficient to establish that [four individual defendants] breached a duty of care . . . or any specific act[s] or omissions by those [d]efendants that proximately caused [the plaintiff's] injuries").

Thus, all negligence and gross negligence claims against Spaventa and Caldwell in Counts 5 and 6 should be dismissed for failure to state a claim.[7]

## POINT VI

### ALL IIED CLAIMS AGAINST SPAVENTA AND CALDWELL SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff's IIED claim against Spaventa and Caldwell in Count 8 should be dismissed because the complaint does not allege that these individuals engaged in any conduct whatsoever, let alone conduct that could be characterized as extreme and outrageous. Instead, Count 8 alleges that Spaventa and Caldwell failed to act, which is not enough to establish liability for IIED. Thus, the IIED claim against Spaventa and Caldwell in Count 8 should be dismissed for failure to state a claim.

---

[7] Clearly, Plaintiff cannot base his negligence and gross negligence claims on anything that allegedly happened while he was *not* entrusted to the care of his elementary school. *See Jerkins*, 922 A.2d at 1291; *McKinney*, 2016 N.J. Super. Unpub. LEXIS 1543, at *12.

An IIED claim has four elements. First, "the plaintiff must prove that the defendant acted intentionally or recklessly." *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988). "For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Id.* Second, "the defendant's conduct must be . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Third, "the defendant's actions must have been the proximate cause of the plaintiff's emotional distress." *Id.* Fourth, the plaintiff's emotional distress "must be so severe that no reasonable man could be expected to endure it." *Id.*

Here, the IIED claim against Spaventa and Caldwell should be dismissed because the complaint does not allege that these individuals engaged in *any* conduct whatsoever, let alone conduct that could be characterized as extreme and outrageous. *See A.B. v. Vineland Bd. of Educ.*, 2018 U.S. Dist. LEXIS 107486, at *23 (D.N.J. Jun. 27, 2018) (granting motion to dismiss IIED claim because complaint "alleged no facts indicating that Defendants . . . engaged in conduct that could be characterized as extreme and outrageous"); *see also Belt v. GEO Grp. Inc.*, 2007 U.S. Dist. LEXIS 25114, at *17 (E.D.Pa. Apr. 4, 2007) (dismissing IIED claim where there was "no evidence of any conduct" by one individual defendant towards the plaintiff); *Melnick v. Scott Twp.*, 2006 U.S. Dist. LEXIS 8678, at *9-10 (M.D.Pa. Feb. 16, 2006) (granting motion to dismiss IIED claim

against several individual defendants because the complaint did not allege they were "involved in the allegedly outrageous and extreme conduct" at issue).

Instead, the IIED claim against "the Atlantic City School District Defendants" is based on the assertion they *failed* to "report, intervene, investigate, and/or address" Frazier's alleged misconduct. Compl. ¶ 151. But "claims of a failure to act are generally insufficient to rise to the level necessary for IIED." *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 931 (M.D.Pa. 2015); *see also M.S.*, 43 F. Supp. 3d at 431 (same); *Page ex rel. Page v. Sch. Dist. of Philadelphia*, 45 F. Supp. 2d 457, 469 (E.D.Pa. 1999) (no IIED liability for teachers who allegedly failed to act to prevent assault of a student).[8]

Thus, the IIED claim against Spaventa and Caldwell in Count 8 should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and dismiss (a) all claims against Spaventa and Caldwell, and (b) all claims against the Board except for the vicarious liability components of Counts 5 and 6 which are based on Principal Small's alleged negligence and gross negligence in the performance of her official duties.

Respectfully submitted,

ANDERSON & SHAH LLC

By:   s/ Benjamin H. Zieman

Dated:        July 8, 2021          Benjamin H. Zieman, Esq.

---

[8] These arguments also preclude the Board from being held vicariously liable based on any IIED claims against Principal Small.