# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JANE DOE, on behalf of JOHN DOE, her minor child,

                    Plaintiffs,

v.

MARTY SMALL, SR., et al.,

                    Defendants.

Hon. Joseph H. Rodriguez, U.S.D.J.
Hon. Sharon A. King, U.S.M.J.

Docket No. 1:21-cv-11189-JHR-SAK

Civil Action

**DOCUMENT FILED**
**ELECTRONICALLY**

Motion Return Date: October 4, 2021

---

BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) ON BEHALF OF DEFENDANTS ATLANTIC CITY BOARD OF EDUCATION, PAUL A. SPAVENTA, AND BARRY CALDWELL

---

Benjamin H. Zieman, Esq.
On the Brief

Benjamin H. Zieman, Esq. (082712013)
ANDERSON & SHAH LLC
457 Haddonfield Road, Suite 120
Cherry Hill, NJ 08002
856-393-2371 (p); 856-528-1700 (f)
bzieman@andersonshahlaw.com
*Attorney for Defendants Atlantic City Board of Education, former Superintendent Paul A. Spaventa, and current Superintendent Barry Caldwell*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iii

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................................... 5

STANDARD OF REVIEW ................................................................ 9

ARGUMENT

  POINT I

    THE TITLE IX CLAIM IN COUNT 1 SHOULD BE DISMISSED
    FOR FAILURE TO STATE A CLAIM ................................................. 10

    A. PLAINTIFF CANNOT MAINTAIN A TITLE IX CLAIM
      BASED ON ANY OFF-CAMPUS ABUSE .......................................... 10

    B. PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE
      THAT AN "APPROPRIATE PERSON" HAD "ACTUAL
      KNOWLEDGE" OF ANY ON-CAMPUS SEXUAL ABUSE ............................. 12

  POINT II

    ALL § 1983 CLAIMS AGAINST THE BOARD IN COUNTS 2
    AND 3 SHOULD BE DISMISSED FOR FAILURE TO STATE
    A CLAIM ................................................................... 19

    A. THE FAILURE TO SUPERVISE CLAIM AGAINST THE
      BOARD IN COUNT 3 SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM ................................................. 26

    B. THE FAILURE TO TRAIN CLAIM AGAINST THE
      BOARD IN COUNT 3 SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM ................................................. 26

    C. THE FAILURE TO INVESTIGATE, INTERVENE, AND
      DISCIPLINE CLAIMS AGAINST THE BOARD IN COUNT
      2 SHOULD BE DISMISSED FOR FAILURE TO STATE A
      CLAIM ..................................................................... 29

POINT III

    ALL § 1983 CLAIMS AGAINST SPAVENTA AND CALDWELL
    IN COUNTS 2 AND 3 SHOULD BE DISMISSED FOR
    FAILURE TO STATE A CLAIM ........................................................... 31

POINT IV

    ALL COMMON LAW CLAIMS SEEKING TO HOLD THE
    BOARD VICARIOUSLY LIABLE FOR FRAZIER'S ALLEGED
    ABUSE SHOULD BE DISMISSED FOR FAILURE TO STATE
    A CLAIM ........................................................................................... 33

POINT V

    ALL NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS
    AGAINST SPAVENTA AND CALDWELL IN COUNTS 5 AND
    6 SHOULD BE DISMISSED FOR FAILURE TO STATE A
    CLAIM ............................................................................................... 37

POINT VI

    ALL IIED CLAIMS AGAINST SPAVENTA AND CALDWELL
    IN COUNT 8 SHOULD BE DISMISSED FOR FAILURE TO
    STATE A CLAIM. ............................................................................. 41

POINT VII

    ALL CSAA CLAIMS AGAINST THE BOARD, SPAVENTA,
    AND CALDWELL IN COUNT 9 SHOULD BE DISMISSED
    FOR FAILURE TO STATE A CLAIM .................................................. 43

      A. THE PENNSYLVANIA AVENUE SCHOOL IS NOT A
      "HOUSEHOLD" AND THUS CANNOT BE HELD
      LIABLE AS A PASSIVE ABUSER UNDER THE CSAA ....................... 44

      B. RECENT AMENDMENTS TO THE CSAA DO NOT
      APPLY RETROACTIVELY TO EVENTS THAT
      OCCURRED BEFORE DECEMBER 1, 2019 ........................................... 46

CONCLUSION ........................................................................................... 51

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                          <u>**Page**</u>

*A.B. v. Vineland Bd. of Educ.*,
  2018 U.S. Dist. LEXIS 107486 (D.N.J. Jun. 27, 2018) ................................................ 42

*A.B. v. Vineland Bd. of Educ.*,
  2019 U.S. Dist. LEXIS 93126 (D.N.J. Jun. 4, 2019) ................................................ 22, 32

*A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*,
  372 F.3d 572 (3d Cir. 2004) ........................................................................................ 32

*A.W. v. Humble Indep. Sch. Dist.*,
  25 F. Supp. 3d 973 (S.D.Tex. 2014) ............................................................................. 15

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999) ........................................................................................................ 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 9, 31, 40, 46

*B.W. v. Career Tech. Ctr. of Lackawanna Cnty.*,
  422 F. Supp. 3d 859 (M.D.Pa. 2019) ........................................................................... 22

*Barkes v. First Corr. Med., Inc.*,
  766 F.3d 307 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*,
  575 U.S. 822 (2015) ...................................................................................................... 32

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,
  520 U.S. 397 (1997) ........................................................................................... 21, 24, 25

*Beck v. City of Pittsburgh*,
  89 F.3d 966 (3d Cir. 1996) ........................................................................................... 30

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 9

*Belt v. GEO Grp. Inc.*,
  2007 U.S. Dist. LEXIS 25114 (E.D.Pa. Apr. 4, 2007) ................................................ 42

*Berg v. Cnty. of Allegheny*,
219 F.3d 261 (3d Cir. 2000) ................................................................. 23

*Bernard v. E. Stroudsburg Univ.*,
700 Fed. Appx. 159 (3d Cir. 2017) ....................................................... 14

*Black v. Indiana Area Sch. Dist.*,
985 F.2d 707 (3d Cir. 1993) ................................................................. 21

*Bostic v. Smyrna Sch. Dist.*,
418 F.3d 355 (3d Cir. 2005) ..................................................... 13, 17, 18

*Bright v. Westmoreland Cnty.*,
443 F.3d 276 (3d Cir. 2006), *cert. denied*, 549 U.S. 1264 (2007) .................................. 22

*Brodsky v. Grinnel Haulers, Inc.*,
853 A.2d 940 (N.J. 2004) ....................................................................... 50

*Brown v. City of Pittsburgh*,
586 F.3d 263 (3d Cir. 2009) ................................................................. 21

*Brown v. Grabowski*,
922 F.2d 1097 (3d Cir. 1990) ............................................................... 30

*Bryson v. Diocese of Camden*,
909 F. Supp. 2d 364 (D.N.J. 2012) ....................................................... 45

*Buckelew v. Grossbard*,
435 A.2d 1150 (N.J. 1981) ..................................................................... 38

*Buckley v. Trenton Sav. Fund Soc.*,
544 A.2d 857 (N.J. 1988) ....................................................................... 41

*Bullock v. Ancora Psychiatric Hosp.*,
2011 U.S. Dist. LEXIS 92307 (D.N.J. Aug. 18, 2011) ................................ 40

*Caltavuturo v. City of Passaic*,
307 A.2d 114 (N.J. Super. Ct. App. Div. 1973) ............................................ 39

*Carswell v. Borough of Homestead*,
381 F.3d 235 (3d Cir. 2014) ..........................................................25, 29

*Carter v. City of Philadelphia*,
   181 F.3d 339 (3d Cir. 1999) ...........................................................................24, 33

*Carter v. Reynolds*,
   783 A.2d 724 (N.J. Super. Ct. App. Div. 2001), *aff'd*, 815 A.2d 460 (N.J.
   2003) ............................................................................................................... 34

*Chancellor v. Pottsgrove Sch. Dist.*,
   501 F. Supp. 2d 695 (E.D.Pa. 2007) ...........................................................14, 18

*Chavarriaga v. N.J. Dep't of Corr.*,
   806 F.3d 210 (3d Cir. 2015) ............................................................................ 32

*City of Canton v. Harris*,
   489 U.S. 378 (1989) ....................................................................................24, 25

*City of Newport v. Fact Concerts, Inc.*,
   453 U.S. 247 (1981) ......................................................................................... 31

*Connick v. Thompson*,
   463 U.S. 51 (2011) ......................................................................................24, 25

*Cosgrove v. Lawrence*,
   520 A.2d 844 (N.J. Super. Ct. Law Div. 1986), *aff'd*, 522 A.2d 483 (N.J.
   Super. Ct. App. Div. 1987) ............................................................................... 36

*Cruz v. Cent. Jersey Landscaping, Inc.*,
   947 A.2d 1228 (N.J. 2008) ............................................................................... 47

*D.M. v. River Dell Reg'l High Sch.*,
   862 A.2d 1226 (N.J. Super. Ct. App. Div. 2004), *certif. denied*, 907 A.2d
   1015 (N.J. 2006) ..........................................................................................45, 46

*Davis v. Devereaux Found.*,
   37 A.3d 469 (N.J. 2012) ...............................................................................35, 36

*Davis v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999) ...................................................................................passim

*Dawn L. v. Greater Johnstown Sch. Dist.*,
   614 F. Supp. 2d 555 (W.D.Pa. 2008) ............................................................... 11

*Dewey v. R.J. Reynolds Tobacco Co.,*
   577 A.2d 1239 (N.J. 1990) ............................................................. 47

*Di Cosala v. Kay,*
   450 A.2d 508 (N.J. 1982) .............................................................. 34

*Doe v. Bd. of Educ.,*
   2018 U.S. Dist. LEXIS 109952 (D.N.J. Jul. 2, 2018) .................... 15

*Doe v. Clark Cnty. Sch. Dist.,*
   2016 U.S. Dist. LEXIS 120867 (D.Nev. Aug. 18, 2016) ............... 15

*Doe v. D'Agostino,*
   367 F. Supp. 2d 157 (D. Mass. 2005) ....................................... 16, 18

*Doe v. Sch. Bd. of Broward Cnty.,*
   604 F.3d 1248 (11th Cir. 2010) ................................................. 12, 14

*Douglas v. Brookville Area Sch. Dist.,*
   836 F. Supp. 2d 329 (W.D.Pa. 2011) ................................... passim

*Escue v. N. Okla. Coll.,*
   450 F.3d 1146 (10th Cir. 2006) ..................................................... 14

*Flood v. Sherk,*
   400 F. Supp. 3d 295 (W.D.Pa. 2019) ............................................ 30

*Forrest v. Parry,*
   930 F.3d 93 (3d Cir. 2019) ............................................................ 23

*Franklin v. Gwinnett Cnty. Pub. Schs.,*
   503 U.S. 60 (1992) ........................................................................ 10

*Frugis v. Bracigliano,*
   827 A.2d 1040 (2003) .................................................................... 39

*G.S. v. Penn-Trafford Sch. Dist.,*
   813 Fed. Appx. 799 (3d Cir. 2020) ............................................... 22

*Gebser v. Lago Vista Indep. Sch. Dist.,*
   524 U.S. 274 (1998) ................................................................. 12, 13

*Gibbons v. Gibbons*,
    432 A.2d 80 (N.J. 1981) ................................................................................. 47

*Gould Elecs., Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000) .......................................................................... 9

*Green v. Mt. Carmel Area Sch. Dist.*,
    2019 U.S. Dist. LEXIS 69021 (M.D. Pa. Apr. 24, 2019) ........................... 22

*Hardwicke v. Am. Boychoir Sch.*,
    902 A.2d 900 (N.J. 2006) ...................................................................44, 45, 46

*Henry v. City of Erie*,
    728 F.3d 275 (3d Cir. 2013) ........................................................................ 22

*Hoag v. Brown*,
    935 A.2d 1218 (N.J. Super. Ct. App. Div. 2007) ......................................... 34

*In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*,
    2012 U.S. Dist. LEXIS 177488 (D.N.J. Dec. 14, 2012) ............................ 48

*In re Vertex Pharms., Inc. Sec. Litig.*,
    357 F. Supp. 2d 343 (D.Mass. 2005) ........................................................... 29

*J.H. v. Mercer Cnty. Youth Det. Ctr.*,
    930 A.2d 1223 (N.J. Super. Ct. App. Div. 2007) ............................ 45, 46, 51

*J.P. v. Smith*,
    134 A.3d 977 (N.J. Super. Ct. App. Div.), *certif. denied*, 141 A.3d 297
    (N.J. 2016) .................................................................................44, 45, 46

*James v. N.J. Mfrs. Ins. Co.*,
    83 A.3d 70 (N.J. 2014) .............................................................................46, 51

*Janowski v. City of N. Wildwood*,
    259 F. Supp. 3d 113 (D.N.J. 2017) .............................................................. 31

*Jerkins v. Anderson*,
    922 A.2d 1279 (N.J. 2007) .......................................................................39, 41

*Jett v. Dallas Indep. Sch. Dist.*,
    491 U.S. 701 (1989) ........................................................................................... 24

*Johnson v. Elk Lake Sch. Dist.*,
    283 F.3d 138 (3d Cir. 2002) ............................................................................. 29

*Jowett v. Churchill*,
    2021 U.S. Dist. LEXIS 164661 (D.N.J. Aug. 31, 2021) ............................... 22

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
    926 F.2d 1406 (3d Cir. 1991) ............................................................................. 9

*Kline v. Mansfield*,
    255 Fed. Appx. 624 (3d Cir. 2007) ................................................................. 27

*Kobrick v. Stevens*,
    2017 U.S. Dist. LEXIS 141692 (M.D.Pa. Sept. 1, 2017) ......................... 16, 18

*Kranson v. Valley Crest Nursing Home*,
    755 F.2d 46 (3d Cir. 1985) ............................................................................... 31

*L.E. v. Plainfield Pub. Sch. Dist.*,
    194 A.3d 105 (N.J. Super. Ct. App. Div. 2018), *certif. denied*, 202 A.3d
    621 (2019) ......................................................................................................... 39

*L.H. v. Pittston Area Sch. Dist.*,
    130 F. Supp. 3d 918 (M.D.Pa. 2015) ............................................................. 43

*Lockhart v. Willingboro High Sch.*,
    170 F. Supp. 3d 722 (D.N.J. 2015) .............................................................. 26, 27

*Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*,
    2015 U.S. Dist. LEXIS 139907 (W.D.Pa. Oct. 14, 2015) .......................... 28

*M.G. v. Crisfield*,
    547 F. Supp. 2d 399 (D.N.J. 2008) ................................................................. 31

*M.S. v. Susquehanna Twp. Sch. Dist.*,
    43 F. Supp. 3d 412 (M.D.Pa. 2014) .................................................... 23, 29, 43

*Mark v. Borough of Hatboro,*
  51 F.3d 1137 (3d Cir. 1995) ....................................................................21, 22

*Mason v. Sportsman's Pub,*
  702 A.2d 1301 (N.J. Super. Ct. App. Div. 1997) ......................................... 36

*Mavrikidis v. Petullo,*
  707 A.2d 977 (N.J. 1998) .............................................................................. 37

*McGhee v. City of Philadelphia,*
  2003 U.S. Dist. LEXIS 19513 (E.D. Pa. Oct. 23, 2003) ............................. 22

*McKinney v. Mathew,*
  2016 N.J. Super. Unpub. LEXIS 1543 (N.J. Super. Ct. App. Div. Jun.
  29, 2016) ....................................................................................................39, 41

*Melnick v. Scott Twp.,*
  2006 U.S. Dist. LEXIS 8678 (M.D.Pa. Feb. 16, 2006) ................................ 42

*Merman v. City of Camden,*
  824 F. Supp. 2d 581 (D.N.J. 2010) ............................................................23, 30

*Monaco v. City of Camden,*
  2018 U.S. Dist. LEXIS 30825 (D.N.J. Apr. 14, 2008) ................................. 30

*Monaghan v. Holy Trinity Church,*
  646 A.2d 1130 (N.J. Super. Ct. App. Div. 1994) ......................................... 38

*Monell v. Dep't of Social Servs.,*
  436 U.S. 658 (1978) ...................................................................................... 21

*Montgomery v. DeSimone,*
  159 F.3d 120 (3d Cir. 1998) ......................................................................... 30

*Morrow v. Balaski,*
  719 F.3d 160 (3d Cir. 2013) ......................................................................... 22

*N.Y. Shipping Ass'n v. Waterfront Comm'n of N.Y. Harbor,*
  2014 U.S. Dist. LEXIS 119877 (D.N.J. Aug. 27, 2014) .............................. 48

*Nobrega v. Edison Glen Assocs.*,
    772 A.2d 368 (N.J. 2001) ................................................................... 47

*P.H. v. Sch. Dist. of Kansas City*,
    265 F.3d 653 (8th Cir. 2001) ........................................................16, 18

*Page ex rel. Page v. Sch. Dist. of Philadelphia*,
    45 F. Supp. 2d 457 (E.D.Pa. 1999) ................................................... 43

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ........................................................................... 24

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
    998 F.2d 1192 (3d Cir. 1993) ............................................................ 28

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .............................................................. 20

*Phillips v. Nw. Reg'l Commc'ns*,
    667 F. Supp. 2d 555 (W.D.Pa. 2009) ................................................ 36

*Polzo v. Cnty. of Essex*,
    960 A.2d 375 (2008) .......................................................................... 38

*Reese v. Jefferson Sch. Dist.*,
    208 F.3d 736 (9th Cir. 2000) ........................................................14, 17

*Reitz v. Cnty. of Bucks*,
    125 F.3d 139 (3d Cir. 1997) .............................................................. 24

*Romero v. City of New York*,
    839 F. Supp. 2d 588 (E.D.N.Y. 2012) ...........................................16, 18

*Rosa H. v. San Elizario Indep. Sch. Dist.*,
    106 F.3d 648 (5th Cir. 1997) ........................................................13, 16

*Samuelson v. Or. State Univ.*,
    162 F. Supp. 3d 1123 (D.Or. 2016) ...............................................11, 17

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014) .............................................................. 28

*Sines v. Darling Ingredients, Inc.*,
    2020 U.S. Dist. LEXIS 153856 (D.N.J. Aug. 25, 2020) ................................................. 38

*Smith v. Mensinger*,
    293 F.3d 641 (3d Cir 2002) ......................................................................................... 33

*Soper v. Hoben*,
    195 F.3d 845 (6th Cir. 1999) ....................................................................................... 14

*Steinberg v. Sahara Sam's Oasis, LLC*,
    142 A.3d 742 (N.J. 2016) ............................................................................................ 38

*Stoneking v. Bradford Area Sch. Dist.*,
    882 F.2d 720 (3d Cir. 1989) .................................................................................21, 32

*Thomas v. Cumberland Cnty.*,
    749 F.3d 217 (3d Cir. 2014) ........................................................................................ 25

*Thompson v. Ferguson*,
    2020 U.S. Dist. LEXIS 245017 (E.D.Pa. Dec. 31, 2020) ............................................ 28

*Tice v. Cramer*,
    627 A.2d 1090 (N.J. 1993) .......................................................................................... 34

*Twiss v. State*,
    591 A.2d 913 (N.J. 1991) ............................................................................................ 47

*United States v. Silveus*,
    542 F.3d 993 (3d Cir. 2008) ........................................................................................ 29

*Walker v. City of New York*,
    974 F.2d 293 (2d Cir. 1992) ........................................................................................ 26

*Warren v. Reading Sch. Dist.*,
    278 F.3d 163 (3d Cir. 2002) .................................................................................13, 16

*West v. Atkins*,
    487 U.S. 42 (1988) ...................................................................................................... 20

*Whitcraft v. Twp. of Cherry Hill*,
    974 F. Supp. 392 (D.N.J. 1996) ................................................................................. 31

*Williams v. Bd. of Regents,*
   477 F.3d 1282 (11th Cir. 2007) ...................................................................14, 17

*Williams v. Pennridge Sch. Dist.,*
   2018 U.S. Dist. LEXIS 205957 (E.D.Pa. Dec. 6, 2018) .................................. 11

*Zelnick v. Morristown-Beard Sch.,*
   137 A.3d 560 (N.J. Super. Ct. Law Div. 2015) ............................................... 38

## **Statutes**

20 U.S.C. § 1681 ....................................................................................................... 10

42 U.S.C. § 1983 ....................................................................................................... 20

N.J. Stat. Ann. § 2A:61B-1 ..................................................................................... 44

N.J. Stat. Ann. § 9:6-8.10 ........................................................................................ 30

N.J. Stat. Ann. § 18A:11-1 ...................................................................................... 32

N.J. Stat. Ann. § 18A:17-20 .................................................................................... 32

N.J. Stat. Ann. § 59:1-3............................................................................................ 37

N.J. Stat. Ann. § 59:2-2............................................................................................ 34

## PRELIMINARY STATEMENT

Plaintiff John Doe claims that former substitute teacher Kayan Frazier sexually abused him at his elementary school and at various private residences. But Frazier's misconduct does not give rise to a viable cause of action against the Atlantic City Board of Education, former Superintendent Paul A. Spaventa, or current Superintendent Barry Caldwell, who are now forced to defend against an array of statutory, constitutional, and common law claims that Plaintiff (through his mother) has asserted against them and against Principal La'Quetta Small-Frazier (who has separate counsel). The claims against the Board, Spaventa, and Caldwell suffer from a multitude of infirmities, so almost all of them should be dismissed for failure to state a claim.

Plaintiff's Title IX "hostile educational environment" claim in Count 1 is rife with problems. Under Title IX, a federal funding recipient can be held liable if a person with authority to institute corrective measures on the recipient's behalf (known as an "appropriate person") has "actual knowledge" of sexual harassment in the recipient's programs and then exhibits "deliberate indifference" in a way that causes the victim to undergo further harassment. But the Board cannot be held liable for Frazier's alleged off-campus abuse of Plaintiff. And with respect to the on-campus abuse alleged in the amended complaint, Plaintiff has not plausibly shown that an "appropriate person" at the school (a) had "actual knowledge" of any such abuse, or (b) exhibited "deliberate indifference" in a way that caused him to undergo further on-campus abuse.

1

The array of § 1983 "failure to" claims against the Board in Counts 2 and 3 should also be tossed. All these claims require proof that a Board policymaker exhibited deliberate indifference to Plaintiff's constitutional rights. A "pattern" of prior constitutional violations is ordinarily required to demonstrate that level of culpability, as it puts policymakers on notice of a problem that needs correction. But in rare instances, it is also possible to maintain a "single incident" claim where the unconstitutional consequences of the "failure" at issue are "highly predictable."

Plaintiff's "failure to" claims do not plausibly satisfy either standard. For example, the amended complaint does not allege any other similar constitutional violations in the Atlantic City School District, let alone a "pattern" caused by the alleged "training" and "supervision" deficiencies. Next, Plaintiff cannot maintain a "failure to supervise" claim based on the "single incident" theory because sexual abuse is not a "highly predictable" consequence of leaving a teacher unsupervised with a student. Additionally, although Plaintiff claims the Board failed to train Frazier's *co-workers* to detect signs of sexual abuse in students and to report signs or allegations of same, Plaintiff cannot maintain a "failure to train" claim based on the "single incident" theory because (a) the unlawfulness of child sexual abuse is obvious, and (b) such a claim is too attenuated from the underlying injury. Further, the failure to "intervene" and "discipline" claims should be dismissed because the amended complaint does not allege that any Board policymakers were deliberately indifferent to a known threat or likelihood of injury to Plaintiff or were aware of Frazier's alleged abuse while it was

ongoing. Lastly, Plaintiff cannot sustain any failure to "investigate" and "discipline" claims based on conduct that may have preceded Frazier's abuse of him. The amended complaint does not allege that the Board had a history of failing to adequately address any complaints of sexual abuse committed by Frazier or any other employees.

Additionally, all § 1983 claims against Spaventa and Caldwell in Counts 2 and 3 should be dismissed for four reasons. First, the official capacity claims are needlessly duplicative of the claims against the Board itself. Second, Plaintiff has failed to plausibly show how Spaventa and Caldwell participated in violating Plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in Frazier's alleged constitutional violations. Third, Spaventa and Caldwell cannot be held liable for maintaining a harm-causing policy or practice with deliberate indifference to the consequences. Superintendents like Spaventa and Caldwell are not policymakers, and any "failure to" claims against them would fail for the same reasons discussed above with respect to the Board. Fourth, Plaintiff cannot maintain a "failure to intervene" claim against Spaventa or Caldwell because the amended complaint does not allege they failed to put a stop to any sexual abuse that was happening right in front of them.

Further, most of the common law claims against Defendants should be dismissed. For instance, in Counts 5 through 8, Plaintiff pleads an array of common law claims against Frazier in an apparent effort to hold the Board vicariously liable for his alleged misconduct. But Frazier was clearly acting outside the scope of his employment when he allegedly abused Plaintiff at school, so the Board cannot be held

vicariously liable as a matter of law. Next, in Counts 5 and 6, Plaintiff pleads a series of negligence and gross negligence claims against all Defendants, including Spaventa and Caldwell. But the amended complaint does not plead any facts showing how Spaventa or Caldwell breached a duty to Plaintiff. And in Count 8, Plaintiff pleads a claim for intentional infliction of emotional distress ("IIED") against all Defendants, including Spaventa and Caldwell. But again, the amended complaint does not allege that these individuals engaged in any conduct whatsoever, let alone conduct that could be characterized as extreme and outrageous. Instead, Plaintiff alleges that Spaventa and Caldwell failed to act, which is simply insufficient to state a claim.

Lastly, Plaintiff cannot proceed with his new claim under the Child Sexual Abuse Act ("CSAA") in Count 9. Under the CSAA, a person standing *in loco parentis* within the "household" who knowingly permits or acquiesces in sexual abuse by another person can be held liable as a "passive abuser." But a public day school like the one Plaintiff attended does not qualify as a "household" and thus cannot be held liable as a "passive abuser" as a matter of law. And while recent amendments to the CSAA removed the "household" element from the text of the statute, that change was not intended to apply retroactively to events that, as here, occurred before the effective date of the bill.

Thus, this Court should grant this motion and dismiss (a) all claims against Spaventa and Caldwell, and (b) all claims against the Board except for the vicarious liability components of Counts 5 and 6 which are based on Principal Small-Frazier's alleged negligence/gross negligence in the performance of her official duties.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

This matter arises out of a series of incidents of child sexual abuse that allegedly occurred at the Pennsylvania Avenue School in Atlantic City and at various private residences in both Atlantic City and Somers Point. *See generally* Dkt. No. 32, Amended Complaint ("Am. Compl."). Plaintiff John Doe ("Plaintiff") was a student at that elementary school, and Plaintiff Jane Doe ("Jane") is his mother. *See id.* ¶¶ 6, 31. Defendants include: (1) Marty Small, Sr., in both his official capacity as Mayor of Atlantic City and individually; (2) La'Quetta Small-Frazier, in both her official capacity as former Principal of the Pennsylvania Avenue School and individually; (3) Barry Caldwell, solely in his official capacity as current Superintendent of the Atlantic City Board of Education; (4) Paul A. Spaventa, solely in his official capacity as former Superintendent of the Atlantic City Board of Education; (5) the Atlantic City Board of Education ("Board"); and (6) Kayan Ahmed Frazier individually. *See id.* ¶¶ 7-13. The amended complaint refers to the Board, Spaventa, Caldwell, and Small-Frazier collectively as the "'Atlantic City School District' Defendants." *Id.* ¶ 12.

In March 2015, the Board hired Frazier, who is Principal Small-Frazier's cousin, as a substitute teacher. *See* Am. Compl. ¶¶ 27-28. At that time, Frazier lived with Principal Small-Frazier and her husband, Mayor Small, and he was eventually assigned to the Pennsylvania Avenue School, where La'Quetta Small-Frazier was principal. *See id.* ¶¶ 28-29. In "early 2016," Frazier met Plaintiff at that school and "took a particular interest" in him. *Id.* ¶¶ 31, 33. For instance, Frazier would "spend[] a disproportionate

amount of time with [Plaintiff] as compared to other students" and would "take [him] out of class for walks in the hallway so that they could talk privately." *Id.* ¶ 34. In time, Frazier began taking Plaintiff to "the school library, ostensibly to chat." *Id.* ¶ 36. Frazier allegedly used the "privacy" of that setting to begin "sexually assaulting" Plaintiff. *Id.*

In the spring of 2016, Frazier befriended Jane "so that he could be closer to [Plaintiff]." Am. Compl. ¶¶ 38-40. After developing "some degree of trust in Frazier," Jane allowed Frazier to socialize with Plaintiff outside of school. *Id.* ¶¶ 42-47. For instance, in "May or June of 2016," Jane allowed Frazier to take Plaintiff to the movies and to Chuck E. Cheese with Principal Small-Frazier's son. *Id.* ¶ 42. That fall, Jane allowed her son to attend a "sleepover" Frazier was hosting "with his cousins who were roughly [Plaintiff's] age." *Id.* ¶¶ 45-46. After that sleepover, which "concluded without apparent incident," Jane allowed Plaintiff "to spend more time at Frazier's house, with sleepovers becoming more regular." *Id.* ¶ 47. The abuse seemingly continued for an unknown period until Jane "prohibited Frazier from seeing [Plaintiff] and ended contact with Frazier." *Id.* ¶¶ 48-51. Jane took that action after she learned Frazier had gone against her wishes and told Plaintiff his father had passed. *See id.* ¶¶ 50-51.

This is a good point to talk about the substantively and temporally inconsistent allegations against the Board and its personnel. *See* Am. Compl. ¶¶ 70-81. Substantively, the amended complaint alleges Principal Small-Frazier failed to "question[]" that Frazier "was interacting with [Plaintiff] outside of school hours, and was taking him out and hosting him overnight." *Id.* ¶¶ 70-71. But the amended complaint also alleges – albeit

without saying when or why – that Principal Small-Frazier "prohibited her son from joining Frazier and [Plaintiff] on their weekend outings." *Id.* ¶ 72. Temporally, the amended complaint alleges Principal Small-Frazier became aware of Frazier's off-campus interactions with Plaintiff "approximately in early 2016." *Id.* ¶ 70. But elsewhere, the amended complaint says these off-campus interactions occurred much later in the year, *i.e.*, between the spring and the fall of 2016. *See id.* ¶¶ 42-47. Unless Principal Small-Frazier has precognitive abilities, she could not have been aware of Frazier's off-campus interactions with Plaintiff *before* they occurred.

These strange inconsistencies aside, the amended complaint goes on to say that Principal Small-Frazier reported Frazier to the New Jersey Division of Child Protection and Permanency ("DCPP") on February 24, 2017, and to Source4Teachers, "an educational staffing management company that pairs schools with substitute teachers," in February 2017 and on March 15, 2017. Am. Compl. ¶¶ 73-76. But apart from saying that Principal Small-Frazier reported Frazier's "unprofessional" and "inappropriate" conduct to those entities, the amended complaint does not make any attempt to specify *what* that conduct supposedly entailed. *See id.* Instead, the amended complaint says that Frazier kept working at various schools in the Atlantic City School District for "thirteen (13) days in . . . March 2017" and thus "continued to have access to [Plaintiff] on school grounds and continually sexually abused and exploited [Plaintiff]." *Id.* ¶ 78.

Also in March 2017, the Institutional Abuse Investigation Unit ("IAIU") of DCPP "began an investigation concerning Frazier's employment as a full-time

substitute teacher within the Atlantic City School District, likely as a result of [Principal] Small-Frazier's reporting" to DCPP. Am. Compl. ¶ 79. During that investigation (the scope of which seems to shed light on the nature of the "unprofessional" and "inappropriate" conduct Principal Small-Frazier reported to DCPP), Frazier "admitted that he let [Plaintiff] sleep in his bed" and that he "had been texting [a different] nine-year-old male." *Id.* ¶ 80. Neither Frazier nor Plaintiff disclosed any sexual abuse during the investigation. *See id.* "As a result of this investigation, on April 3, 2017, Frazier was terminated as a substitute teacher within the Atlantic City School District" *Id.* ¶ 81.

In October 2018, Jane learned that Frazier had started working for DCPP, so she "allow[ed] Frazier back into her and [Plaintiff's] life." Am. Compl. ¶¶ 54-56. Thereafter, Frazier allegedly kept abusing Plaintiff "at Frazier's old residence in Atlantic City," at "his then-apartment in Somers Point," and "in the home bathroom of Defendants Marty Small and La'Quetta Small-Frazier." *Id.* ¶¶ 58-60.

In February 2019, the FBI received a tip relating to suspected child pornography. Am. Compl. ¶¶ 61-62. After an investigation, Frazier was arrested and charged under various federal child pornography statutes. *See id.* ¶¶ 63-69.

On May 13, 2021, Plaintiffs filed a complaint. *See* Dkt. No. 1. On July 8, 2021, the Board, Caldwell, and Spaventa moved to dismiss, and on July 27, 2021, Principal Small-Frazier followed suit. *See* Dkt. Nos. 24, 28. On August 16, 2021, Plaintiffs filed a nine-count amended complaint. *See* Dkt. No. 32. Count 1 is a Title IX claim against the "Atlantic City Board of Education." Count 2 is a § 1983 claim for failure to intervene,

investigate, and protect against the "Atlantic City School District Defendants." Count 3 is a § 1983 claim for failure to train and supervise against the "Atlantic City School District Defendants." Count 4 is a claim under 18 U.S.C. § 2255 against Frazier. Count 5 is a negligence claim against all Defendants. Count 6 is a gross negligence/recklessness claim against all Defendants. Count 7 is an assault and battery claim against Frazier. Count 8 is an IIED claim against Frazier and the "Atlantic City School District Defendants." Count 9 is a CSAA claim against all Defendants. *See id.* ¶¶ 89-183.

## STANDARD OF REVIEW

"In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). The moving party bears the burden of showing that no claim has been presented. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

9

Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

## POINT I

## THE TITLE IX CLAIM IN COUNT 1 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The Title IX claim in Count 1 should be dismissed for two reasons. First, Plaintiff cannot base his Title IX claim on any alleged off-campus abuse. Second, Plaintiff has failed to plausibly show that an "appropriate person" had "actual knowledge" that Frazier was abusing him at school or that anyone was "deliberately indifferent" to such abuse in a way that caused him to undergo further on-campus abuse. Thus, Count 1 should be dismissed for failure to state a claim.

### A. PLAINTIFF CANNOT MAINTAIN A TITLE IX CLAIM BASED ON ANY OFF-CAMPUS ABUSE.

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable through an implied private right of action for damages against entities receiving federal funds, *see Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75-76 (1992), but only for acts of intentional discrimination. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999).

10

Plaintiff asserts a "hostile educational environment" claim under Title IX. Am. Compl. ¶ 91. To be actionable, the conduct giving rise to that claim must have occurred "in a context subject to the school district's control." *Davis*, 526 U.S. at 645. Relying on the "plain language" of Title IX, which prohibits sexual harassment that occurs "'under' 'the operations of' a funding recipient," the Court in *Davis* held that an entity's liability is confined to "circumstances wherein [it] exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.* (quoting 20 U.S.C. §§ 1681(a), 1687). "Only then can the recipient be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the recipient's programs." *Id.*

From this basic premise, "courts have found that harassment that takes place off of school grounds and/or outside of school hours does not occur under circumstances where the District exercised substantial control over either the harasser or the context in which the harassment occurred." *Williams v. Pennridge Sch. Dist.*, 2018 U.S. Dist. LEXIS 205957, at *20-21 (E.D.Pa. Dec. 6, 2018) (collecting cases); *see also Samuelson v. Or. State Univ.*, 162 F. Supp. 3d 1123, 1131-32 (D.Or. 2016) (granting motion to dismiss a Title IX claim where a school "had no control over" the "off-campus party" where the plaintiff was drugged or the "off-campus apartment" where she was later raped); *Dawn L. v. Greater Johnstown Sch. Dist.*, 614 F. Supp. 2d 555, 568 n.3 (W.D.Pa. 2008) (excluding from Title IX analysis conduct that occurred "outside of the School").

Here, the Title IX claim in Count 1 should be dismissed to the extent it is based on Frazier's alleged off-campus abuse of Plaintiff. Most of the alleged abuse took place

at various private residences. *See* Am. Compl. ¶¶ 47-49; 58-60. In fact, the Title IX claim itself says it is based on abuse "perpetrated by a teacher . . . both within school *and without*." *Id.* ¶ 91(d) (emphasis added). But a school's potential exposure under Title IX is confined to situations where "the misconduct occurs during school hours and on school grounds" because under those circumstances, "the misconduct is taking place 'under' an 'operation' of the funding recipient." *Davis*, 526 U.S. at 646. Thus, Frazier's alleged off-campus abuse of Plaintiff is not actionable under Title IX.

## B.   PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE THAT AN "APPROPRIATE PERSON" HAD "ACTUAL KNOWLEDGE" OF ANY ON-CAMPUS SEXUAL ABUSE.

Even if a Title IX claimant was harassed on school grounds, "not all sexual harassment by teachers is sufficient to impose liability on a school district." *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1254 (11th Cir. 2010). Indeed, "it would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998). Rather, for liability to exist, an "appropriate person" must have had "actual knowledge of discrimination *in the recipient's programs* and [then] fail[ed] to adequately respond" in a way that amounted to "deliberate indifference to discrimination." *Id.* at 290 (emphasis added); *see also Davis*, 526 U.S. at 643 (explaining that Title IX places on districts "the duty not to permit teacher-student harassment *in [their] schools*") (emphasis added). This

"high standard" ensures that schools are only held liable "where their own deliberate indifference effectively 'caused' the discrimination." *Davis*, 526 U.S. at 642-43.

An "appropriate person" is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." *Gebser*, 524 U.S. at 290. A school principal "ordinarily" qualifies as an "appropriate person," *Warren v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir. 2002), but "fellow teachers" do not, unless they have been given "both the duty to supervise the employee who has sexually abused a student and also the power to halt the abuse." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997); *see also Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 346 (W.D.Pa. 2011) (holding that a music teacher was not an "appropriate person" because there was no evidence that he "had the 'authority to institute corrective measures'") (quoting *Gebser*, 524 U.S. at 277).

Meanwhile, "actual notice" is not satisfied merely by pleading "information sufficient to alert the [appropriate person] to the possibility that a teacher was involved in a sexual relationship with a student." *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 360-61 (3d Cir. 2005). *Bostic* rejected such a standard because *Davis* held that "a recipient intentionally violates Title IX . . . where the recipient is deliberately indifferent to *known acts* of teacher-student discrimination," and because "a 'possibility' cannot be equated with a 'known act.'" *Id.* at 361 (quoting *Davis*, 526 U.S. at 643) (emphasis in original). Rather, "[a]n educational institution has 'actual knowledge' if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of

13

the danger." *Id.* In other words, "the plaintiff in a Title IX damages suit based on a teacher's behavior must prove actual knowledge of misconduct, not just actual knowledge of the risk of misconduct." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 708 (E.D.Pa. 2007) (citation omitted). Thus, "some prior allegations of harassment may be sufficiently minimal and far afield from the conduct underlying the plaintiff's Title IX claim that they would not alert a school district official of the risk of a Title IX plaintiff's sexual harassment." *School Board of Broward County*, 604 F.3d at 1258.

Even if an "appropriate person" was put on "actual notice," a plaintiff must also satisfy the "exacting standard" of deliberate indifference, *School Board of Broward County*, 604 F.3d at 1259, by showing the school's remedial measures were "clearly unreasonable in light of the known circumstances." *Douglas*, 836 F. Supp. 2d at 349 (quoting *Davis*, 526 U.S. at 648). And since *Gebser* "incorporate[d] a causation requirement" into the analysis, *id.* at 347, a Title IX claim will fail unless the plaintiff shows the deliberate indifference "led to further sexual harassment." *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1155 (10th Cir. 2006); *see also Bernard v. E. Stroudsburg Univ.*, 700 Fed. Appx. 159, 163 n.3 (3d Cir. 2017) (same); *Reese v. Jefferson Sch. Dist.*, 208 F.3d 736, 740 (9th Cir. 2000) (same); *Soper v. Hoben*, 195 F.3d 845, 855 (6th Cir. 1999) (same). Thus, "a Title IX plaintiff at the motion to dismiss stage must allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff to further discrimination." *Williams v. Bd. of Regents*, 477 F.3d 1282, 1296 (11th Cir. 2007).

Here, the Title IX claim in Count 1 should be dismissed for failure to plausibly allege that an "appropriate person" had "actual knowledge" of any on-campus sexual abuse. For example, Plaintiff cannot rely on the allegation that the Board *itself* "had actual knowledge of the sexual harassment and misconduct created by a teacher within their recipient school and/or school district." Am. Compl. ¶ 92. *See*, *e.g.*, *Doe v. Bd. of Educ.*, 2018 U.S. Dist. LEXIS 109952, at *6-7 (D.N.J. Jul. 2, 2018) (dismissing Title IX claim alleging that "the Board . . . knew or should have known that [the teacher] was engaged in a pattern of conduct that constituted systematic and pervasive sexual harassment"); *Doe v. Clark Cnty. Sch. Dist.*, 2016 U.S. Dist. LEXIS 120867, at *23-24 (D.Nev. Aug. 18, 2016) (dismissing Title IX claim that set forth "conclusory statements that the District and unidentified people in the administration knew of the [t]eacher's reputation and that they knew about her conduct with [plaintiff]" because there were "no factual allegations about which school officials knew or what they knew").

Similarly, while Spaventa and Caldwell likely qualify as "appropriate persons," the amended complaint does not allege that either of them knew about any abuse. Rather, they are lumped into a catch-all category of "Atlantic City School District Defendants," which is not sufficient to withstand dismissal. *See A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 995-96 (S.D.Tex. 2014) (dismissing Title IX claim alleging that "School Officials," a term defined in the complaint as including a superintendent and several other high-ranking school officials, were aware of teacher's abuse).

Nor can Plaintiffs rely on the allegations against the other teachers at his school. Instead of directly pleading what these other teachers knew, Plaintiff tries to indirectly impute a certain level of knowledge to them by saying they never "questioned" Frazier about his alleged abuse of Plaintiff in the school library or about the fact that Frazier was "spending a disproportionate amount of time with [Plaintiff] as compared to other students." Am. Compl. ¶¶ 34-37. But these teachers are not "appropriate persons" because the amended complaint does not say they had "both the duty to supervise [Frazier] and also the power to halt the abuse." *Rosa H.*, 106 F.3d at 660; *see also Douglas*, 836 F. Supp. 2d at 346. Regardless, it is not enough for an appropriate person to know that a teacher was openly spending a significant amount of time with a student or was showing favoritism towards a student. *See, e.g.*, *P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 662-63 (8th Cir. 2001); *Kobrick v. Stevens*, 2017 U.S. Dist. LEXIS 141692, at \*27, \*46-47 (M.D.Pa. Sept. 1, 2017); *Romero v. City of New York*, 839 F. Supp. 2d 588, 608 (E.D.N.Y. 2012); *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 166-67 (D. Mass. 2005).

Further, although Principal Small-Frazier is likely an "appropriate person," *Warren*, 278 F.3d at 171, the allegations pertaining to her actual knowledge and deliberate indifference are patently insufficient. For example, the amended complaint says Frazier sexually abused Plaintiff in the school library. *See* Am. Compl. ¶ 36. But the amended complaint does not specifically allege that Principal Small-Frazier ever had actual knowledge of that on-campus abuse, let alone that her deliberate indifference to any such abuse caused Plaintiff to undergo any *additional* on-campus abuse. These

16

deficiencies are fatal. *See Williams*, 477 F.3d at 1296 ("[A] Title IX plaintiff at the motion to dismiss stage must allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff to further discrimination."); *Reese*, 208 F.3d at 740 ("There is no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations. Thus, under *Davis*, the school district cannot be deemed to have 'subjected' the plaintiffs to the harassment."); *Samuelson*, 162 F. Supp. 3d at 1131 ("Advance notice and the ability to take corrective action remain prerequisites for recipient liability in Title IX sexual harassment actions.").

The remaining allegations against Principal Small-Frazier are also unavailing. For example, Principal Small-Frazier supposedly knew Frazier "was interacting with [Plaintiff] outside of school hours, and was taking him out and hosting him overnight, as her son initially joined Frazier and [Plaintiff] on several of their early outings, such as to the movies and Chuck E. Cheese." Am. Compl. ¶¶ 70-71. But Principal Small-Frazier's alleged knowledge of Frazier's off-campus conduct is of dubious analytical value since off-campus sexual harassment is not actionable under Title IX at all. *See Davis*, 526 U.S. at 645-46; *Williams*, 2018 U.S. Dist. LEXIS 205957, at *20-21.

Regardless, Principal Small-Frazier could not have been "deliberately indifferent to [any] *known acts* of teacher-student discrimination" because the knowledge attributed to her in ¶¶ 70-71 does not indicate that (a) Frazier was in fact abusing Plaintiff at school, or (b) there existed a "sufficiently substantial danger" that Frazier was abusing Plaintiff at school. *Bostic*, 418 F.3d at 360-61 (quoting *Davis*, 526 U.S. at 643) (emphasis

17

in original); *see also Chancellor*, 501 F. Supp. 2d at 708 (requiring "actual knowledge of misconduct, not just actual knowledge of the risk of misconduct"). In fact, the knowledge attributed to Principal Small-Frazier is not even "sufficient to alert [her] to the possibility that [Frazier] was involved in a sexual relationship with [Plaintiff]." *Bostic*, 418 F.3d at 360. *See P.H.*, 265 F.3d at 662-63; *Kobrick*, 2017 U.S. Dist. LEXIS 141692, at *27, *46-47; *Romero*, 839 F. Supp. 2d at 608; *D'Agostino*, 367 F. Supp. 2d at 166-67. Even if it is, a "mere 'possibility'" of abuse is not enough to put anyone on "actual notice." *Chancellor*, 501 F. Supp. 2d at 708 (quoting *Bostic*, 418 F.3d at 361).

Lastly, it does not matter that Principal Small-Frazier reported Frazier to DCPP and to Source4Teachers. *See* Am. Compl. ¶¶ 73-75. Beyond alleging Principal Small-Frazier reported Frazier's "unprofessional" and "inappropriate" conduct to those entities, the amended complaint does not specify *what* that conduct entailed or *why* it was reported. Thus, it is impossible to infer that Principal Small-Frazier was aware of a "sufficiently substantial danger" that Frazier was abusing Plaintiff at school.[1] *Bostic*, 418 F.3d at 361. Since Plaintiff does not describe the "circumstances" that were "known" to Principal Small-Frazier, he has not shown that her remedial measures were "clearly unreasonable in light of the known circumstances." *Douglas*, 836 F. Supp. 2d at 349.

Thus, the Title IX claim against the Board in Count 1 should be dismissed for failure to state a claim.

---

[1] Given the scope of the IAIU investigation, it seems Principal Small-Frazier reported Frazier to DCPP for his off-campus conduct with Plaintiff. *See* Am. Compl. ¶¶ 79-80.

## POINT II

## ALL § 1983 CLAIMS AGAINST THE BOARD IN COUNTS 2 AND 3 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The § 1983 "failure to" claims against the Board in Counts 2 and 3 should be dismissed for failure to state a claim. All these claims require proof that a Board policymaker exhibited deliberate indifference to Plaintiff's constitutional rights. A "pattern" of prior constitutional violations is ordinarily required to demonstrate that level of culpability, as it puts policymakers on notice of a problem that needs correction. But in rare instances, it is also possible to maintain a "single incident" claim where the unconstitutional consequences of the "failure" at issue are "highly predictable."

Nonetheless, Plaintiff's "failure to" claims do not plausibly satisfy either standard. First, Plaintiff does not allege any other similar constitutional violations anywhere in the District, let alone a "pattern" caused by the "training" and "supervision" deficiencies alleged in the amended complaint. Second, Plaintiff cannot maintain a "failure to supervise" claim based on the "single incident" theory because sexual abuse is not a "highly predictable" consequence of leaving a teacher unsupervised with a student. Third, although Plaintiff says the Board failed to train Frazier's *co-workers* to detect signs of sexual abuse in students and to report signs or allegations of same, Plaintiff cannot maintain a "failure to train" claim based on the "single incident" theory because (a) the unlawfulness of child sexual abuse is obvious, and (b) such a claim is too attenuated from the underlying injury. Fourth, the failure to "intervene" and

"discipline" claims should be dismissed since the amended complaint does not allege any Board policymakers were deliberately indifferent to a known threat or likelihood of injury to Plaintiff or were aware of Frazier's alleged abuse while it was ongoing. Fifth, Plaintiff cannot sustain any failure to "investigate" and "discipline" claims based on conduct that may have preceded Frazier's abuse of him because the amended complaint does not allege the Board had a history of failing to adequately address any complaints of sexual abuse committed by Frazier or any other employees. Thus, all § 1983 claims against the Board in Counts 2 and 3 should be dismissed.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

[42 U.S.C. § 1983.]

Thus, under § 1983, "a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). But "the under-color-of-state-law element of § 1983 excludes from its reach

'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted).

Even if a plaintiff was deprived of a constitutional right by an individual acting under the color of state law, however, a plaintiff "may not rely on a theory of respondeat superior to impose liability on municipalities." *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). In other words, a municipal "policy" or "custom" must have been the "moving force behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Thus, "the proper analysis requires [a court] to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [entity] is responsible for that violation." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1149-50 (3d Cir. 1995).

Here, Plaintiff claims Frazier abused him at school while Frazier was working as a substitute, so Defendants assume *arguendo* that this qualifies as a deprivation of his liberty interest in his bodily integrity by a person acting under the color of state law. *See Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 709 n.1 (3d Cir. 1993); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989). But even if Plaintiff's alleged on-

campus harm "was caused by a constitutional violation," he has failed to plausibly show

that the Board "is responsible for that violation." *Mark*, 51 F.3d at 1149-50.[2]

_____

[2] Buried within Counts 2 and 3, Plaintiff also makes a passing reference to the elements of a state-created danger claim, which are styled in such a way as to suggest that Principal Small-Frazier affirmatively acted to create or increase the risk that Frazier would sexually abuse Plaintiff. *See* Am. Compl. ¶¶ 107-10; 128-30. Although Principal Small-Frazier is represented by separate counsel, Defendants are nonetheless compelled to point out that such a claim is hopelessly unavailing for two reasons.

First, to the extent Frazier was acting under color of state law when he was allegedly abusing Plaintiff, a state-created danger claim is the wrong theory of liability to assert here. The state-created danger theory is "a narrow exception to the general rule that the state has no duty to protect its citizens from *private harms*." *Henry v. City of Erie*, 728 F.3d 275, 286 (3d Cir. 2013) (emphasis added). Based on the limited scope of this theory, several courts in this Circuit have dismissed state-created danger claims which, as here, are premised on harms directly inflicted by state actors. *See Jowett v. Churchill*, 2021 U.S. Dist. LEXIS 164661, at *17-21 (D.N.J. Aug. 31, 2021); *A.B. v. Vineland Bd. of Educ.*, 2019 U.S. Dist. LEXIS 93126, at *17-18 (D.N.J. Jun. 4, 2019); *Green v. Mt. Carmel Area Sch. Dist.*, 2019 U.S. Dist. LEXIS 69021, at *16 n.63 (M.D. Pa. Apr. 24, 2019); *McGhee v. City of Philadelphia*, 2003 U.S. Dist. LEXIS 19513, at *6 (E.D. Pa. Oct. 23, 2003).

Second, to the extent Frazier was *not* acting under color of state law when he was allegedly abusing Plaintiff, there are no facts in the amended complaint showing that Principal Small-Frazier affirmatively used her state authority to create or enhance a danger to Plaintiff. Instead, Plaintiff claims that Principal Small-Frazier *failed* to act or intervene, which is insufficient as a matter of law. *See Bright v. Westmoreland Cnty.*, 443 F.3d 276, 282 (3d Cir. 2006), *cert. denied*, 549 U.S. 1264 (2007) ("It is [only] misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause. . . . [W]e have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised."); *see also G.S. v. Penn-Trafford Sch. Dist.*, 813 Fed. Appx. 799, 802 (3d Cir. 2020) ("'[A] school's repeated inaction and failure to protect a student does not constitute an 'affirmative act.'") (quoting *Morrow v. Balaski*, 719 F.3d 160, 177-78 (3d Cir. 2013)); *B.W. v. Career Tech. Ctr. of Lackawanna Cnty.*, 422 F. Supp. 3d 859, 899 (M.D.Pa. 2019) (holding that a school district's alleged "failure to adequately train, supervise and monitor" a teacher who sexually abused students could not sustain a state-created danger claim).

As the Third Circuit recently explained, "a § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). First, "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.* "[A] plaintiff presenting an unconstitutional policy must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject. And, if alleging [an unconstitutional] custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 105-06.

Second, a plaintiff may claim that his or her injury was "caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest*, 930 F.3d at 105. A plaintiff proceeding on such a theory has the "demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Id.* at 106. This avenue of liability "arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline." *Id.* at 105; *see also Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) ("We have previously applied the Supreme Court's rulings in failure-to-train cases to other claims of liability through inaction."); *M.S. v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 421 (M.D.Pa. 2014) (same for "failure to intervene" claims); *Merman v. City of Camden*, 824 F. Supp. 2d 581, 589 (D.N.J. 2010) (same for "failure to investigate" claims).

Here, Plaintiff relies exclusively on the second avenue of municipal liability from *Forrest*, as he pleads several "failure to" claims in Counts 2 and 3. To maintain a "failure to" claim, a plaintiff must show that "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 463 U.S. 51, 61 (2011); *see also Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (stating that it is "difficult" to maintain a "failure to" claim against a municipality). Such "deliberate indifference" must be exhibited by the final policymakers themselves, *see Connick*, 463 U.S. at 61-62; *City of Canton*, 489 U.S. at 389, meaning "those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "[W]hether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

There are two ways to maintain a "failure to" claim under § 1983. First, a plaintiff can point to "[a] pattern of similar constitutional violations," which is "'ordinarily necessary' to demonstrate deliberate indifference." *Connick*, 563 U.S. at 62 (citing *Bryan County*, 520 U.S. at 409). "A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and '[t]heir continued adherence to an approach

24

that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the deliberate indifference – necessary to trigger municipal liability.'" *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Bryan County*, 520 U.S. at 407).

Second, "in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations," even "without showing a pattern of constitutional violations." *Bryan County*, 520 U.S. at 409. In this scenario, the "unconstitutional consequences" of the particular "failure" at issue must be "patently obvious." *Connick*, 563 U.S. at 64. For example, the Court in *City of Canton* "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* at 63 (discussing *City of Canton*, 489 U.S. at 390 n.10). "Given the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." *Id.* at 63-64 (quoting *Bryan County*, 520 U.S. at 409). But proving deliberate indifference under such a "single incident" theory is "a difficult task." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2014) (citation omitted).

### A. THE FAILURE TO SUPERVISE CLAIM AGAINST THE BOARD IN COUNT 3 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff's "failure to supervise" claim against the Board should be dismissed for two reasons. First, the amended complaint does not allege *any* other similar constitutional violations either within the Atlantic City School District or at the Pennsylvania Avenue School, let alone a "pattern" of similar constitutional violations by unsupervised Board employees. *See Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 734-35 (D.N.J. 2015) (granting motion to dismiss because the complaint did not identify a pattern of prior sexual assaults attributable to the school's alleged failure to supervise its employees). Second, Plaintiff cannot rely on the "single-incident" theory of liability because it is not "plainly obvious that [the Board's alleged] failure to supervise its employees would lead to increased sexual assault." *Id.* at 735; *see also Walker v. City of New York*, 974 F.2d 293, 299-300 (2d Cir. 1992) ("Where the proper [behavior] is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.").

### B. THE FAILURE TO TRAIN CLAIM AGAINST THE BOARD IN COUNT 3 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff claims the Board failed to train Frazier's *co-workers* to "detect signs of sexual harassment, abuse, or exploitation in students" and to "report signs or allegations of same." Am. Compl. ¶ 121. But courts are skeptical that such a claim is cognizable:

> In any failure-to-train case, the governmental entity's failure to provide proper training is a step removed from the constitutional violation resulting from that failure. That is why a plaintiff seeking to hold a governmental entity liable in this context must demonstrate that his or her injury would have been avoided if the *offending employee* had been trained under a program that was not deficient in the identified respect. Where a plaintiff attempts to extend this theory to a government's failure to train *other employees* to detect or report the actions of an offending employee, the government's alleged inaction is a good deal further removed from the constitutional violation. For this reason, it is not clear whether such an attenuated failure-to-train claim is *ever* cognizable under § 1983.
>
> [*Douglas*, 836 F. Supp. 2d at 364 (citations omitted, emphasis in original).]

Regardless, the amended complaint does not allege *any* other similar constitutional violations either within the District or at the Pennsylvania Avenue School, let alone a "pattern" of similar constitutional violations caused by the training deficiencies alleged in ¶ 121. *See Lockhart*, 170 F. Supp. 3d at 734-35 (granting motion to dismiss where complaint did not identify a pattern of prior sexual assaults attributable to the alleged training deficiency); *Douglas*, 836 F. Supp. 2d at 364 (dismissing failure to train claim for lack of "a pattern of sexual exploitation stemming from the failure of [the school district's] teachers to detect or report signs of child abuse").

Further, Plaintiff cannot rely on the "single incident" theory. *See Kline v. Mansfield*, 255 Fed. Appx. 624, 630 (3d Cir. 2007) ("[B]ecause not committing the crime of sexually abusing a child is obvious, the failure of [the district] to train its employees to spot signs of sexual abuse such as [the teacher's] 'grooming' methods was not deliberately

indifferent."); *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 2015 U.S. Dist. LEXIS 139907, at *46-51 (W.D.Pa. Oct. 14, 2015) (granting motion to dismiss "single incident" claim against school which was premised on an allegation that it failed to train other teachers to "detect and report signs of sexual abuse" by the abusive teacher, reasoning that the claim was too "attenuated" from the plaintiff's constitutional injury).

One other point is worth addressing. In Count 2, Plaintiff attacks a Board policy entitled, "Harassment, Intimidation, and Bullying." Plaintiff claims that policy is problematic because it (a) requires school employees to report violations of that policy which are based on "reliable information" before the investigation which is supposedly necessary to confirm the reliability of that information can even take place, and (b) gives "would-be reporter[s]" too much "discretion" to make the initial reliability determination themselves. Am. Compl. ¶¶ 122-24; *see also id.* ¶ 24.

There are three problems with Plaintiff's criticisms. First, Plaintiff has cited the wrong policy. The correct policy is "District Policy 4281 – Inappropriate Staff Conduct," and it does not condition the obligation to report staff misconduct on the receipt of "reliable" information. *See* Exhibit A, at pp.1-2.[3] Second, an investigation is

---

[3] This policy is publicly available on the Board's website for anyone to access at any time, so it is a matter of public record subject to judicial notice. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (explaining that a court deciding a motion to dismiss may consider "matters of public record of which the court can take judicial notice"); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (explaining that a "matter of public record" is a document to which the public has "unqualified access"); *Thompson v. Ferguson*, 2020 U.S. Dist. LEXIS 245017, at *3 & n.2 (E.D.Pa. Dec. 31, 2020) (taking judicial notice, on a motion to dismiss, of a prison policy which was

not always necessary before a recipient of information can conclude it is reliable. *See,
e.g., United States v. Silveus*, 542 F.3d 993, 1000 (3d Cir. 2008) (discussing how police can
rely on their "prior knowledge" to assess the reliability of a tip). Third, even if a *Monell*
claim could be based on a policy that is deficient in the manner alleged, Plaintiff has not
plausibly shown "a direct causal link between [the alleged deficiencies] and the alleged
constitutional deprivation." *Carswell*, 381 F.3d at 244. The only school employee whose
knowledge is pleaded is Principal Small-Frazier, but Plaintiff only faults her for not
reporting behavior he thinks was sufficiently indicative of sexual abuse on its own, *see*
Am. Compl. ¶ 71, not that she (or anyone else) wrongly failed to report that behavior
after concluding it was not based on reliable information.

### C. THE FAILURE TO INVESTIGATE, INTERVENE, AND DISCIPLINE CLAIMS AGAINST THE BOARD IN COUNT 2 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The claims against the Board for failure to "intervene" and "discipline" should
be dismissed because the amended complaint does not plausibly allege that any Board
policymakers "had knowledge of and exhibited deliberate indifference in the face of a
known threat or likelihood of injury to" Plaintiff or were "aware of the constitutionally
violative sexual relationship while the relationship was ongoing." *M.S.*, 43 F. Supp. 3d
at 421-25 (citing *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 144 n.1 (3d Cir. 2002)); *see*

---

publicly available on its website); *In re Vertex Pharms., Inc. Sec. Litig.*, 357 F. Supp. 2d 343,
352 n.4 (D.Mass. 2005) (taking judicial notice, on a motion to dismiss, of a FDA policy
which was publicly available on its website).

*also Flood v. Sherk*, 400 F. Supp. 3d 295, 308-09 (W.D.Pa. 2019) ("[D]istrict courts in the Third Circuit appear to uniformly refuse to consider a school principal to be a final policymaker . . . under § 1983."). Identical reasoning compels dismissal of the claim for "failure to report." *See* Am. Compl. ¶ 106(a). Also, while the obligation to report child abuse comes from N.J. Stat. Ann. § 9:6-8.10, "[s]ection 1983 does not provide a cause of action for violations of state statutes" and "a state statute cannot, in and of itself, create a constitutional right." *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990).

Nor can Plaintiff sustain any failure to "investigate" and "discipline" claims based on conduct that may have preceded Frazier's abuse of Plaintiff. Under § 1983, a municipality might be held liable if it has a history of inadequately investigating complaints against employees and insufficiently disciplining them "which, in turn, suggest[s] tacit approval of and encouragement for its [employees'] unconstitutional misconduct." *Merman*, 824 F. Supp. 2d at 589. But here, the amended complaint does not allege the Board had a history of failing to adequately address any complaints of sexual abuse committed by Frazier, *see Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996), or by any other employees. *See Merman*, 824 F.3d at 594; *Monaco v. City of Camden*, 2018 U.S. Dist. LEXIS 30825, at *34 (D.N.J. Apr. 14, 2008). The amended complaint simply does not allege that a policymaker failed to act despite "knowledge of a prior pattern of similar incidents." *Montgomery v. DeSimone*, 159 F.3d 120, 127 (3d Cir. 1998).

Lastly, the *Monell* claims cannot be based on any alleged Board policy deviations. *See* Am. Compl. ¶¶ 103-06. *See Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d

Cir. 1985) ("[T]he carelessness of an employee in failing to follow a policy . . . does not fasten [§ 1983] liability on the governmental agency."); *Whitcraft v. Twp. of Cherry Hill*, 974 F. Supp. 392, 398 (D.N.J. 1996) ("[A] police department's deviation from an internal guideline does not itself trigger a violation of constitutional dimension.").

Thus, all § 1983 claims against the Board in Counts 2 and 3 should be dismissed for failure to state a claim.[4]

**POINT III**

**ALL § 1983 CLAIMS AGAINST SPAVENTA AND CALDWELL IN COUNTS 2 AND 3 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

There are four reasons why all § 1983 claims against Spaventa and Caldwell in Counts 2 and 3 should be dismissed for failure to state a claim.

First, the § 1983 claims against Spaventa and Caldwell in their official capacities are needlessly duplicative of the § 1983 claims against the Board itself. *See Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131-32 (D.N.J. 2017).

Second, Plaintiff has not shown how Spaventa and Caldwell were personally involved in the alleged constitutional violations. *See Iqbal*, 556 U.S. at 676. In the context of § 1983 claims against supervisors, "[a] plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or

---

[4] Also, despite the request for punitive damages in the "prayer for relief," the Board is immune from punitive damages under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *M.G. v. Crisfield*, 547 F. Supp. 2d 399, 422 (D.N.J. 2008).

actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). But Plaintiff does not plead *any* facts showing how Spaventa or Caldwell "participated in violating [his] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Instead, they are lumped into a catch-all category of "Atlantic City School District Defendants," which is not sufficient. *See A.B.*, 2019 U.S. Dist. LEXIS 93126, at *21-23 (granting motion to dismiss supervisory liability claims against three high-ranking school personnel based on a similar "group pleading problem").

Third, Plaintiff cannot rely on the theory of supervisory liability which provides: "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M.*, 372 F.3d at 586 (quoting *Stoneking*, 882 F.2d at 725); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015) (stating that "failure to" claims against supervisors are "considered a subcategory of policy or practice liability"). Superintendents are not policymakers. *See* N.J. Stat. Ann. § 18A:11-1(c) (granting school boards the power to "make, amend, and repeal rules . . . for the employment, regulation of conduct and discharge of its employees"); N.J. Stat. Ann. § 18A:17-20 (providing that superintendents have a seat on the school board "but shall have no vote"); Exhibit B,

District Policy 0120 – Authority and Powers, at p.1 (stating that the Board is responsible for "development" and "implementation" of policy). Regardless, any "failure to" claims against Spaventa and Caldwell would fail for the same reasons discussed above with respect to the Board. *See Carter*, 181 F.3d at 356 ("[T]he standard for personal liability [of a supervisor] under section 1983 is the same as that for municipal liability.").

Fourth, although Plaintiff says the Atlantic City School District Defendants "had a reasonable opportunity to intervene," Am. Compl. ¶ 105, he cannot maintain a "failure to intervene" claim against Spaventa or Caldwell because he does not allege they failed to put a stop to any constitutional violations that were "tak[ing] place in [their] presence." *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir 2002).

Thus, all § 1983 claims against Spaventa, and Caldwell in Counts 2 and 3 should be dismissed for failure to state a claim.

## POINT IV

### ALL COMMON LAW CLAIMS SEEKING TO HOLD THE BOARD VICARIOUSLY LIABLE FOR FRAZIER'S ALLEGED ABUSE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In Counts 5 through 8, Plaintiff pleads several common law claims against Frazier in an effort to hold the Board vicariously liable for his alleged misconduct. To this end, the amended complaint says Frazier "was an agent and/or employee of the Pennsylvania Avenue School, acting or failing to act within the scope, course, and authority of his employment and his employer." Am. Compl. ¶ 13. But that assertion is

fundamentally incompatible with the facts pleaded, which clearly show that Frazier acted outside the scope of his employment when he allegedly abused Plaintiff at school. Thus, all common law claims in Counts 5 through 8 seeking to hold the Board vicariously liable for Frazier's alleged abuse of Plaintiff should be dismissed.

In New Jersey, the tort liability of public entities like the Board is controlled by the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 *et seq*. Under the NJTCA, if the employee was acting within the scope of his employment, then unless the claim is barred by an applicable NJTCA immunity, the entity can be held vicariously liable for the employee's tort. *See Tice v. Cramer*, 627 A.2d 1090, 1094 (N.J. 1993); N.J. Stat. Ann. § 59:2-2(a); *see also Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007) (explaining that N.J. Stat. Ann. § 59:2-2(a) "adopts the general concept of vicarious liability expressed by cases decided prior to the adoption of the [NJTCA]"); *Carter v. Reynolds*, 783 A.2d 724, 726 (N.J. Super. Ct. App. Div. 2001), *aff'd*, 815 A.2d 460 (N.J. 2003) ("Generally, under the doctrine of *respondeat superior,* an employer is vicariously liable for the torts of an employee only if the employee was acting within the scope of his or her employment at the time the tort was committed.").

The "scope of employment" standard "refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Di Cosala v. Kay*, 450 A.2d 508, 513 (N.J. 1982) (citation omitted). Thus, an employee's conduct is within the scope of

his employment if "it is the kind he is employed to perform," "it occurs substantially within the authorized time and space limits," "it is actuated, at least in part, by a purpose to serve the master," and "if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." *Davis v. Devereaux Found.*, 37 A.3d 469, 489-90 (N.J. 2012) (quoting Restatement (Second) of Agency § 228 (1)).

"Conversely, an employee's act is outside of the scope of his or her employment 'if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" *Davis*, 37 A.3d at 490. (quoting Restatement § 228 (2)). "Only rarely will intentional torts fall within the scope of employment." *Id.* When an employee commits a crime, it will not fall within the scope of employment unless "the employee's responsibilities include[d] enforcement of the employer's rules" and "[t]he employee's attempt to compel compliance with those rules was met with resistance and provoked a physical altercation." *Id.* at 491. But a master cannot be held vicariously liable for "serious" crimes which are "different from what servants in a lawful occupation are expected to do" or "clearly inappropriate to or unforeseeable in the accomplishment of the authorized result." *Id.* at 490.

Here, Frazier was not acting within the scope of his employment when he allegedly abused Plaintiff on school property, so all common law claims seeking to hold the Board vicariously liable for that alleged abuse should be dismissed. For example, Frazier's alleged conduct was clearly not the behavior he was "employed to perform" as part of his duties as a substitute teacher, and there is no indication that his conduct

35

was "actuated, at least in part, by a purpose to serve the master." *Davis*, 37 A.3d at 490. In fact, this case is remarkably like *Cosgrove v. Lawrence*, 520 A.2d 844, 849 (N.J. Super. Ct. Law Div. 1986), *aff'd*, 522 A.2d 483 (N.J. Super. Ct. App. Div. 1987), where the court held that a therapist who initiated a sexual relationship with his patient during their therapy sessions was not acting within the scope of his employment because his conduct "was not of the kind he was employed to perform but was different in kind from that authorized" and "was too little actuated by a purpose to serve the master."

Additionally, even if Frazier used any "force," the use of force was not an inseparable part of his job, so his conduct was "unexpectable." *Davis*, 37 A.3d at 490; *cf. Mason v. Sportsman's Pub*, 702 A.2d 1301, 1310 (N.J. Super. Ct. App. Div. 1997) (finding that a bouncer acted within the scope of his employment by trying to eject a bar patron because, among other things, his use of force was "not unexpectable"). And the amended complaint does not allege that Frazier was trying to "compel compliance" with any Board rules. *Id.* at 491. In sum, Plaintiff cannot hold the Board vicariously liable for Frazier's "serious" on-campus crimes because they are "different from what servants in a lawful occupation are expected to do" and "clearly inappropriate to or unforeseeable in the accomplishment of the authorized result." *Id.* at 490.[5]

---

[5] For the sake of completeness, it bears noting that the Board cannot be held vicariously liable for Frazier's off-campus misconduct or for anything that allegedly happened after he was terminated in April 2017. *See Davis*, 37 A.3d at 489-90 (explaining that an employee's conduct is within the scope of his employment if, among other things, "it occurs substantially within the authorized time and space limits"); *Phillips v. Nw. Reg'l Commc'ns*, 667 F. Supp. 2d 555, 580 n.17 (W.D.Pa. 2009) ("[I]t it is clear that at the time

One last point is worth mentioning. The foregoing discussion was premised on the assumption that Frazier was a Board employee. *See* Am. Compl. ¶ 13. But that assumption may not be accurate since the amended complaint says Principal Small-Frazier reported Frazier to Source4Teachers, "an educational staffing management company that pairs schools with substitute teachers in their area and fills vacancies as needed." *Id.* ¶¶ 74-75. Based on that description, it appears Frazier was an independent contractor, *not* a Board employee, which means the Board cannot be held vicariously liable for his misconduct as a matter of law. *See* N.J. Stat. Ann. § 59:1-3 (stating that the word "employee" as used in the NJTCA "does not include an independent contractor"); *Mavrikidis v. Petullo*, 707 A.2d 977, 985 (N.J. 1998) ("[T]he doctrine of *respondeat superior* does not ordinarily apply in the context of an independent contractor.").

Thus, all common law claims in Counts 5 through 8 seeking to hold the Board vicariously liable for Frazier's alleged abuse of Plaintiff should be dismissed.

## POINT V

### ALL NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS AGAINST SPAVENTA AND CALDWELL IN COUNTS 5 AND 6 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff's negligence and gross negligence claims against Spaventa and Caldwell in Counts 5 and 6 should be dismissed because the amended complaint does not plead

---

[the assailant] acted, he was no longer an [] employee [of the defendant entity] and cannot be said to have been acting within the scope of that former employment.").

any facts showing how Spaventa or Caldwell personally breached a duty to Plaintiff. Instead, Counts 5 and 6 are based entirely on a series of bald, conclusory allegations, which is not sufficient. Thus, all negligence and gross negligence claims against Spaventa and Caldwell in Counts 5 and 6 should be dismissed.

Negligence "will never be presumed"; indeed, "there is a presumption against it." *Buckelew v. Grossbard*, 435 A.2d 1150, 1157 (N.J. 1981). To sustain a negligence claim in New Jersey, "a plaintiff must prove four core elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" *Polzo v. Cnty. of Essex*, 960 A.2d 375, 384 (2008) (citation and brackets omitted). "Gross negligence has the same elements as ordinary negligence because '[n]egligence differs from gross negligence only in degree, not in kind.'" *Zelnick v. Morristown-Beard Sch.*, 137 A.3d 560, 567 (N.J. Super. Ct. Law Div. 2015) (quoting *Monaghan v. Holy Trinity Church*, 646 A.2d 1130, 1133 (N.J. Super. Ct. App. Div. 1994)); *see also Sines v. Darling Ingredients, Inc.*, 2020 U.S. Dist. LEXIS 153856, at *14 (D.N.J. Aug. 25, 2020) (same). "Whereas negligence is 'the failure to exercise ordinary or reasonable care' that leads to a natural and probable injury, gross negligence is 'the failure to exercise slight care or diligence.'" *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 754 (N.J. 2016) (citations omitted).

With respect to the first two elements of a negligence claim (and thus a gross negligence claim), "[s]chool officials have a general duty 'to exercise reasonable supervisory care for the safety of students entrusted to them, and [are accountable] for injuries resulting from failure to discharge that duty.'" *Jerkins v. Anderson*, 922 A.2d 1279,

1285 (N.J. 2007) (quoting *Caltavuturo v. City of Passaic*, 307 A.2d 114, 117 (N.J. Super. Ct. App. Div. 1973)). "The supervisory duty extends to 'foreseeable dangers . . . [that] arise from the careless acts or intentional transgressions of others.'" *L.E. v. Plainfield Pub. Sch. Dist.*, 194 A.3d 105, 112 (N.J. Super. Ct. App. Div. 2018), *certif. denied*, 202 A.3d 621 (2019) (quoting *Frugis v. Bracigliano*, 827 A.2d 1040, 1050 (2003)). For example, in *Frugis*, the Court "held that the supervisory duty extended to protect students from the transgressions of an adult – a school principal who privately photographed students [in his school office] in inappropriate poses." *Id.* (citing *Frugis*, 827 A.2d at 1050).

But schools are not "guarantors of students' safety." *Jerkins*, 922 A.2d at 1291. "A school district's responsibility has temporal and physical limits, and its obligation to act reasonably does not diminish the responsibilities that parents or guardians have to their children." *Id.* Indeed, the supervisory duty itself stems from the fact that "parents entrust their children to the care of schools," which is why the scope of a school official's duty is always framed in terms of the students who are "entrusted to them" and who are "in [their] charge . . . throughout the school day." *Id.* at 1285; *see also L.E.*, 194 A.3d at 111. That is also why, in *McKinney v. Mathew*, 2016 N.J. Super. Unpub. LEXIS 1543, at *12 (N.J. Super. Ct. App. Div. Jun. 29, 2016), the court declined "to expand both the 'temporal and physical limits' of the school officials' responsibility by imposing a duty to supervise the conduct of a high school student before he arrives on school property and before he is entrusted to the care of the school."

Here, Plaintiff's negligence and gross negligence claims against Spaventa and Caldwell in Counts 5 and 6 should be dismissed as implausible. In Count 5, Plaintiff claims "All Defendants" breached their duties "to take ordinary reasonable care in the execution of their respective professional . . . responsibilities imposed by law." Am. Compl. ¶ 149. Plaintiff then claims "the Atlantic City School District Defendants" as a group failed to "promptly and effectively respond to the instances of known sexual harassment and abuse perpetrated by . . . Frazier." *Id.* ¶ 150. Similarly, Count 6 says, "All Defendants . . . had a duty of care towards [Plaintiff] to take reasonable steps to prevent . . . Frazier from using the authority, access, and instrumentalities afforded to him by his position within the Atlantic City School District to target, groom, and sexually abuse . . . [Plaintiff]." *Id.* ¶ 158. In the next paragraph, Plaintiff says, "All Defendants acted in a . . . grossly negligent manner with gross and callous indifference to the consequences, and thus breached their . . . duties of care." *Id.* ¶ 159.

But these conclusory allegations are not sufficient to state a plausible claim against Spaventa and Caldwell because they are devoid of any factual support. *See Iqbal*, 556 U.S. at 678. Spaventa and Caldwell are mentioned in the caption and in the paragraphs introducing them as parties, but the amended complaint does not contain facts showing how *they* personally breached a duty of care to Plaintiff while he was at school. That deficiency is fatal. *See Bullock v. Ancora Psychiatric Hosp.*, 2011 U.S. Dist. LEXIS 92307, at *37 (D.N.J. Aug. 18, 2011) (granting motion to dismiss negligence claim because the complaint did not "allege facts sufficient to establish that [four

individual defendants] breached a duty of care . . . or any specific act[s] or omissions by those [d]efendants that proximately caused [the plaintiff's] injuries").[6]

Thus, all negligence and gross negligence claims against Spaventa and Caldwell in Counts 5 and 6 should be dismissed for failure to state a claim.

## POINT VI

### ALL IIED CLAIMS AGAINST SPAVENTA AND CALDWELL IN COUNT 8 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff's IIED claim against Spaventa and Caldwell in Count 8 should be dismissed because the amended complaint does not allege that they engaged in any conduct whatsoever, let alone conduct that could be characterized as extreme and outrageous. Instead, Count 8 alleges that Spaventa and Caldwell failed to act, which is not enough to establish liability for IIED. Thus, the IIED claim against Spaventa and Caldwell in Count 8 should be dismissed for failure to state a claim.

An IIED claim has four elements. First, "the plaintiff must prove that the defendant acted intentionally or recklessly." *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988). "For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability

---

[6] Clearly, Plaintiff cannot base his negligence and gross negligence claims on anything that allegedly happened while he was *not* entrusted to the care of his elementary school. *See Jerkins*, 922 A.2d at 1291; *McKinney*, 2016 N.J. Super. Unpub. LEXIS 1543, at *12.

that emotional distress will follow." *Id.* Second, "the defendant's conduct must be . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Third, "the defendant's actions must have been the proximate cause of the plaintiff's emotional distress." *Id.* Fourth, the plaintiff's emotional distress "must be so severe that no reasonable man could be expected to endure it." *Id.*

Here, the IIED claim against Spaventa and Caldwell should be dismissed because the amended complaint does not allege that they engaged in *any* conduct whatsoever, let alone any extreme and outrageous conduct. *See A.B. v. Vineland Bd. of Educ.*, 2018 U.S. Dist. LEXIS 107486, at *23 (D.N.J. Jun. 27, 2018) (dismissing IIED claim where complaint "alleged no facts indicating that Defendants . . . engaged in conduct that could be characterized as extreme and outrageous"); *see also Belt v. GEO Grp. Inc.*, 2007 U.S. Dist. LEXIS 25114, at *17 (E.D.Pa. Apr. 4, 2007) (dismissing IIED claim where there was "no evidence of any conduct" by one defendant towards the plaintiff); *Melnick v. Scott Twp.*, 2006 U.S. Dist. LEXIS 8678, at *9-10 (M.D.Pa. Feb. 16, 2006) (dismissing IIED claim against several individuals where complaint did not allege they were "involved in the allegedly outrageous and extreme conduct" at issue).

Instead, the IIED claim against "the Atlantic City School District Defendants" says they *failed* to "report, intervene, investigate, and/or address" Frazier's alleged misconduct. Am. Compl. ¶ 168. But "claims of a failure to act are generally insufficient to rise to the level necessary for IIED." *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d

42

918, 931 (M.D.Pa. 2015); *see also M.S.*, 43 F. Supp. 3d at 431 (same); *Page ex rel. Page v. Sch. Dist. of Philadelphia*, 45 F. Supp. 2d 457, 469 (E.D.Pa. 1999) (same).[7]

Thus, the IIED claim against Spaventa and Caldwell in Count 8 should be dismissed for failure to state a claim.

## POINT VII

### ALL CSAA CLAIMS AGAINST THE BOARD, SPAVENTA, AND CALDWELL IN COUNT 9 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

There are two reasons why Plaintiff's newly minted CSAA claim in Count 9 should be dismissed with prejudice. First, a public day school like the Pennsylvania Avenue School does not qualify as a "household" and thus cannot be held liable under the "passive abuser" portion of the CSAA. Plaintiff does not even try to suggest otherwise, as the amended complaint does not allege that he attended that school on a full-time basis, that he resided there, or that he relied on that school for his basic life necessities. Second, although recent amendments to the CSAA removed the "household" element from the text of the statute, the legislative history of that bill makes it clear that this amendment was *not* intended to apply retroactively to events that, as here, occurred before December 1, 2019 (*i.e.*, the effective date of the bill). Thus, Plaintiff's CSAA claim in Count 9 should be dismissed with prejudice.

---

[7] These arguments also preclude the Board from being held vicariously liable based on any IIED claims against Principal Small-Frazier.

## A. THE PENNSYLVANIA AVENUE SCHOOL IS NOT A "HOUSEHOLD" AND THUS CANNOT BE HELD LIABLE AS A PASSIVE ABUSER UNDER THE CSAA.

"Enacted in 1992, the CSAA . . . established the first statutory cause of action for sexual abuse in New Jersey." *Hardwicke v. Am. Boychoir Sch.*, 902 A.2d 900, 909 (N.J. 2006). As originally approved, the CSAA provided, in relevant part:

> "Sexual abuse" means an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult. A parent, resource family parent, guardian or other person standing in loco parentis within the household who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse . . .
>
> [N.J. Stat. Ann. § 2A:61B-1(a)(1).]

The CSAA thus "establishes two classes of abusers: those persons who inflict the abuse (active abusers), and those persons who stand *in loco parentis* within the household who know of the abuse and who fail to protect the child (passive abusers)." *Hardwicke*, 902 A.2d at 910. In this case, Plaintiff asserts a "passive abuser" claim against the Board, as he claims that Frazier abused him on school property and that "[t]he Atlantic City School District Defendants owed a duty to protect and safeguard [him] from sexual abuse of the nature complained-of herein, and failed to do so, even when in possession of active and/or constructive knowledge of the danger of sexual abuse." Am. Compl. ¶ 178. To maintain such a claim, Plaintiff "must demonstrate the defendant is: '(1) a person (2) standing *in loco parentis* (3) within the household.'" *J.P. v. Smith*, 134 A.3d 977, 986 (N.J. Super. Ct. App. Div.), *certif. denied*, 141 A.3d 297 (N.J. 2016).

The third element of a "passive abuser" claim is central to this motion. In *Hardwicke*, the New Jersey Supreme Court found that a boarding school qualified as a "household" under the CSAA because the students were "full-time boarders" and depended on the school (in the absence of their parents or other care givers) for "amenities characteristic of . . . a home," including the necessities of life, such as food and shelter. *Hardwicke*, 902 A.2d at 915; *see also J.H. v. Mercer Cnty. Youth Det. Ctr.*, 930 A.2d 1223, 1231 (N.J. Super. Ct. App. Div. 2007) (holding that a youth detention center was a "household" under the CSAA because it provided "similar services" to its detainees that the boarding school in *Hardwicke* provided to its full-time boarders).

However, recognizing that a school's provision of such amenities and services to its "full-time boarders" is a "crucial element" to "passive abuser" liability under the CSAA, several courts have distinguished *Hardwicke* to hold that a public day school does *not* qualify as "household" and thus cannot be a "passive abuser" as a matter of law. *See J.P.*, 134 A.3d at 988 (explaining that "the term 'within the household' connotes a degree of 'residential' custody that is more than fleeting and temporary in nature" and thus affirming dismissal of a CSAA claim against a public high school that plaintiff did not attend full-time); *D.M. v. River Dell Reg'l High Sch.*, 862 A.2d 1226, 1232 (N.J. Super. Ct. App. Div. 2004), *certif. denied*, 907 A.2d 1015 (N.J. 2006) (affirming dismissal of CSAA claim against a public high school because it did not qualify as a "household").

Similarly, in *Bryson v. Diocese of Camden*, 909 F. Supp. 2d 364, 370 (D.N.J. 2012), the court granted a motion to dismiss a CSAA claim against a private Catholic school

because the plaintiff "did not reside at the school as the plaintiff did in *Hardwicke*" but rather "resided at all times with his parents, who provided him with home amenities," and because the school "provided services and amenities normally associated with those of a typical after-school program of a school or a church, not those of a home." In other words, the school "did not function as a parent to [the plaintiff] in the same way the boarding school did in *Hardwicke* to the plaintiff in that case." *Id.*

Here, the CSAA claim against the Pennsylvania Avenue School (and thus the Board) should be dismissed with prejudice because that public day school does not qualify as a "household" under the CSAA as a matter of law. *See J.P.*, 134 A.3d at 988; *D.M.*, 862 A.2d at 1232. Plaintiff appears to have conceded as much, as the amended complaint does not even mention the word "household," let alone plead facts sufficient to show that Plaintiff attended the Pennsylvania Avenue School on a full-time basis, that he resided there, or that he relied on that school for his basic life necessities. *Cf. Hardwicke*, 902 A.2d at 915; *J.H.*, 930 A.2d at 1231. That deficiency is fatal, *see Iqbal*, 556 U.S. at 676, and it cannot be cured by granting Plaintiff leave to file yet another amended complaint because the Board only operates public day schools.

### B.   RECENT AMENDMENTS TO THE CSAA DO NOT APPLY RETROACTIVELY TO EVENTS THAT OCCURRED BEFORE DECEMBER 1, 2019.

"Settled rules of statutory construction favor prospective rather than retroactive application of new legislation." *James v. N.J. Mfrs. Ins. Co.*, 83 A.3d 70, 77 (N.J. 2014). "The preference for prospective application 'is based on [] long-held notions of fairness

and due process,'" *id.* (quoting *Cruz v. Cent. Jersey Landscaping, Inc.*, 947 A.2d 1228, 1235 (N.J. 2008)), which "suggests that government give prior notice of a statute so citizens may conform their behavior before its enforcement." *Twiss v. State*, 591 A.2d 913, 916 (N.J. 1991); *see also Gibbons v. Gibbons*, 432 A.2d 80, 84 (N.J. 1981) ("It is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair. There is general consensus among all people that notice or warning of the rules that are to be applied to determine their affairs should be given in advance of the actions whose effects are to be judged by them.") (citation omitted). Thus, statutes should only be applied prospectively unless "there is an 'unequivocal expression of contrary legislative intent.'" *Nobrega v. Edison Glen Assocs.*, 772 A.2d 368, 377 (N.J. 2001) (quoting *Dewey v. R.J. Reynolds Tobacco Co.*, 577 A.2d 1239, 1252 (N.J. 1990)).

Here, it seems Plaintiff is trying to side-step the precedential weight of cases like *J.P.* and *D.M.*, as he does not allege that the Pennsylvania Avenue School constituted a "household" under the CSAA. To be sure, on May 13, 2019, Governor Murphy signed into law P.L. 2019, c.120, which contained a section that amended the language of N.J. Stat. Ann. § 2A:61B-1(a)(1) by omitting the phrase, "within the household." That omission evinces the New Jersey Legislature's intent to overturn cases like *J.P.* and *D.M.* and thus to have the CSAA apply to public day schools standing *in loco parentis* to the alleged victim of abuse. *See* Exhibit C, Senate Judiciary Committee's Statement to Senate Committee Substitute for Senate No. 477, at p.5 ("The 'household' limitation would be deleted by the bill, so that 'passive' abuser liability could apply to any individual person,

or private or public entity, who takes custody and control of children even on a limited, temporary basis, so long as this custody and control is sufficient to establish the person or entity as being 'in loco parentis.'").[8] Thus, Plaintiff seems to think he can now maintain a CSAA claim against the Pennsylvania Avenue School (and thus the Board) because the "household" element no longer stands as an impediment.

Unfortunately for Plaintiff, however, his position is squarely foreclosed by the legislative history that accompanied P.L. 2019, c.120, which makes it clear that this change to the CSAA was not meant to apply retroactively to events that, as here, occurred before December 1, 2019 (*i.e.*, the effective date of the bill). Indeed, when the Legislature passed that bill, it also (a) amended the Charitable Immunity Act to codify several judicially recognized exceptions thereto (s.5 and 6); (b) created two new, extended statute of limitations periods for sexual abuse claims (depending on whether the person was abused as a minor or as an adult) (s.2); and (c) established a two-year window for otherwise time-barred suits to be filed for acts for sexual abuse that occurred before the bill's effective date (s.9). *See* Exhibit C, at pp.6-7.

The Legislature then explained that "for *some* actions," the bill would "permit retroactive application of standards of liability to *past acts of abuse* for which liability did not previously exist." Exhibit C, at p.1 (emphasis added). For example, with respect to

---

[8] Legislative history is a matter of public record that can be considered on a motion to dismiss. *See N.Y. Shipping Ass'n v. Waterfront Comm'n of N.Y. Harbor*, 2014 U.S. Dist. LEXIS 119877, at *46 (D.N.J. Aug. 27, 2014); *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, 2012 U.S. Dist. LEXIS 177488, at *6 (D.N.J. Dec. 14, 2012).

the extended statute of limitations period for child victims (section 2), the Legislature said: "The bill would establish retroactive application of the standard of liability set forth in the Charitable Immunity Act, . . . as amended by the bill in section 5." *Id.* at p.2. The Legislature included similar language in its explanation of the part of the bill that created an extended statute of limitations period for adult victims (also section 2). *See id.* at p.4 ("The retroactive application of the amended Charitable Immunity Act, per section 5, would also apply to adult victim suits filed under the new, extended statute of limitations."). And with respect to the two-year window for otherwise time-barred suits to be filed for acts of abuse that occurred before the bill's effective date (section 9), the Legislature said: "The same retroactive application of the amended Charitable Immunity Act, per section 5, . . . that would apply to lawsuits filed during any applicable extended statute of limitations period would also apply to child and adult victim suits filed during the two-year window established by this section." *Id.* at pp.7-8.

But in the section of the legislative history pertaining to the CSAA amendment discussed above, the Legislature distinguished that amendment from the ones contained in sections 2 and 9 of the bill, thus making it clear this change was not meant to apply retroactively to events that, as here, occurred before December 1, 2019:

> Also of note, a cause of action . . . based on the expanded liability against a 'passive' abuser, removing the 'household' setting as a requirement for liability, is not listed in section 2 or section 9 concerning the retroactive application of certain newly created forms of liability to lawsuits brought under the new, extended statute of limitations or . . . during a two-year

> filing window available for otherwise time-barred claims . . .
> and *is intended to only apply prospectively*.

[Exhibit C, at pp.5-6 (emphasis added).]

The text of P.L. 2019, c.120 is consistent with the legislative history. *See* Exhibit D. There are three places where the Legislature said a cause of action "shall be subject to the provisions of" the Charitable Immunity Act (as amended): (1) the extended statute of limitations period for child victims; (2) the extended statute of limitations period for adult victims; and (3) the two-year window for otherwise time-barred suits to be filed for acts of abuse that occurred before the bill's effective date. *See id.* Conspicuously absent from those three sections, however, is any reference to the CSAA (as amended). *See id.* If not for the legislative history, the Court would have to rely on basic principles of statutory construction to ascertain the significance of that omission. *See, e.g., Brodsky v. Grinnel Haulers, Inc.*, 853 A.2d 940, 946 (N.J. 2004) (discussing "[t]he cannon of statutory construction, *expression unius est exclusion alterius*," which means "expression of one thing suggests the exclusion of another left unmentioned"). Fortunately, the legislative history obviates the need to engage in that analysis.

So, the Legislature did not intend for the CSAA amendment to be applied retroactively to events like the ones at issue in this case. That means Plaintiff cannot maintain a "passive abuser" CSAA claim against the Pennsylvania Avenue School (and thus the Board) without satisfying the "household" element of such a claim. As explained above, however, Plaintiff cannot satisfy that element as a matter of law, so

his CSAA claim in Count 9 should be dismissed with prejudice. A contrary holding would require the Court to disregard both the plain language of the legislative history quoted above and the nuanced way in which the Legislature addressed retroactivity for some new standards of liability but not others. It would also require the Court to disregard "[s]ettled rules of statutory construction," which "favor prospective rather than retroactive application of new legislation." *James*, 83 A.3d at 77.[9]

Thus, Plaintiff's CSAA claim in Count 9 should be dismissed with prejudice for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and dismiss (a) all claims against Spaventa and Caldwell, and (b) all claims against the Board except for the vicarious liability components of Counts 5 and 6 which are based on Principal Small-Frazier's alleged negligence/gross negligence in the performance of her official duties.

Respectfully submitted,

ANDERSON & SHAH LLC
By:   s/ Benjamin H. Zieman
Dated:      September 10, 2021        Benjamin H. Zieman, Esq.

---

[9] Defendants also join in Principal Small-Frazier's other arguments compelling dismissal of the CSAA claim. For example, Plaintiff has failed to plausibly show that Frazier subjected him to "sexual abuse" in the school library as that term has been specifically defined under N.J. Stat. Ann. § 2A:61B-1(a)(1)-(3) because the details of what supposedly happened at that location are not alleged. Plaintiff has also failed to plausibly show that anyone had actual knowledge of what was supposedly happening in the library. *See J.H.*, 930 A.2d at 1231-32; *see also* Exhibit C, at p.5 ("Both an 'active' and 'passive' abuser are subject to a knowing (willful) standard of liability, and therefore this section does not create any liability based on merely negligent acts resulting in abuse.").