**HILL WALLACK LLP**
**Jeffrey L. Shanaberger, Esq. - 20931983**
21 Roszel Road
Princeton, NJ 08543
(609) 924-0808
Attorneys for Defendant, La'Quetta Small
(improperly pled as La'Quetta Small-Frazier)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE, on behalf of JOHN DOE, her minor child,<br><br>     Plaintiff,<br>vs.<br><br>MARTY SMALL, SR., in his official capacity as Mayor of Atlantic City, New Jersey, and individually, et al.<br><br>     Defendants. | Civil Action. No. 1:21-cv-11189-JHR-SAK<br><br>**Document electronically filed**<br><br>**ORAL ARGUMENT REQUESTED PER L.CIV.R. 78.1(b)**<br><br>**MOTION DAY – OCTOBER 4, 2021** |

---

### BRIEF OF DEFENDANT LA'QUETTA SMALL IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

**Of Counsel:**
Jeffrey L. Shanaberger, Esq., Attorney ID # 20931983
**On the Brief:**
Jeffrey L. Shanaberger, Esq.
Cherylee O. Melcher, Esq., Attorney ID # 16972003

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF FACTS/PROCEDURAL HISTORY ...........................4

STANDARD OF REVIEW ......................................................................9

LEGAL ARGUMENT ............................................................................12

POINT I ..................................................................................................12

    PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS IN COUNTS II AND III AGAINST LA'QUETTA SMALL MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM ...............................................................................................12

    A.   Ms. Small in her Official Capacity ........................................14

    B.   Ms. Small in her Individual Capacity .....................................15

       1.   Ms. Small had no personal involvement in the deprivation of rights ...15

       2.   Ms. Small cannot be liable as a supervisor ...........................16

       3.   State-Created Danger liability is inapplicable .....................19

    C.   Ms. Small is Entitled to Qualified Immunity ...........................24

POINT II ................................................................................................26

    COUNTS V AND VI MUST BE DISMISSED AS THE GENERAL STATE LAW CLAIMS OF NEGLIGENCE LACK FACTUAL SPECIFICITY AND CANNOT SURVIVE A MOTION TO DISMISS UNDER RULE 12(b)(6) ......26

POINT III ...............................................................................................34

    COUNT VIII MUST BE DISMISSED AS PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST LA'QUETTA SMALL ...................................................34

POINT IV ...............................................................................................35

    PLAINTIFF'S CLAIM IN COUNT IX FOR A VIOLATION OF THE CHILD SEXUAL ABUSE ACT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM ...............................................................................................35

    A.   Recent Amendments to the CSAA Do Not Apply Retroactively ...........36

    B.   Ms. Small is Not a Passive Abuser Under the CSAA ..............................39

       1.   Ms. Small did not stand *in loco parentis* to plaintiff for any acts that allegedly occurred in her home ..................................................................39

       2.   Ms. Small was not a person within the plaintiff's household ..............41

3.     Plaintiff has not pled "sexual abuse" as defined by the CSAA ............42

4.     Ms. Small did not know of and acquiesce to Frazier's sexual abuse ...43

POINT V .....................................................................................................44

  PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES ........................44

CONCLUSION ..........................................................................................46

## TABLE OF AUTHORITIES

**Cases**

A.B. v. Vineland Bd. of Educ.,
   2019 WL 2354609 (D.N.J. Jun. 4, 2019) ............................................................20

A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.,
   372 F.3d 572 (3d Cir. 2004) ...............................................................................16

Ashcroft v. Iqbal,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .................... 1, 10, 11, 33

Baker v. Monroe Tp.,
   50 F.3d 1186 (3d Cir. 1995) ................................................................................18

Bell Atl. Corp. v. Twombly,
   550 U.S. 544, S. Ct. 1955, 167 L.Ed.2d 929 (2007) ......................................9, 10

Benedict v. Podwats,
   109 263 A.2d 486 (N.J. Super. Ct. App. Div.),
   aff'd, 271 A.2d 417 (N.J. 1970) ..........................................................................31

Bright v. Westmoreland County,
   443 F.3d 276 (3d Cir. 2006) .......................................................................... 21, 23

Bryson v. Diocese of Camden,
   909 F.Supp.2d 364 (D.N.J. 2012)........................................................................41

Buckelew v. Grossbard,
   435 A.2d 1150 (N.J. 1981) ............................................................................ 27, 34

Buckeley v. Trenton Sav. Fund Soc'y,
   544 A.2d 857 (N.J. 1988) ....................................................................................34

Bullock v. Ancora Psychiatric Hosp.,
   2011 WL 3651352 (D.N.J. Aug. 18, 2011) ..........................................................30

Butz v. Economou,
   438 U.S. 478, 98 S.Ct. 2894 (1978) ....................................................................25

Caltavuturo v. City of Passaic,
   307 A.2d 114 (N.J. Super. Ct. App. Div. 1973)...................................................28

City of Newport v. Fact Concerts,
   453 U.S. 247, 101 S.Ct. 2748 (1981) ..................................................................44

Clohesy v. Food Circus Supermarkets, Inc.,
   694 A.2d 1017 (N.J. 1997) ..................................................................................32

County of Sacramento v. Lewis,
   523 U.S. 833 (1998) ............................................................................................15

Cruz v. Cent. Jersey Landscaping, Inc.,
   947 A.2d 1228 (N.J. 2008) ..................................................................................38

D.M. v. River Dell Regional High School,
862 A.2d 1226 (N.J. Super. Ct. App. Div. 2004),
certif. denied, 907 A.2d 1015 (N.J. 2006) ..........................................................41
D.R. v. Middle Bucks Area Vocational Tech. Sch.,
972 F.2d 1364 (3d Cir. 1992) .................................................................................22
DeShaney v. Winnebago Cnty. Dep't of Social Servs.,
489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) .......................................19
Edwards v. A.H. Cornell & Sons, Inc.
610 F.3d 217 (3d Cir. 2010) ...................................................................................10
Flood v. Sherk,
400 F. Supp. 3d 295 (W.D.Pa. 2019) ....................................................................17
Fowler v. UPMC Shadyside,
578 F. 3d 203 (3d Cir. 2009) ........................................................................... 10, 11
Frugis v. Bracigliano,
827 A.2d 1040 (N.J. 2003) ............................................................................... 28, 40
G.A.H. v. K.G.G.,
210 A.3d 907 (N.J. 2019) ........................................................................................33
Gremo v. Karlin,
363 F.Supp.2d 771 (E.D. Pa. 2005)........................................................................23
Gruenke v. Seip,
225 F.3d 290 (3d Cir.2000) .....................................................................................40
Hafer v. Melo,
502 U.S. 21, 112 S.Ct. 358 (1991) .........................................................................14
Hardwicke v. American Boychoir School,
188 N.J. 69 (2006) ........................................................................................ 36, 39, 41
Harlow v. Fitzgerald,
457 U.S. 800, 102 S.Ct. 2727 (1982) .............................................................. 24, 25
Henry v. City of Erie,
728 F.3d 275 (3d Cir. 2013) ...................................................................................19
Hopkins v. Fox & Lazo Realtors,
625 A.2d 1110 (N.J. 1993) .....................................................................................32
In re Rockefeller Ctr. Props., Inc. Sec. Litig.,
311 F.3d 198 (3d Cir. 2002) ...................................................................................11
J.H. v. Mercer County Youth Detention Center,
930 A.2d 1223 (N.J. Super. Ct. App. Div. 2007)..................................................43
J.P. v. Smith,
134 A.3d 977 (N.J. Super. App. Div.),
certif. denied, 141 A.3d 297 (N.J. 2016) ..............................................................41
J.S. v. R.T.H.,
714 A.2d 924 (N.J. 1998) ............................................................................... 32, 33

James v. N.J. Mfrs. Ins. Co.,
   83 A.3d 70 (N.J. 2014) ...................................................................38

Janowski v. City of N. Wildwood,
   259 F. Supp. 3d 113 (D.N.J. 2017)....................................................15

Jerkins v. Anderson,
   922 A.2d 1279 (N.J. 2007) ....................................................... 28, 29

Johnson v. Roselle EZ Quick LLC,
   143 A.3d 254 ( N.J. 2016) ...............................................................38

Jowett v. Churchill,
   2021 WL 3879084 (D.N.J. Aug. 31, 2021) ........................................20

K.P. v. Corsey, III,
   228 F.Supp.2d 547 (D.N.J. 2002), rev'd on other grounds,
   77 Fed.Appx. 611, 2003 WL 22338566 (3d Cir. 2003) .....................17

Kelly v. County of Monmouth,
   883 A.2d 411 (N.J. Super. Ct. App. Div. 2005)..................................44

Kentucky v. Graham,
   473 U.S. 159 (1985) ......................................................................14

Kollar v. Lozier,
   669 A.2d 845 (N.J. Super. Ct. App. Div.),
   certif. denied, 678 A.2d 714 (N.J. 1996).............................................45

L.E. v. Plainfield Pub. Sch. Dist.,
   194 A.3d 105 (N.J. Super. Ct. App. Div. 2018),
   certif. denied, 202 A.3d 621 (N.J. 2019) ....................................... 28, 29

Leang v. Jersey City Bd. of Educ.,
   969 A.2d 1097 (N.J. 2009) ...............................................................24

Maeker v. Ross,
   99 A.3d 795 (N.J. 2014) ...................................................................38

Malley v. Briggs,
   475 U.S. 335, 106 S.Ct. 1092 (1986) .................................................25

McDermott v. Clondalkin Grp., Inc.,
   649 Fed.Appx. 263 (3d Cir. 2016) ....................................................11

McGhee v. City of Philadelphia,
   2003 WL 22518759 (E.D. Pa. Oct. 23, 2003) ....................................20

Mitchell v. Forsyth,
   472 U.S. 511, 105 S.Ct. 2806 (1985) .................................................25

Monaghan v. Holy Trinity Church,
   646 A.2d 1130 (N.J. Super. Ct. App. Div. 1994)................................27

Morrow v. Balaski,
   719 F.3d 160 (3d Cir. 2013) ....................................................... 19, 22

Morse v. Lower Merion Sch. Dist.,
   132 F.3d 902 (3d Cir. 1997) ................................................................ 14, 21, 23

Murrell v. School Dist. No. 1, Denver, Colorado,
   186 F.3d 1238 (10th Cir. 1999) ...........................................................17

Nobrega v. Edison Glen Assocs.,
   772 A.2d 368 (N.J. 2001) ...................................................................38

Pearson v. Callahan,
   555 U.S. 223, 129 S.Ct. 808 (2009) ............................................... 25, 26

Phillips v. County of Allegheny,
   515 F.3d 224 (3d Cir. 2008) ..............................................................11

Pica v. Sarno,
   907 F.Supp. 795 (D.N.J. 1995) .........................................................44

Polzo v. Cnty. of Essex,
   960 A.2d 375 (N.J. 2008) ..................................................................27

Ramirez v. U.S.,
   998 F.Supp. 425 (D.N.J. 1998) .........................................................45

Reichle v. Howards,
   566 U.S. 658, 132 S. Ct. 2088 (2012) ..............................................26

Rode v. Dellarciprete,
   845 F. 2d 1195 (3d Cir. 1988) ...........................................................16

Sacci v. Metaxas,
   810 A.2d 1119 (N.J. Super. Ct. App. Div. 2002) ..............................33

Salerno v. O'Rourke,
   555 F.Supp. 750 (D.N.J. 1983) .........................................................15

Santiago v. Warminster Twp.,
   629 F.3d 121 (3d Cir. 2010) ..............................................................16

Saucier v. Katz,
   533 U.S. 194, 121 S.Ct. 2151 (2001) ............................................ 25, 26

Scott v. Harris,
   550 U.S. 372, 127 S.Ct. 1769 (2007) ...............................................25

Smith v. Wade,
   461 U.S. 30, 103 S.Ct. 1625 (1983) ..................................................44

Steinberg v. Sahara Sam's Oasis, LLC,
   142 A.3d 742 (N.J. 2016) ..................................................................27

Van Engelen v. O'Leary,
   732 A.2d 540 (N.J. Super. Ct. App. Div.),
   certif. denied, 744 A.2d 1208 (N.J. 1999)..........................................45

Vernonia Sch. Dist. 47J v. Acton,
   515 U.S. 646 (1995) ..........................................................................40

Zelnick v. Morristown-Beard Sch.,
    137 A.3d 560 (N.J. Super. Ct. Law Div. 2015) ....................................................27

## Statutes

29 U.S.C. § 794 ...........................................................................................................1
42 U.S.C. § 1983 ............................................ 1, 2, 12, 14, 15, 16, 17, 19, 24, 26, 44
N.J.S.A. 18A:11-1(c) .................................................................................................17
N.J.S.A. 2A:61B-1 .................................................................................................3, 35
N.J.S.A. 2A:61B-1(a)(1) ............................................................................... 36, 42, 43
N.J.S.A. 2A:61B-1(a)(2) ............................................................................................42
N.J.S.A. 2A:61B-1(a)(4) ............................................................................................42
N.J.S.A. 59:3-14 .........................................................................................................44
P.L. 2019, c.120 .................................................................................................. 36, 38

## Other Authorities

Black's Law Dictionary 803 (8th ed. 2004) ...............................................................39
S. Judiciary Comm. Statement to S. Comm. Substitute for S. No. 477-L.2019, c.
    120 (March 7, 2019) ............................................................................................37

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................................ 1, 9, 10, 26, 33, 34, 46

## PRELIMINARY STATEMENT

On August 16, 2021, plaintiff John Doe through his mother Jane Doe filed an amended complaint in the United Stated District Court, District of New Jersey, against Marty Small, Sr., La'Quetta Small ("Small" or "Ms. Small"), Barry Caldwell, Paula Spaventa, the Atlantic City Board of Education, and Kayan Ahmed Frazier.  The gravamen of the action is that Kayan Frazier, a substitute teacher within the Atlantic City Schools, began to groom John Doe, an elementary school student, in spring 2016 and then sexually abuse him beginning in fall 2016.  Plaintiff's amended complaint purports to allege violations of plaintiff's federal civil rights pursuant to 42 U.S.C. § 1983 and Title IX, 20 U.S.C. § 1681, et seq., as well as certain state law claims in connection with Frazier's conduct.

Defendant La'Quetta Small hereby moves pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the amended complaint for its failure to state a claim upon which relief can be granted pursuant to Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Plaintiff's allegations against Small in her individual and official capacities for various "failure to" violations of 42 U.S.C. § 1983 in Counts II and III fail to state a claim.  First, all allegations against Small in her official capacity are duplicative of the claims against the public entity Atlantic City Board of Education.  Second, Small as a school principal is not a Board policymaker and there are no facts pled that she exhibited deliberate indifference to

1

plaintiff's constitutional rights, including any facts that she was aware of a known threat or likelihood of injury to plaintiff or of Frazier's alleged abuse and ignored it. Third, there are no facts to show that Small participated in violating plaintiff's constitutional rights, directed others to violate them, or had knowledge of and acquiesced in Frazier's alleged constitutional violations. Fourth, there are no fact to establish liability under a state-created danger theory. Finally, Small is entitled to qualified immunity for any alleged § 1983 violations. Consequently, plaintiff's federal claims fail and must be dismissed.

In Counts V, VI and VIII plaintiff pled common law claims against Small that equally fail to state a claim. Specifically, Counts V and VI assert claims for negligence, and gross negligence and reckless, respectively, but there are no facts pled that show how Small breached any duty owed to plaintiff that proximately caused an injury; the claims are pled generally as "all defendants" breached a duty of care; and there are no facts that Small's conduct could be considered reckless. In Count VIII, plaintiff asserts a claim for intentional infliction of emotional distress against all defendants, including Small. However, there are no facts pled to show that Small engaged in any conduct that could be characterized as extreme and outrageous; rather, the allegations are merely that Small failed to act, which is insufficient to establish liability for intentional infliction of emotional distress. Accordingly, plaintiff's common law claims must be dismissed.

Plaintiff's claims in Count IX against Small for a violation of the Child Sexual Abuse Act, N.J.S.A. 2A:61B-1, ("CSAA") also lack merit. The CSAA is inapplicable to a public day school and its employees as the school is not a "household." Though the recent amendment to the CSAA removed the "household" element, it cannot be applied retroactively to events that, as here, occurred before December 1, 2019, the effective date of the law. Even if the "household" element was removed, there are no facts pled to show that Small can be held liable as a passive abuser under the CSAA. Finally, plaintiff seeks punitive damages from Small in the prayer for relief which must be dismissed as there are no facts to show that her conduct constituted a crime, actual malice or willful misconduct to subject her to such damages.

The amended complaint is utterly devoid of any factual and legal specification that exposes Small to liability. Plaintiff's allegations contain "buzz words" and constitute mere conclusory statements without specific factual support. As the amended complaint fails to state any viable claim against Small, it must be dismissed with prejudice.

## STATEMENT OF FACTS/PROCEDURAL HISTORY[1]

This matter arises out of a series of incidents of child sexual abuse that allegedly occurred at the Pennsylvania Avenue School ("PAS") in Atlantic City and at various private residences in both Atlantic City and Somers Point.  See generally Amended Complaint ("Compl.").  Plaintiff John Doe ("plaintiff") was an elementary school student at PAS, and plaintiff Jane Doe ("Jane") is his mother.  Id. ¶¶6, 31. Defendants include: (1) Marty Small, Sr., in both his official capacity as Mayor of Atlantic City and individually; (2) La'Quetta Small ("Small" or "Ms. Small")[2], in both her official capacity as former Principal of PAS from 2013 to 2018 and individually; (3) Barry Caldwell, in his official capacity as current Superintendent of the Atlantic City Board of Education; (4) Paul A. Spaventa, in his official capacity as former Interim Superintendent of the Atlantic City Board of Education; (5) the Atlantic City Board of Education ("Board"); and (6) Kayan Ahmed Frazier ("Frazier") individually.  See id. ¶¶7-13, 26.  The amended complaint refers to the

---

[1] As this application is a motion to dismiss upon the pleadings, the following facts appear of record in the docketed amended complaint, Document 32, filed by plaintiff Jane Doe, on behalf of her minor child, John Doe, on August 16, 2021.

[2] Plaintiff's original complaint was properly filed against defendant La'Quetta Small.  See Document 1.  However, when plaintiff filed the amended complaint on August 16, 2021, plaintiff improperly changed the caption to identify defendant as La'Quetta Small-Frazier.  See Document 32.  At no point in time has Ms. Small ever been known as La'Quetta Small-Frazier.  In fact, any properly hyphenated name would be "Frazier-Small" and not "Small-Frazier."  Defendant submits that plaintiff deliberately misstated Ms. Small's name in an attempt to unduly prejudice her and have her be more closely associated with the alleged perpetrator in this matter.

Board, Spaventa, Caldwell, and Small collectively as "Atlantic City School District Defendants." Id. ¶12.

In March 2015, the Board hired Frazier, who is Small's cousin, as a substitute teacher. Id. ¶¶27-28. At that time, Frazier lived with Small and her husband and was assigned to work in numerous Atlantic City schools, including PAS where Small was principal.[3] Id. ¶¶26, 28-29. In "early 2016," Frazier first made contact with plaintiff at PAS and "took a particular interest" in him. Id. ¶¶31, 33. For instance, Frazier would "spend[] a disproportionate amount of time with him as compared to other students" and would "take [him] out of class for walks in the hallway so that they could talk privately." Id. ¶34. On numerous occasions Frazier would take plaintiff "to the privacy of the school library, ostensibly to chat" and the trips "often resulted in Frazier sexually assaulting" plaintiff. Id. ¶36.

Frazier befriended Jane in spring 2016 "so that he could be closer to John Doe." Id. ¶¶38-40. The "friendship" between Frazier and plaintiff continued and Frazier became more acquainted with Jane as they spoke about plaintiff's school performance and welfare. Id. ¶41. Plaintiff had a friendship with Small's minor son (Frazier's cousin). Id. ¶42. After developing "some degree of trust in Frazier," in "May or June of 2016" Jane permitted Frazier to take plaintiff to the movies and Chuck E. Cheese with Small's minor son. Id. ¶42. By June or July 2016, Frazier

---

[3] The amended complaint is silent as to when Frazier moved out of Small's residence.

increased his time with plaintiff, both with and without other children present.  Id.

¶43.  In fall 2016, Jane allowed plaintiff to attend a "sleepover" Frazier was hosting

"with his cousins who were roughly John Doe's age."   Id. ¶¶45-46.   After the

sleepover, which "concluded without apparent incident," Jane allowed plaintiff "to

spend more time at Frazier's house, with sleepovers becoming more regular."  Id.

¶47.  Jane began noticing changes in plaintiff's personality, affect and grades, but

saw no reason to attribute it to Frazier.  Id. ¶¶48-49.

Frazier allegedly sexually abused plaintiff from the moment he was targeted

at PAS, both on and off school grounds.  Id. ¶¶57, 60.  "At various times" Frazier

directed plaintiff to dance with his underwear down and photographed plaintiff's

exposed penis.  Id. ¶58.  "On a regular basis," Frazier photographed plaintiff "at

Frazier's old residence in Atlantic City and his then-apartment in Somers Point."  Id.

¶59.  Frazier also sexually abused and exploited plaintiff in the Small's bathroom.

Id. ¶60.  Small allegedly became aware that Frazier was interacting with plaintiff

outside of school hours, taking him out and hosting him overnight as her son initially

participated in the early outings, but Small failed to question Frazier's behavior.  Id.

¶¶70-71.[4]  At an unknown point in time Small "prohibited her son from joining

Frazier and John Doe on their weekend outings."  Id. ¶72.

---

[4] While ¶70 of the amended complaint states that Small became aware of these
off-campus interactions "approximately in early 2016," the earlier paragraphs of the
complaint, ¶¶41-47, clearly show that plaintiff did not start going anywhere with

On February 24, 2017, Small filed a report with the Division of Child Protection and Permanency ("DCPP") that detailed "unprofessional conduct of Frazier." Id. ¶73. Small also completed an incident report for Source4Teachers in February 2017, an educational management company that pairs schools with substitute teachers to fill vacancies as needed, that cited Frazier's "unprofessional conduct" and recommended he be removed from substitute teaching in the school district. Id. ¶¶74-75. She reiterated Frazier's "inappropriate conduct" to the Source4Teachers manager on March 15, 2017. Id. ¶76. Despite Small's reports of Frazier's "misconduct" Frazier was placed at five schools in the District for 13 days in March 2017 and "continued to have access to John Doe on school grounds and continually sexually abused and exploited John Doe." Id. ¶78.

In March 2017, the Institutional Abuse Investigation Unit ("IAIU") "began an investigation concerning Frazier's employment as a full-time substitute teacher within the Atlantic City School District, likely as a result of Principal Small's reporting." Id. ¶79. During that investigation Frazier "admitted that he let John Doe sleep in his bed" and "that he had been texting [a different] nine-year-old male." Id. ¶80. Neither Frazier nor plaintiff disclosed any sexual contact during the

---

Frazier until May or June 2016, after Jane became personally acquainted with Frazier, and the first sleepover occurred in fall 2016. Accordingly, Small could not have been aware of Frazier's off-campus interactions with plaintiff *before* they occurred at the respective times.

investigation, however.  Id.  "As a result of this investigation, on April 3, 2017, Frazier was terminated as a substitute teacher."  Id. ¶81.

At some point after plaintiff's estranged biological father died, Jane prohibited Frazier from seeing plaintiff and ended contact with Frazier because Frazier, against her wishes, told plaintiff that his father had passed.  Id. ¶¶50-51.  During this unknown falling out period of time,[5] Jane heard rumors that Frazier was having inappropriate and sexually abusive conduct with children and, as a result, had been terminated from substitute teaching in Atlantic City schools.  Id. ¶52.  Jane did not believe the rumors.  Id. ¶53.  In October 2018, Jane learned Frazier was working for DCPP, so she allowed Frazier back into her and plaintiff's lives.  Id. ¶¶ 54-56.

The FBI received a tip about Frazier in February 2019 related to suspected child pornography on the Internet.  Id. ¶¶61-62.  After an investigation, a search warrant of Frazier's apartment was executed on April 15, 2019 where Frazier and plaintiff were present, along with sexually explicit materials of children, including plaintiff.  Id. ¶¶63-65.  Frazier was arrested and charged under various federal child pornography statutes.  Id. ¶¶66-67.

On May 13, 2021, plaintiff John Doe through his mother Jane Doe commenced a civil action in the United Stated District Court, District of New Jersey,

---

[5] The content in paragraph 54 of the amended complaint leads one to believe that this period of time was six months, between approximately April 2018 until October 2018.  See Compl. ¶54.

against the aforementioned defendants.  See Document No. 1.  Defendant Small filed a motion to dismiss the original complaint on July 27, 2021.  See Document No. 28.  On August 16, 2021, plaintiff filed and served defendant with an amended complaint adding two theories of liability against Small and removing one, thereby mooting defendant's motion to dismiss.  See Document No. 32.  The within motion to dismiss in lieu of an answer is now submitted on behalf of defendant La'Quetta Small.  For the reasons that follow, defendant La'Quetta Small respectfully submits the amended complaint must be dismissed for its failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562, 127 S. Ct. 1955 (2007).  The Twombly Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Id. at 555 (internal citations omitted).  Therefore, for a complaint to withstand a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the

allegations in the complaint are true (even if doubtful in fact) . . . ." Twombly, 550 U.S. at 555 (internal citations and footnote omitted).

The standard under Rule 12(b)(6) has been the subject of more recent review by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009). The Court emphasized that when assessing the sufficiency of a civil complaint, as here, the District Court must distinguish between factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 678, 129 S.Ct. 1937. A complaint shall be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ibid. (quoting Twombly, 550 U.S. at 570). This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler v. UPMC Shadyside, 578 F. 3d 203, 211 (3d Cir. 2009) (citations omitted).

Applying the principles of Iqbal, the Third Circuit in Fowler articulated a two-part analysis that the District Court should conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. See also Edwards v. A.H. Cornell & Sons, Inc. 610 F.3d 217, 219-220 (3d Cir. 2010). First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210-211. Second, the Court must determine

whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211.  In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-235 (3d Cir. 2008)).  The Third Circuit permits a plaintiff to plead "upon information and belief" only "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control—so long as there are no '*boilerplate and conclusory allegations*' and '*[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible.*'" McDermott v. Clondalkin Grp., Inc., 649 Fed.Appx. 263, 267-68 (3d Cir. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002)) (emphasis in original).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (quotations and citations omitted).

In this matter, with respect to La'Quetta Small, plaintiff's amended complaint consists of bare labels, conclusions, and formulaic recitations of elements of a cause of action using various "buzz words" to lure the Court into believing it can state a claim for relief.  However, carefully examined, the amended complaint is void of any factual allegations that express entitlement to relief.  Furthermore, it often fails

to set forth any separate facts or allegations between the individual defendants and the public entity. As the amended complaint fails to demonstrate any plausible cause of action against Ms. Small, the amended complaint must, therefore, be dismissed.

## LEGAL ARGUMENT

## POINT I

### PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS IN COUNTS II AND III AGAINST LA'QUETTA SMALL MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiff seeks damages in Counts II and III from Small through application of 42 U.S.C. § 1983 for an alleged violation of plaintiff's constitutional rights, namely the Fourteenth Amendment of the United States Constitution. See Compl. ¶¶100, 117. In Count II, plaintiff alleges that the "Atlantic City School District Defendants" collectively were administrators or "policymakers" "acting under color of state law" who, through their actions or inactions, advanced unconstitutional "customs, practices, or policies" by failing to intervene, investigate, and protect plaintiff from sexual attack by Frazier and manifested "deliberate indifference" to sexual harassment. Id. ¶¶102-106, 111-114. Plaintiff claims in Count III that the "Atlantic City School District Defendants" collectively adopted inadequate policies, specifically identifying the Board's "anti-harassment" policy, for training staff to detect and report signs of sexual harassment and abuse, and policies regarding supervision of staff to prevent sexually harassing and abusive conduct, which amounted to "deliberate indifference" to the fact that inaction would result in a

violation of plaintiff's rights by Frazier.  Id. ¶¶121-127, 134.  In Counts II and III, plaintiff claims that Small, a state actor, affirmatively used her authority to create a danger to plaintiff and she acted with a degree of culpability that "shocks the conscience."  Id. at ¶¶108-110, 128-130.  Plaintiff claims he was a foreseeable victim of Frazier's acts; it was readily foreseeable that "failing to" immediately remove Frazier from his ability to harm plaintiff through investigation, intervention, and protection could result in harm to plaintiff; and the risk of harm in failing to act amounted to deliberate indifference.  Id. at ¶¶ 109, 112, 113, 129, 132, 133.  These counts advance no factual basis but, rather, mere conclusory statements and "buzz words" such as "deliberately indifferent," "policy," and "foreseeable" and without distinction between the individuals and the public entity.  The allegations in Counts II and III do not show any potential liability of Ms. Small under Section 1983 and, therefore, these counts must be dismissed with prejudice.

Section 1983, in pertinent part, states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law….  42 U.S.C. § 1983.

By itself, of course, § 1983 does not create any rights.  Instead, it merely provides a vehicle or remedy for violations of rights created by the Constitution or under federal

law.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997).

Plaintiff's § 1983 claims in this matter are grounded upon allegations of Frazier's

sexual abuse of plaintiff and the "Atlantic City School District Defendants'"

purported violation of plaintiff's substantive due process rights by failing to have

adequate policies concerning training and supervision of employees with respect to

sexual harassment of students, and a vague allegation that the Atlantic City School

District Defendants created the danger posed to plaintiff and caused him harm.  Here,

there is not one factual allegation pled to show that Ms. Small violated plaintiff's

constitutional rights to support a § 1983 claim.

### A.    Ms. Small in her Official Capacity

Naming an individual in her official capacity is the legal equivalent of naming

the governmental entity, here the Board, itself as the defendant.  See Hafer v. Melo,

502 U.S. 21, 25, 112 S.Ct. 358 (1991); Kentucky v. Graham, 473 U.S. 159, 166

(1985).  "Suits against state officials in their official capacity therefore should be

treated as suits against the State," and "the entity's 'policy or custom' must have

played a part in the violation of federal law."  Id.; Graham, supra, at 166.  (citation

omitted).  Here, plaintiff named the Board as a defendant and the entirety of the §

1983 claims are premised upon policies, practice and custom.  Thus, the claims

against Ms. Small in her official capacity are needlessly duplicative of the § 1983

claims against the Board and must be dismissed.[6]  See Janowski v. City of N. Wildwood, 259 F. Supp. 3d 113, 131-32 (D.N.J. 2017).

**B.  Ms. Small in her Individual Capacity**

While defendant contends that plaintiff's decision to sue La'Quetta Small in her official capacity forestalls any claim against her in her individual capacity, the factual allegations contained in the amended complaint nonetheless fail to support a claim for individual liability against Ms. Small.  Further, Ms. Small is entitled to qualified immunity.  Accordingly, any claims for individual liability against Ms. Small must be dismissed.

### 1.  Ms. Small had no personal involvement in the deprivation of rights

To establish that a specific defendant, acting under color of state law, violated a federally secured right, the claimant must demonstrate that the specific defendant deprived them of such right as charged in the complaint.  Salerno v. O'Rourke, 555 F.Supp. 750, 757 (D.N.J. 1983).  Indeed, plaintiff is obligated to identify the exact contours of the underlying right said to have been violated and, specifically, for each individual defendant.  County of Sacramento v. Lewis, 523 U.S. 833, 841 & n.5 (1998).  Critically, "a defendant in a [§ 1983] action must have personal involvement

---

[6] Defendant refers the Court to, and incorporates herein, the Board's motion to dismiss and its arguments set forth therein to support a dismissal of all § 1983 claims.

in the alleged wrongs." <u>Rode v. Dellarciprete</u>, 845 F. 2d 1195, 1207 (3d Cir. 1988). Here, plaintiff asserts that Frazier violated his right to personal security, bodily integrity and equal protection under the law by sexually abusing him. However, there are no facts pled to show that La'Quetta Small had any personal involvement in depriving plaintiff of any constitutional right. Instead, plaintiff makes general, collective and conclusory statements about the Atlantic City School District Defendants without any distinction which is insufficient to state a claim under § 1983 against an individual like Ms. Small. As such, there is no individual § 1983 liability against Ms. Small and Counts II and III must be dismissed.

## 2.    Ms. Small cannot be liable as a supervisor

While not clearly pled, a broad reading of the amended complaint may lead one to argue that plaintiff is attempting to impose individual liability on Ms. Small as a supervisor, an equally insufficient argument as there are simply no facts to support a claim. Supervisor liability can only exist where a supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had actual knowledge of and acquiesced in [her] subordinates' violations." <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004); <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 127 n.5 (3d Cir. 2010). The supervisor must be an official with final authority to establish policy who acted with deliberate indifference to, or conscious acquiescence in known sexual harassment.

Murrell v. School Dist. No. 1, Denver, Colorado, 186 F.3d 1238, 1250 (10th Cir.

1999); K.P. v. Corsey, III, 228 F.Supp.2d 547, 552 (D.N.J. 2002), rev'd on other

grounds, 77 Fed.Appx. 611, 2003 WL 22338566 (3d Cir. 2003).  Thus, in order to

state a claim under § 1983, plaintiff was obligated to state facts sufficient to allege

that Ms. Small was a supervisor with final policymaking authority who actually

knew of and acquiesced in, or acted with deliberate indifference to, the sexual

assault, which violated plaintiff's constitutional rights.   Here, the amended

complaint does not contain any facts to support this substantial burden.

Plaintiff's claims fail because the amended complaint does not even state that

Small was Frazier's supervisor and even if it did, school principals, like Ms. Small,

are not policymakers.  See N.J.S.A. 18A:11-1(c) (granting school boards the power

to "make, amend, and repeal rules . . . for the employment, regulation of conduct and

discharge of its employees"); see also Flood v. Sherk, 400 F. Supp. 3d 295, 308-09

(W.D.Pa. 2019) ("[D]istrict courts in the Third Circuit appear to uniformly refuse to

consider a school principal to be a final policymaker . . . under § 1983.").  In addition,

there are no facts pled that Ms. Small had actual knowledge that Frazier sexually

abused plaintiff in the school and acted with deliberate indifference to it.  The

amended complaint fails to show that Ms. Small, or any Atlantic City School District

Defendant for that matter, had any knowledge that Frazier sexually abused plaintiff

in the PAS library.  There are no facts pled that any sexual abuse occurred in Ms.

Small's presence or that Ms. Small received a complaint from plaintiff, a parent, any student, or any other person that Frazier sexually abused plaintiff or anyone else, and that she acquiesced in the sexual abuse or acted deliberately indifferent to it.

In fact, the amended complaint does not even assert that Ms. Small had knowledge that plaintiff was being sexually abused at all – the amended complaint merely states that she learned that her cousin Frazier was interacting with plaintiff outside of school hours, taking him out and hosting him overnight [at an unknown location] along with her own minor son who was plaintiff's friend.  See Compl. ¶¶42,70.  The amended complaint states that Ms. Small had knowledge that Frazier had engaged in "unprofessional" or "inappropriate" conduct that she reported not only to DCPP, but also to Source4Teachers demonstrating that she did not acquiesce in Frazier's behavior nor act with deliberate indifference toward it.  There is not one factual allegation by which Ms. Small had actual knowledge of the sexual harassment and acquiesced to it. See Baker v. Monroe Twp., 50 F.3d 1186, 1194 & n.5 (3d Cir. 1995).

To be sure, the amended complaint contains a formulaic recitation of the elements of a cause of action by making conclusory statements utilizing "buzz" words.  However, Iqbal instructs that such formulaic recitations are no substitute for a minimal factual basis for a claim.  Consequently, the amended complaint fails to

set forth a § 1983 claim as to supervisor liability as to La'Quetta Small in her individual capacity.

### 3.    State-Created Danger liability is inapplicable

Plaintiff's amended complaint contains a hidden new theory of § 1983 liability for a state created danger; however, such theory of liability is inapplicable as the alleged harm was not caused by a private actor.  Generally, the Due Process Clause does not impose an affirmative obligation on states to protect individuals from private citizens.  DeShaney v. Winnebago Cnty. Dep't of Social Servs., 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).  One exception to this rule, however, is the state-created danger theory.  See Morrow v. Balaski, 719 F.3d 160, 167 (3d Cir. 2013).  The state-created danger theory is "a narrow exception to the general rule that the state has no duty to protect its citizens from *private harms*." Henry v. City of Erie, 728 F.3d 275, 286 (3d Cir. 2013) (emphasis added).  Here, however, the harm was not caused by a private actor, but instead by Frazier, a state actor who was acting under color of state law as a substitute teacher.

Based on this distinction, several courts in this Circuit have recently dismissed state-created danger claims premised on harms directly inflicted by state actors, some in this very context.  See A.B. v. Vineland Bd. of Educ., 2019 WL 2354609 at *6 (D.N.J. Jun. 4, 2019) (finding the state-created danger theory against a school district and its employees to be not applicable to a claim that a teacher had a sexually

inappropriate relationship with a student); <u>Jowett v. Churchill</u>, 2021 WL 3879084 at *8 (D.N.J. Aug. 31, 2021) (a public employee acting as a state actor cannot cause a private harm); <u>Green v. Mt. Carmel Area Sch. Dist.</u>, 2019 WL 1787592 at *8 n.63 (M.D. Pa. Apr. 24, 2019); <u>McGhee v. City of Philadelphia</u>, 2003 WL 22518759 at *2 (E.D. Pa. Oct. 23, 2003).  The alleged harm in this matter was not performed by a private actor (i.e., other students, strangers, a parent, etc.), which all state-created danger theory cases address.  Plaintiff's harm was, unfortunately, caused by a state-actor, Frazier.  Therefore, defendant submits this Court should conclude as the other courts have that that the state-created danger theory is inapplicable and dismiss all such based claims in Counts II and III for failure to state a claim.

Even if the "state-created danger" exception were applicable, the amended complaint fails to plead any facts to show that Ms. Small can be liable.  To state a claim under this theory, plaintiff must adequately plead the following: (1) the harm ultimately caused was foreseeable and a direct result of the state's actions; (2) the state actor acted with a degree of culpability that shocks the conscience; (3) a relationship exists between the state and plaintiff to the extent that plaintiff was a foreseeable victim of the defendant's act or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions; and (4) a state actor affirmatively used his or her authority in a way that created a danger to plaintiff or rendered plaintiff more vulnerable to the danger.  <u>L.R. v. School Dist. of</u>

<u>Philadelphia</u>, 836 F.3d 235 (3d Cir. 2016) (citing <u>Bright v. Westmoreland County</u>, 443 F.3d 276, 242 (3d Cir. 2006)).  The Third Circuit also employs a "deliberate indifference" standard for purposes of determining whether liability attaches under the state-created danger theory.  <u>Morse</u>, 132 F.3d at 908.

While the amended complaint alleges the four elements of the cause of action and deliberate indifference, <u>see</u> Compl. ¶¶107-113, there are no facts to support these conclusory assertions.  Here, there are no facts pled that the abuse Frazier directed towards plaintiff was foreseeable, that Ms. Small performed any affirmative act that made plaintiff more vulnerable to the abuse, or that Ms. Small's actions were deliberately indifferent or could be said to shock the conscience.[7]  Thus, the bald assertions cannot be accepted under <u>Twombly</u> to state a claim.

Courts often analyze the fourth prong first – whether the state actor *affirmatively* used her authority in a way that created a danger.  To do so, the court should evaluate the setting or the "status quo" of the environment before the alleged act or omission occurred, and then address whether the state actor's exercise of authority departed from said status and "created a danger" or "rendered the citizen more vulnerable to danger than had the state not acted at all."  <u>L.R.</u>, 836 F.3d at 243. The "affirmative act" requirement "serves to distinguish cases where officials might

---

[7] The defendant does not dispute the third prong of the test may be able to be satisfied as plaintiff could be a member of a discrete class subjected to potential harm by Frazier, and not merely a member of the public in general. Thus, the third prong will not be addressed in this brief.

have done more from cases where officials created or increased the risk itself."
Morrow 719 F.3d at 179 (alterations and citation omitted). Notably, the Third Circuit
has consistently held that a school's repeated inaction and failure to protect a student
does not constitute an "affirmative act."  See id. at 177-78; D.R. v. Middle Bucks
Area Vocational Tech. Sch., 972 F.2d 1364, 1375-76 (3d Cir. 1992), G.S. v. Penn-
Trafford School Dist., 813 Fed. Appx. 799, 802 (3d Cir. 2020).  Maintenance of an
already dangerous condition or failing to address it does not alter the status quo.

In the case at bar, prior to any abuse of plaintiff, the setting or status quo
during the 2015-2016 school year was that Frazier was a substitute teacher in the
Board's schools.  Due to no alleged affirmative act by Ms. Small, Frazier then began
to sexually abuse plaintiff in 2016.  Plaintiff merely asserts that Ms. Small delayed
reporting non-sexual inappropriate conduct by Frazier and there was a risk of harm
in not removing Frazier from the schools.  This allegation, however, does not reflect
an affirmative act that created a dangerous situation.  Arguably, at best, this situation
is akin to DeShaney and Morrow where a dangerous situation already existed and
was simply maintained.  Accordingly, plaintiff cannot show that Ms. Small created
a danger to plaintiff to satisfy the fourth prong of the state-created danger test, and
the claim must fail.

Not only is an affirmative act required, but there must also be a direct causal
relationship between the affirmative act and foreseeable harm to the plaintiff (first

prong). <u>Bright</u>, 443 <u>F.3d</u> at 283.  To establish this element, the plaintiff needs to "allege an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." <u>L.R.</u>, 836 F.3d at 245.  Knowledge of an uncorroborated accusation of abuse does not rise to the level of actual awareness of a risk of harm. <u>Gremo v. Karlin</u>, 363 F.Supp.2d 771, 786 (E.D. Pa. 2005) (noting that an assistant director's knowledge of an uncorroborated attempted molestation is insufficient to hold school defendants constitutionally liable for the sexual molestation of two female students by a male student).  "Actual knowledge of a serious risk of physical danger to the plaintiff has been a common feature of the state-created danger cases." <u>Morse</u>, 132 F.3d at 911 (citation omitted).

As detailed <u>supra</u>, there are no facts that Ms. Small had any knowledge that Frazier engaged in sexual abuse of plaintiff or any other student to show that she was aware of any risk of harm that would result to any student.  It is not obvious or foreseeable that a substitute teacher, who happened to be Ms. Small's cousin and on occasion took her son and his friend to the movies, would sexually abuse a minor. Simply put, plaintiff has not shown that his harm was foreseeable or a direct result of Ms. Small's affirmative action.  Thus, the first prong of the state-created danger test is not satisfied.

Similarly, plaintiff cannot satisfy the second prong of the state-created danger test as Ms. Small's actions do not "shock the conscience." "The Supreme Court has emphasized that the 'touchstone of due process' is protection against arbitrary government action." L.R., 836 F.3d at 246. Government action is arbitrary when it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. There must have been a "conscious disregard of a substantial risk of serious harm," id., which no obvious or substantial risk is present here. Accordingly, plaintiff cannot meet the second prong of the state-created danger theory and all related claims against Ms. Small in Counts II and III must be dismissed with prejudice.

**C.    Ms. Small is Entitled to Qualified Immunity**

Assuming the facts as pled may show that Ms. Small could have individual liability under § 1983, she is nonetheless entitled to qualified immunity and dismissal as a matter of law. See Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1111 (N.J. 2009). The Supreme Court has long recognized the substantial burden that would be carried by public officials attempting to discharge their duties if they were routinely subjected to civil litigation alleging violations of civil rights. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982). Public officials "performing discretionary functions, generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818.

Qualified immunity balances two needs: (1) to hold public officials accountable for the irresponsible exercise of power; and (2) to shield officials from harassment, distraction, and liability when duties are reasonably performed. Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009); Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001). Immunity applies regardless of whether the official's error is a mistake of law, fact or a combination of the same, as well as a mistake in judgment. Id.; See Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894 (1978).  It protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 342, 106 S.Ct. 1092 (1986).  The Supreme Court has explained that "[q]ualified immunity is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'"  Scott v. Harris, 550 U.S. 372, 376, n. 2, 127 S.Ct. 1769 (2007) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985)).

In Saucier, supra, the Supreme Court developed a two-part test for qualified immunity.  The first element is a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?"  533 U.S. at 201.  If no constitutional right would have been violated were the allegations established, there is no need for

further inquiry.  Ibid.  "If, and only if, the court finds a violation of a constitutional right, 'the next sequential step is to ask whether the right was clearly established … in light of the specific context of the case.'"  Ibid.  Qualified immunity applies unless Ms. Small's conduct violated a clearly established constitutional right.  Pearson, 555 U.S. at 232.  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Reichle v. Howards, 566 U.S. 658, 664, 132 S. Ct. 2088 (2012) (internal citations omitted).

Even if the amended complaint is read broadly, Iqbal instructs that formulaic recitations are no substitute for a minimal factual basis for a claim.  La'Quetta Small is not specifically alleged to have violated, and the facts fail to show that she violated, any of plaintiff's constitutional rights.  Thus, applying the first prong in Saucier, the analysis ends and Ms. Small is entitled to qualified immunity and dismissal of the § 1983 claims against her.

## POINT II

### COUNTS V AND VI MUST BE DISMISSED AS THE GENERAL STATE LAW CLAIMS OF NEGLIGENCE LACK FACTUAL SPECIFICITY AND CANNOT SURVIVE A MOTION TO DISMISS UNDER RULE 12(b)(6)

Counts V and VI of the amended complaint purport to assert state law negligence claims against Ms. Small and must be dismissed as plaintiff has failed to plead factual assertions to state of cause of action.  The complaint does not plead

any facts showing how Ms. Small breached a duty to plaintiff.  Instead, Counts V and VI are based entirely on a series of bald, conclusory allegations, which is not sufficient.  Thus, all negligence, gross negligence and recklessness claims against Ms. Small should be dismissed for failure to state a claim.

There is a presumption against negligence and plaintiff has the burden of proving negligence.  Buckelew v. Grossbard, 435 A.2d 1150, 1157 (N.J. 1981).  To sustain a negligence claim, "a plaintiff must prove four core elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'"  Polzo v. Cnty. of Essex, 960 A.2d 375, 384 (N.J. 2008) (citation and brackets omitted).  "Gross negligence has the same elements as ordinary negligence because '[n]egligence differs from gross negligence only in degree, not in kind.'"  Zelnick v. Morristown-Beard Sch., 137 A.3d 560, 567 (N.J. Super. Ct. Law Div. 2015) (quoting Monaghan v. Holy Trinity Church, 646 A.2d 1130, 1133 (N.J. Super. Ct. App. Div. 1994)).  "Whereas negligence is 'the failure to exercise ordinary or reasonable care' that leads to a natural and probable injury, gross negligence is 'the failure to exercise slight care or diligence.'"  Steinberg v. Sahara Sam's Oasis, LLC, 142 A.3d 742, 754 (N.J. 2016) (citations omitted).  Reckless conduct is an even higher level of culpability than gross negligence; it is "the conscious disregard ... to a known or obvious risk of harm to another."  Id. at 755.

With respect to the first two elements of a negligence claim (and thus a gross negligence and recklessness claim), "[s]chool officials have a general duty 'to exercise reasonable supervisory care for the safety of students entrusted to them, and [are accountable] for injuries resulting from failure to discharge that duty.'" Jerkins v. Anderson, 922 A.2d 1279, 1285 (N.J. 2007) (quoting Caltavuturo v. City of Passaic, 307 A.2d 114, 117 (N.J. Super. Ct. App. Div. 1973)). "The supervisory duty extends to 'foreseeable dangers . . . [that] arise from the careless acts or intentional transgressions of others.'" L.E. v. Plainfield Pub. Sch. Dist., 194 A.3d 105, 112 (N.J. Super. Ct. App. Div. 2018), certif. denied, 202 A.3d 621 (N.J. 2019) (quoting Frugis v. Bracigliano, 827 A.2d 1040, 1050 (N.J. 2003)). For example, in Frugis, the Court "held that the supervisory duty extended to protect students from the transgressions of an adult – a school principal who privately photographed students [in his school office] in inappropriate poses." 827 A.2d at 1050.

However, schools are not "guarantors of students' safety." Jerkins, 922 A.2d at 1291. "A school district's responsibility has temporal and physical limits, and its obligation to act reasonably does not diminish the responsibilities that parents or guardians have to their children." Id. Indeed, the supervisory duty itself stems from the fact that "parents entrust their children to the care of schools," which is why the scope of a school official's duty is always framed in terms of the students who are "entrusted to them" and who are "in [their] charge . . . throughout the school day."

28

Id. at 1285; see also L.E., 194 A.3d at 111.  As such, except with certain limited situations, such as dismissal from school, the duty generally does not exist when the student is not under the school's custody and control.

Plaintiff's negligence, gross negligence and recklessness claims against La'Quetta Small should be dismissed for failure to state a claim.  In Count V, plaintiff claims that Ms. Small had a duty of care as principal of PAS where plaintiff was a student and "All Defendants" breached their duties "to take ordinary reasonable care in the execution of their respective professional . . . responsibilities imposed by law."  See Compl. ¶¶148a, 149.  Plaintiff then claims "the Atlantic City School District Defendants" collectively failed to "promptly and effectively respond to the instances of known sexual harassment and abuse perpetrated by . . . Frazier," it was "reasonably foreseeable" that plaintiff would be harmed as a result, and Defendants failed to implement reporting procedures.  Id. ¶¶150, 152, 154.  However, as detailed, supra, there was no known sexual harassment or abuse to which to respond or report.  Similarly, Count VI says, "All Defendants . . . had a duty of care towards John Doe to take reasonable steps to prevent . . . Frazier from using the authority, access, and instrumentalities afforded to him by his position within the Atlantic City School District to target, groom, and sexually abuse . . . John Doe."  Id. ¶158.  Plaintiff then asserts, "All Defendants acted in a . . . reckless manner

and/or in a grossly negligent manner with gross and callous indifference to the consequences, and thus breached their . . . duties of care." Id. ¶159.

As the facts pled in the complaint fail to show any negligence by the school defendants, there are certainly no facts to show gross negligence or recklessness. Plaintiff merely pleads that the "defendants" were generally responsible for his well-being without any further description of the scope of the duty or how each individual allegedly breached that duty. There are no facts showing that Ms. Small consciously disregarded a known risk of harm to plaintiff or how she personally breached a duty of care to plaintiff while he was at school. The deficiency is fatal and compels dismissal. See Bullock v. Ancora Psychiatric Hosp., 2011 WL 3651352 at *11 (D.N.J. Aug. 18, 2011) (granting motion to dismiss negligence claim because the complaint did not "allege facts sufficient to establish that [individual defendants] breached a duty of care . . . or any specific act[s] or omissions by those [d]efendants that proximately caused [the plaintiff's] injuries").

The mere fact of a sexual assault on school grounds by a substitute teacher is not sufficient to sustain any cause of action against La'Quetta Small. Under the totality of the circumstances, there are no facts pled that Ms. Small's conduct failed to comport with that of a reasonable educator in like circumstances to make her liable for alleged negligence under any theory presented. For example, there are also no facts pled to show what level of supervision was present at PAS when the sexual

abuse occurred, when and under what circumstances the alleged abuse happened in the PAS library, or how it was foreseeable that Frazier would have committed a crime and sexually abused plaintiff to demonstrate that Ms. Small breached any duty of care owed to plaintiff as a student at PAS.  Knowing that a substitute teacher took his cousin and his friend (plaintiff) to the movies or was present for a sleepover in the past does not indicate "foreseeable" sexual abuse.

Count V also alleges that Ms. Small failed to warn plaintiff about "Frazier's known sexual proclivity towards children, or to take reasonable steps to safeguard minor social guests within their home from Frazier," which resulted in the sexual assault in Ms. Small's bathroom.  See Compl. ¶153.  A "host must warn a social guest of risks of harm or dangerous conditions of which the host has knowledge and the guest is unaware." Benedict v. Podwats, 109 263 A.2d 486 (N.J. Super. Ct. App. Div.), aff'd, 271 A.2d 417 (N.J. 1970).  However, there are no facts pled that Frazier had a "known sexual proclivity towards children" or that plaintiff was Ms. Small's social guest to impose any duty to warn upon her.

"In determining whether a duty is to be imposed, courts must engage in a rather complex analysis that weighs and balances several, related factors, including the nature of the underlying risk of harm, that is, its foreseeability and severity, the opportunity and ability to exercise care to prevent the harm, the comparative interests of, and the relationships between or among, the parties, and, ultimately,

based on considerations of public policy and fairness, the societal interest in the proposed solution." J.S. v. R.T.H., 714 A.2d 924, 928 (N.J. 1998) (citing Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110 (N.J. 1993)).  Foreseeability of the risk of harm is based on the defendant's knowledge of the risk of injury and is the foundational element in determining if a duty exists.  Id.; see Clohesy v. Food Circus Supermarkets, Inc., 694 A.2d 1017 (N.J. 1997).  Whether a duty should be imposed requires "an assessment of the defendant's 'responsibility for conditions creating the risk of harm' and an analysis of whether the defendant had sufficient control, opportunity, and ability to have avoided the risk of harm." J.S., 714 A.2d at 928 (citation omitted).

Recognizing a duty on the part of a spouse "to take reasonable steps to prevent or warn of the harm" posed by his or her spouse's risk of sexually abusing children, the New Jersey Supreme Court limited the duty to cases in which a heightened standard of foreseeability is met—cases where the defendant had "particular knowledge or special reason to know that a particular plaintiff or identifiable class of plaintiffs would suffer a particular type of injury. Id.  There is no basis for applying a less particularized standard of foreseeability here with respect to a supposed duty to prevent or warn against assaultive conduct by an adult cousin. Based upon the facts as pled, there is simply no justifiable basis to impose a duty to warn on Ms. Small.

Frazier used Ms. Small's home, without her knowledge, to sexually abuse plaintiff.  Though Frazier resided with Ms. Small for an unknown period of time, there are no facts pled that she was in any position to discover any risk posed by Frazier or that she created the condition for any abuse to occur.  Ms. Small did not invite plaintiff to her house, she did not arrange a meeting between plaintiff and Frazier, she was not present when abuse occurred, and there are no facts that she had knowledge that Frazier would harm plaintiff prior to or during the course of any alleged sexual abuse.  Accordingly, there is simply no basis to impose a legal duty to warn on Ms. Small under the totality of the circumstances presented.  See Sacci v. Metaxas, 810 A.2d 1119, 1125, 1127 (N.J. Super. Ct. App. Div. 2002); compare J.S., supra, with G.A.H. v. K.G.G., 210 A.3d 907 (N.J. 2019) (coworker does not have a duty to warn or report sexual relationship with a minor).

There are no facts to show Ms. Small breached any duty of care owed to plaintiff or consciously disregarded any known risk that caused injury to plaintiff.  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice in defeating a Rule 12(b)(6) motion."  Iqbal, supra, 556 U.S. at 688.  Accordingly, Ms. Small's motion to dismiss must be granted as to Counts V and VI.

## POINT III

**COUNT VIII MUST BE DISMISSED AS PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST LA'QUETTA SMALL**

In Count VIII plaintiff asserts that the "Atlantic City School District Defendants acted intentionally or with reckless disregard in failing to timely report, intervene, investigate, and/or address the outrageous sexual misconduct by . . . Frazier" and "their failure" to protect plaintiff constitutes "behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" causing "severe" damages to plaintiff.  See Compl. ¶¶168-170. To prevail on a claim for intentional infliction of emotional distress, plaintiff "must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe."  Buckeley v. Trenton Sav. Fund Soc'y, 544 A.2d 857, 863 (N.J. 1988).  It is a question of law as to whether intentional infliction of emotional distress can be found.  Id. at 864.  Similar to the preceding counts, plaintiff has failed to assert any specific factual allegations to support a claim against Ms. Small for intentional infliction of emotional distress.   Instead, plaintiff lumps the alleged inactions of all Atlantic City School District Defendants together and the assertions constitute mere conclusory statements and various "buzz words" in an effort to mimic the elements of the cause of action.  Such pleading is insufficient to state of cause of action and, therefore, Count VIII against Ms. Small must be dismissed.

## POINT IV

### PLAINTIFF'S CLAIM IN COUNT IX FOR A VIOLATION OF THE CHILD SEXUAL ABUSE ACT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiff alleges in Count IX that liability against Ms. Small is founded upon the Child Sexual Abuse Act, N.J.S.A. 2A:61B-1 (hereinafter referred to as "CSAA") as a "passive abuser" for Frazier's actions. Specifically, plaintiff contends that Frazier committed numerous acts against him that constitute sexual abuse under the Child Sexual Abuse Act, N.J.S.A. 2A:61B-1, ("CSAA"), many on the premises of the public schools under the Atlantic City School District Defendants' control. See Compl. ¶¶176-177. The Atlantic City School District Defendants failed to protect plaintiff from sexual abuse "even when in possession of active and/or constructive knowledge of the danger of sexual abuse to plaintiff." Id. ¶178. Plaintiff contends many acts of sexual abuse also occurred at the Smalls' premises "and with their consent, and with the knowledge of Defendant Frazier's and John Doe's presence, and the actual and/or constructive knowledge of the danger of sexual abuse to John Doe." Id. ¶179. The actions of all defendants allegedly caused plaintiff severe damages. Id. ¶182. Plaintiff's conclusory statements, unsupported by any factual allegations, however, fail to establish any plausible liability of Ms. Small as a passive abuser under the CSAA. Therefore, Count IX against Ms. Small must be dismissed for failure to state a claim.

### A.     Recent Amendments to the CSAA Do Not Apply Retroactively

The CSAA, established the first statutory cause of action for sexual abuse in New Jersey.  It sets forth the procedures to be followed in civil actions for injury or illness based on sexual abuse, which is defined by the statute, in pertinent part, as follows:

> "Sexual abuse" means an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult.  A parent, resource family parent, guardian or other person standing in loco parentis within the household who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse. . .

N.J.S.A. 2A:61B-1(a)(1).  Accordingly, the CSAA sets forth two classifications of those who may be subject to the statute – active abusers (those who inflict the abuse) and passive abusers (those who stand in loco parentis within the household who know of the abuse and fail to protect the child).  Hardwicke v. American Boychoir School, 902 A.2d 900, 910 (N.J. 2006).

On May 13, 2019, Governor Murphy signed into law P.L. 2019, c.120, which at section four amended the language of N.J. Stat. Ann. § 2A:61B-1(a)(1) by omitting the phrase "within the household."  The legislative history that accompanied P.L. 2019, c.120 makes it clear this change was not meant to apply retroactively to events that, as here, occurred before December 1, 2019 (i.e., the effective date of P.L. 2019, c.120).  While it is undisputed that the Legislature

specifically intended for some provisions of the new law to be applied retroactively, particularly those regarding the statute of limitations and standards of liability under the Charitable Immunity Act, the Legislature was also very clear in its language that unless otherwise stated, the provisions of the new law would only apply prospectively.  See S. Judiciary Comm. Statement to S. Comm. Substitute for S. No. 477-L.2019, c. 120 (March 7, 2019) (noting that beginning on December 1, 2019, lawsuits could be filed in accordance with the bill's provisions; thus, if a specific provision of a bill does not refer to retroactive application, it cannot be applied retroactively).  Here, there is nothing within the statutory language or legislative history that even hints that the Legislature intended retroactive application of the section eliminating the "within the household" requirement under the CSAA.  In fact, the Senate Judiciary Committee Statement specifically states

> Also of note, a cause of action . . . based on the expanded liability against a 'passive' abuser, removing the 'household' setting as a requirement for liability, is not listed in section 2 or section 9 concerning the retroactive application of certain newly created forms of liability to lawsuits brought under the new, extended statute of limitations or . . . during a two-year filing window available for otherwise time-barred claims . . . and *is intended to only apply prospectively*.

> Id.

New Jersey courts follow a general rule of statutory construction that favors prospective application of statutes and new legislation.  See Nobrega v. Edison Glen

Assocs., 772 A.2d 368, 377 (N.J. 2001); James v. N.J. Mfrs. Ins. Co., 83 A.3d 70,

77 (N.J. 2014).  This rule is based upon the longstanding notions of due process and

fairness.  Cruz v. Cent. Jersey Landscaping, Inc., 947 A.2d 1228, 1235 (N.J. 2008).

Statutes apply prospectively unless "there is an 'unequivocal expression of contrary

legislative intent.'"  Nobrega, 722 A.2d at 377 (citation omitted).  "[N]o one is

expected to anticipate a law that has yet to be enacted[.]"  Maeker v. Ross, 99 A.3d

795, 802 (N.J. 2014) (citations omitted).  When interpreting a statute, the

Legislature's intent is the overriding goal.  Johnson v. Roselle EZ Quick LLC, 143

A.3d 254, 263 ( N.J. 2016).  When there is no expression "that the law was to have

operative effect before its stated effective date" there is no evidence for an intended

retroactive effect.  Id. at 265.

Here, P.L.2019, c.120 is not ambiguous and the legislative intent of

prospective application of the change to the CSAA is clear by plain language.  "The

provisions of this amendatory and supplementary act, P.L.2019, c.120 (C.2A:14-2a

et al.), shall take effect on December 1, 2019."  N.J.S.A. 2A:14-2c[8] (emphasis

added).  Accordingly, the amended version of the CSAA that omitted the "within

the household" requirement is not applicable to plaintiff's claims of sexual abuse

that occurred three years prior to the effective date of the amendment.  Plaintiff has

not even pled the "within the household" requirements in the amended complaint

---

[8] This is a new statutory provision.  It credits P.L.2019, c.120, § 10, eff. Dec. 1, 2019.

and, thus, plaintiff's CSAA claim against Ms. Small fails to state a cause of action and Count IX must be dismissed.

### B.    Ms. Small is Not a Passive Abuser Under the CSAA

Plaintiff's CSAA theory against Ms. Small is that of a passive abuser. Pursuant to the applicable statutory language, to be considered a passive abuser, plaintiff must show that Ms. Small: (1) is a "person" (2) who stands in loco parentis (3) within the household of plaintiff; and (4) knowingly permitted or acquiesced in the sexual abuse by Frazier.  Hardwicke, 902 A.2d at 910.  Defendant does not dispute that she is a person; however, plaintiff has not pled facts to demonstrate the other requirements to establish liability under the CSAA (even if the household requirement is disregarded) requiring dismissal of Count IX of the amended complaint.

### 1.    Ms. Small did not stand *in loco parentis* to plaintiff for any acts that allegedly occurred in her home

Though not defined by the CSAA, our Supreme Court has found that "*in loco parentis*" is literally defined as "in the place of a parent" and "relating to, or acting as a temporary guardian or caregiver of a child, taking on all or some of the responsibilities of a parent." Id. at 913 (quoting Black's Law Dictionary 803 (8th ed. 2004)).  An *in loco parentis* relationship includes various factors such as duties of supervision, care, rehabilitation, and responsibilities to maintain, rear and educate a child.  Id. (citations omitted).  As such, an *in loco parentis* relationship exists

between a school and its students only during the school day hours when the parents transfer to the school officials the power to act as the child's guardian.  <u>Frugis</u>, <u>supra</u>, 827 A.2d 1040.  Schools act *in loco parentis* because, "for some portions of the day, children are in the compulsory custody of state-operated school systems.  In that setting, the state's power is 'custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults.'"  <u>Gruenke v. Seip</u>, 225 F.3d 290, 304 (3d Cir.2000) (quoting <u>Vernonia Sch. Dist. 47J v. Acton</u>, 515 U.S. 646, 655 (1995)).

Ms. Small acknowledges that when plaintiff was at PAS during school hours she stood in a position of *in loco parentis* to him.  However, there are no facts pled in the complaint that an *in loco parentis* relationship existed between Ms. Small and plaintiff for any alleged sexual abuse that occurred outside of PAS.  While the amended complaint alleges that Frazier exploited plaintiff inside Small's home, including inside the bathroom, there are no facts pled that Ms. Small invited plaintiff to her home, was aware that plaintiff was at her home, was present at her home at the time of the alleged abuse, or that she undertook any type of supervisory role over plaintiff.  Simply put, there are no facts that Ms. Small stood in a position of *in loco parentis* to plaintiff when he was allegedly abused at her home by Frazier and, thus, she cannot be a passive abuse under the CSAA.

### 2.     Ms. Small was not a person within the plaintiff's household

Plaintiff has not pled and the facts fail to show that Ms. Small was a person standing *in loco parentis* within the household of plaintiff.  To be within plaintiff's household, there must be "amenities characteristic of . . . a home," including provisions of the necessities of life, such as food and shelter.  Hardwicke, 902 A.2d at 915.  "[T]he term 'within the household' connotes a degree of 'residential' custody that is more than fleeting and temporary in nature."  J.P. v. Smith, 134 A.3d 977, 988 (N.J. Super. App. Div.), certif. denied, 141 A.3d 297 (N.J. 2016).

Our courts have consistently found that the CSAA is not applicable to a public day school such as the PAS because it is not a "household" within the intendment of the statute.  See D.M. v. River Dell Regional High School, 862 A.2d 1226, 1232 (N.J. Super. Ct. App. Div. 2004), certif. denied, 907 A.2d 1015 (N.J. 2006) (affirming trial court's holding that River Dell High School was not subject to the CSAA as a passive abuser for alleged sexual abuse by its faculty because it is not a household; J.P. v. Smith, supra (high school is not a person within the household under the CSAA); and Bryson v. Diocese of Camden, 909 F.Supp.2d 364, 369, 370-371 (D.N.J. 2012) (approving state court decisions and refusing to find a private day school to be "within the household" for purposes of the CSAA).  Thus, Ms. Small cannot be liable as a passive abuser for any alleged sexual abuse that occurred at the PAS because it is a public day school and does not qualify as a "household."

Similarly, liability cannot attach for any alleged abuse at Ms. Small's house because plaintiff did not reside at the home.  Ms. Small did not provide plaintiff with food or shelter at her home.  Thus, Ms. Small's home cannot be considered plaintiff's "household" under the CSAA.  Any claim against her as a passive abuser must fail.

### 3. Plaintiff has not pled "sexual abuse" as defined by the CSAA

Before assessing any alleged knowledge or acquiescence of sexual abuse by Ms. Small, the court must first assess whether the amended complaints pleads any facts that "sexual abuse" occurred.  The CSAA defines "sexual abuse" as "an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult."  N.J.S.A. 2A:61B-1(a)(1).  Within the CSAA "sexual contact" is defined as "an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of sexually arousing or sexually gratifying the actor."  N.J.S.A. 2A:61B-1(a)(2).  The statute further defines "intimate parts" as sexual organs, genital area, anal area, inner thigh, groin, buttock or breast.  N.J.S.A. 2A:61B-1(a)(4).  Here, the amended complaint fails to plead any facts that sexual abuse for CSAA purposes occurred at any time.

While the amended complaint frequently alleges that Frazier sexually abused plaintiff, the facts fail to show that there was any "sexual contact" or "sexual penetration" to qualify as sexual abuse under the CSAA.  Rather, the amended complaint states that Frazier and plaintiff walked hallways and talked together

42

privately at school, Frazier took plaintiff to the movies and Chuck E. Cheese, plaintiff attended sleepovers with Frazier, plaintiff slept in Frazier's bed, Frazier directed plaintiff to dance with his underwear down and penis exposed while Frazier photographed it, and Frazier showed plaintiff pornographic photographs of young boys.  See Compl. ¶¶34, 42, 45-47, 58, 69, 80.  In fact, the IAIU investigation did not reveal any sexual contact, id. ¶80, and Frazier was not charged with child sexual abuse, but instead various charges related to child pornography.  Id. ¶67.  Though the aforementioned acts by Frazier are inappropriate, they do not constitute "sexual abuse" pursuant to the terms of the CSAA.  As plaintiff has failed to plead facts that he was "sexually abused," Count IX of the amended complaint must be dismissed.

### 4.   Ms. Small did not know of and acquiesce to Frazier's sexual abuse

Even if plaintiff could show that Ms. Small stood *in loco parentis* to him when he was "sexually abused" by Frazier, as detailed in Points I and II, supra, there are no facts pled to show the final crucial prong – that Ms. Small knew of Frazier's sexual abuse and simply allowed it to happen.  The statute clearly requires actual knowledge of the sexual abuse and acquiescence in it.  N.J.S.A. 2A:61B-1(a)(1); see J.H. v. Mercer County Youth Detention Center, 930 A.2d 1223, 1231-1232 (N.J. Super. Ct. App. Div. 2007).  Constructive knowledge or allegations that Ms. Small should have known about the danger of sexual abuse is insufficient to establish

liability under the CSAA.  Consequently, plaintiff has failed to state a plausible cause of action against Ms. Small for passive abuser liability under the CSAA.

## POINT V

### PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES

In the prayers for relief as to all counts alleged against Ms. Small, plaintiff seeks punitive damages.  Local governments, such as the Board, are immune from punitive damages as a matter of federal law.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748 (1981).  Thus, a plaintiff may not recover punitive damages from a person sued in their "official capacity," such as Ms. Small.  Pica v. Sarno, 907 F.Supp. 795, 805 (D.N.J. 1995).  Although a plaintiff may recover punitive damages from a defendant sued in her "individual capacity" under § 1983, the Supreme Court directs that "the defendant's conduct [must be] shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 55, 103 S.Ct. 1625 (1983).

Similarly, for the common law claims, as a public employee Ms. Small can only be subject to punitive damages if it is established that her conduct was intentional and beyond the scope of employment.  Kelly v. County of Monmouth, 883 A.2d 411, 419 (N.J. Super. Ct. App. Div. 2005); See N.J.S.A. 59:3-14.  To recover punitive damages, plaintiff must show "circumstances of aggravation or

outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that [the defendant's] conduct may be called willful or wanton." Ramirez v. U.S., 998 F.Supp. 425, 438 (D.N.J. 1998) (citation omitted). Willful misconduct is much more egregious than ordinary negligence and has been defined as the "commission of a forbidden act with actual knowledge that the act is forbidden." Kollar v. Lozier, 669 A.2d 845, 849 (N.J. Super. Ct. App. Div.), certif. denied, 678 A.2d 714 (N.J. 1996). Further, "carelessness or poor decision making do not constitute 'actual fraud, actual malice or willful misconduct.'" Van Engelen v. O'Leary, 732 A.2d 540, 546 (N.J. Super. Ct. App. Div.), certif. denied, 744 A.2d 1208 (N.J. 1999).

Clearly, as detailed supra, the amended complaint fails to set forth any factual basis against Ms. Small that would in any fashion come near this lofty standard. Plaintiff has not pled any facts to demonstrate Ms. Small can be subject to individual liability, or any conduct that is so egregious that would permit a finding of liability for punitive damages. Further, plaintiff has failed to state a claim under the CSAA thereby precluding any punitive damages on Count IX. Accordingly, as a matter of law, plaintiff is not entitled to punitive damages from La'Quetta Small and the request for same in the prayers for relief in the amended complaint must be dismissed.

## **<u>CONCLUSION</u>**

For the foregoing reasons, La'Quetta Small respectfully requests that the

Amended Complaint against her be dismissed with prejudice under Fed. R. Civ. P.

12(b)(6) for its failure to state a cause for action upon which relief may be granted.

HILL WALLACK LLP
21 Roszel Road
Princeton, NJ 08543
Attorneys for Defendant,
La'Quetta Small
i/p/a La'Quetta Small-Frazier


By:/s/ *Jeffrey L. Shanaberger*
          Jeffrey L. Shanaberger, Esq.

Dated:          September 10, 2021