# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **JANE DOE, on behalf of JOHN DOE, her minor child,** | : | **Hon. Joseph H. Rodriguez** |
| | : | |
| ***Plaintiff*,** | : | **1:21-cv-11189** |
| | : | |
| **v.** | : | |
| | : | |
| **MARTY SMALL, SR., in his official Capacity as Mayor of Atlantic City, New Jersey, and  individually; LA'QUETTA SMALL-FRAZIER, in her official capacity as Former Principal of Pennsylvania Avenue School, and individually; BARRY CALDWELL, in his official capacity as current Superintendent of the Atlantic City School District; PAUL A. SPAVENTA, in his official capacity as former Interim Superintendent of the Atlantic City School District; ATLANTIC CITY BOARD OF EDUCATION, a public entity; and KAYAN AHMED FRAZIER, an individual,** | : : : : : : : : : : : : : : : : | |
| | : | **OPINION** |
| | : | |
| ***Defendants*.** | : | |

After learning that a substitute teacher sexually abused her son on and off school grounds, Plaintiff Jane Doe ("Plaintiff") filed this lawsuit against the Atlantic City School District (the "District"), District administrators, and the Mayor of Atlantic City, asserting a host of statutory and common-law claims.  The District and its superintendents [Dkt. 41], and the school principal La'Quetta Small ("La'Quetta) [Dkt. 42] moved to dismiss the claims against them.  For the reasons discussed below, the Court will grant the District's motion, grant La'Quetta's motion in part and deny La'Quetta's motion in part.

## I.    Background

John Doe is a minor child who was an elementary school student at Pennsylvania Avenue School ("the School") in Atlantic City, New Jersey from early 2016 to approximately April 2019 (the "Relevant Period"). [*See* Am. Compl. ¶ 31]. The School is part of the District which is also a defendant in this case. [Am. Compl. ¶ 11]. Defendant Harry Caldwell ("Caldwell") has been the Superintendent of the District since 2017. [Am. Compl. ¶ 9]. Defendant Paul Spaventa ("Spaventa") served as interim superintendent for the District from 2015 until Caldwell assumed the position. [Am. Compl. ¶ 10]. The Court will refer to the above-named defendants collectively as the "District Defendants." Defendant La'Quetta was principal of the School during the Relevant Period. [Am. Compl. ¶ 8]. Defendant Marty Small Sr. ("Small"), husband of La'Quetta, is the current Mayor of Atlantic City who was also Mayor during the Relevant Period. [Am. Compl. ¶ 25]. Defendant Kayan Frazier ("Frazier") is a cousin of La'Quetta who worked as a substitute teacher for the District, including at the School. [Am. Compl. ¶¶ 13, 29]. Frazier resided with La'Quetta for some time during the early portion of the Relevant Period. [*See* Am. Compl. ¶ 77].

### a.    Frazier's Relationship with John Doe

In early 2016, John Doe met Frazier, who was working at the School. [Am. Compl. ¶ 31]. Frazier was viewed as a "cool" teacher who made an effort to develop rapport with students. [Am. Compl. ¶ 32]. Frazier took an interest in John Doe and brought John Doe for private walks through the hallways of the School and on trips to the Library. [Am. Compl. ¶¶ 34-36]. Frazier developed a relationship with Plaintiff, John Doe's mother, in the spring of 2016 and communicated with Plaintiff by phone about John Doe's welfare. [Am. Compl. ¶¶ 39-44]. Meanwhile, Frazier continued to

2

spend time with John Doe at school.  Nobody at the School identified Frazier's interactions with John Doe as problematic.

In June 2016, Frazier contacted Plaintiff to invite John Doe to go with Frazier and his nephew—La'Quetta's son—to Chuck E. Cheese and the movies.  [Am. Compl. ¶ 42].  Plaintiff permitted John Doe to attend.  [Am. Compl. ¶ 42].  After that outing, John Doe began to spend more time with Frazier outside of school.  In the fall of 2016, and with Plaintiff's permission, John Doe attended a sleepover that Frazier hosted for Frazier's cousins.  [Am. Compl. ¶¶ 45-46].  "The sleepover concluded without apparent incident," and Plaintiff permitted John Doe to attend sleepovers at Frazier's house more often.  [Am. Compl. ¶ 47].  Except for a six-month pause in 2018, this relationship continued until 2019.

Unbeknownst to Plaintiff, Frazier was sexually abusing John Doe inside and outside of school since 2016.  Incidents of abuse occurred in the library of the School, [Am. Compl. ¶ 36] and the home bathroom of La'Quetta, [Am. Compl. ¶ 60], among other places.  As a result of this abuse, John Doe has endured severe psychological, emotional, and behavioral problems.  [Am. Compl. ¶¶ 82-87].  It is unclear from the Amended Complaint how and when Plaintiff learned of the abuse that John Doe endured.

### b.  La'Quetta's Awareness

The Amended Complaint alleges that La'Quetta learned in early 2016 that Frazier was interacting with John Doe outside of school and hosting John Doe for overnight sleepovers, some of which her own son attended.  [Am. Compl. ¶ 70].  The Amended Complaint further asserts that "despite the obvious appearance of impropriety, [La'Quetta] – neither in her official capacity, nor in her individual capacity – questioned

Frazier's behavior," but knew of Frazier's "inappropriate and abusive conduct" and eventually "prohibited her son from joining Frazier and John Doe on their weekend outings." [Am. Compl. ¶ 72]. According to the Amended Complaint, La'Quetta did not notify anyone of Frazier's conduct until February 24, 2017, when she "filed a report with the Division of Child Protection and Permanency [("DCPP")] and detailed the unprofessional conduct of Frazier." [Am. Compl. ¶ 73]. The Amended Complaint does not include any further details about this report. The Amended Complaint claims that La'Quetta also sent incident reports to Source4Teachers—an educational staffing company—in February and March of 2017 which "cited Frazier for unprofessional conduct and recommended that he be removed from the substitute teaching position within the school district." [Am. Compl. ¶¶ 74–75]. The Amended Complaint claims that La'Quetta did not report Frazier sooner because Frazier was living in La'Quetta's home when the abuse of John Doe began, and that Frazier's conduct could affect La'Quetta's career and Small's political aspirations. [Am. Compl. ¶ 77].

In March of 2017, the Institutional Abuse Investigation Unit ("IAIU") of the Department of Children and Families for the State of New Jersey investigated Frazier "likely as a result of [La'Quetta's] reporting." [Am. Compl. ¶ 79]. When interviewed, Frazier admitted that he permitted John Doe to sleep in his bed but denied any inappropriate or sexual conduct. [Am. Compl. ¶ 80]. He also admitted to communicating with another nine-year-old student via text message in violation of school policy. [*Id.*]. Frazier was terminated from his job as a substitute teacher because of this investigation. [Am. Compl. ¶ 81]. The Board did not conduct its own investigation into Frazier's conduct. [Am. Compl. ¶ 81]. Frazier was later hired to work with the DCPP. [*See* Am. Compl. ¶ 54].

4

### c.  FBI Investigation

In April of 2019, the FBI executed a search warrant of Frazier's home after receiving a tip that Frazier had uploaded child pornography images to the internet. [Am. Compl. ¶¶ 61–65].  Photos of John Doe were among those recovered during the search.  [Am. Compl. ¶ 65].  Frazier was arrested and charged federal crimes for producing, distributing, and receiving child pornography.  [Am. Compl. ¶¶ 66–67]. John Doe told the FBI that Frazier threatened to harm Plaintiff's family members if John Doe "did not comply with Frazier's sexually abusive demands or if he told anyone about" the abuse.  [Am. Compl. ¶ 68].  John Doe also reported that Frazier often showed John Doe pornographic photos of other young boys.  [Am. Compl. ¶ 69].

### d.  This Lawsuit

The Amended Complaint is the operative pleading and alleges the following claims:

| Count | Claim | Defendant(s) |
|---|---|---|
| I | Title IX, 20 U.S.C. § 1681 et seq. (Deliberate Indifference) | Board |
| II | 42 U.S.C. § 1983 (Failure to Intervene, Investigate & Protect | District Defendants, La'Quetta |
| III | 42 U.S.C. § 1983 (Failure to Train and Supervise) | District Defendants, La'Quetta |
| IV | Masha's Law, 18 U.S.C. § 2255 | Frazier |
| V | Negligence | All Defendants |
| VI | Gross Negligence, Recklessness | All Defendants |
| VII | Assault and Battery | Frazier |
| VIII | Intentional Infliction of Emotional Distress | District Defendants, Frazier |
| IX | New Jersey Child Sexual Abuse Act, N.J.S.A § 2A:61b-1 | All Defendants |

The District Defendants and La'Quetta separately moved to dismiss Plaintiff's Amended Complaint.  [Dkt. 41, 42, respectively].  Frazier and Small did not move to dismiss the Amended Complaint.

## II.  Jurisdiction

The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a).

## III.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  *Id.*  In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6).  *See Chester Cnty Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence.  *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether the plaintiff will ultimately prevail.  *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d. Cir. 2007).  Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[1] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "unsupported conclusions and unwarranted inferences," *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005))). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.   Analysis

### a.  Waived Claims

As the District Defendants argue, Plaintiff's opposition brief is styled as an opposition to both motions to dismiss but fails to respond to District Defendants' arguments for dismissing all claims against Spaventa and Caldwell alleged in Counts II, III, V, VI, and VIII; Counts I–III as alleged against the Board; and vicarious liability as alleged against the Board in Counts V–VIII.  [Dkt. 49 at 1–2].  "The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count."  *Jimenez v. T.D. Bank, N.A*., No. 120CV07699NLHSAK, 2021 WL 4398754, at *14 (D.N.J. Sept. 27, 2021) (quoting *Griglak v. CTX Mortgage Co., LLC*, No. 09–5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010)).  Because Plaintiff's brief indicates that it is a response to both briefs the Court will treat it as such.  The Court will treat the above-cited claims against the District Defendants as waived and will grant District Defendants' motion to dismiss these claims without prejudice.

### b.  Count II: 42 U.S.C. § 1983 (Failure to Intervene, Investigate & Protect; State-Created Danger); Count III: 42 U.S.C. 1983

**(Failure to Train and Supervise) Against District Defendants, La'Quetta**

The Amended Complaint names the District Defendants and La'Quetta as defendants for Counts II and III, but Plaintiff waived Counts II and III against the District Defendants. Thus, La'Quetta is the only remaining Defendant for Counts II and III.

Section 1983 does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "In order to state a claim, plaintiff must show that defendants, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997) (citation omitted). Thus, "[t]he first step in evaluating a [§] 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Bilbili v. Klein*, 249 F. App'x 284, 287 (3d Cir. 2007) (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)).

The Amended Complaint asserts that John Doe's right under the Fourteenth Amendment of the United States Constitution to "personal security, bodily integrity, and equal protection under the law" was violated when Frazier sexually abused John Doe. [Am. Compl. ¶ 100]. In the Third Circuit, "students have a constitutional right to be free from sexual assault by their teachers" under the Fourteenth Amendment. *Maier ex rel. B.T. v. Canon McMillan Sch. Dist.*, No. CIV.A. 08-0154, 2009 WL 2591098, at *5 (W.D.

Pa. Aug. 20, 2009) (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989)).

Count II of the Amended Complaint alleges that La'Quetta violated this right by failing to "intervene, investigate, and protect" John Doe from "sexual attack." [Am. Compl. ¶¶ 101–106]. Count III also alleges that La'Quetta "affirmatively used her authority in a way that created a danger to John Doe or that rendered that child more vulnerable to danger had the state not acted at all." [Am. Compl ¶ 110]. Count III alleges that La'Quetta violated John Doe's constitutional rights by failing to train and supervise employees at the School. The Amended Complaint seeks to hold La'Quetta liable under § 1983 in her individual and official capacities.

La'Quetta offers two arguments that challenge the § 1983 claims against her collectively, and others that address specific theories of liability under § 1983. The Court will address the general arguments first before considering the more specific arguments.

### i. Collective Arguments

La'Quetta first contends that Counts II and III's official capacity claims must be dismissed because they duplicate the § 1983 claims against the Board. [Dkt. 42-1 at 22–23]. Plaintiff responds that Plaintiff's official capacity claims can be dismissed as duplicative only if the claims against La'Quetta are the same as the claims against the Board, and that it is premature to make that determination. [Dkt. 44 at 10–11].

The Supreme Court has distinguished individual-capacity claims from official-capacity claims as follows:

> Personal-capacity suits seek to impose personal liability
> upon a government official for actions he takes under color
> of state law. Official-capacity suits, in contrast, generally

> represent only another way of pleading an action against an entity of which an officer is an agent.  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citations and quotations omitted).

Applying this law, the Court agrees with La'Quetta.  Whether the official-capacity claims against La'Quetta duplicate the § 1983 claim against the Board does not depend on whether the facts alleged as to La'Quetta overlap with the facts alleged as to the Board, as Plaintiff argues.  Rather, *Graham* requires that the official-capacity claims against La'Quetta "be treated as a suit against the entity." *Graham*, 473 U.S. at 166.  *See also Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming dismissal of suit against police officers in their official capacities "because a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them" and because "the suit against the officers in their official capacities is redundant." (citations omitted))).  This rule applies here because Plaintiff does not suggest that the Board did not "receive notice" of the § 1983 claims.  The Court will therefore grant La'Quetta's motion to dismiss the official-capacity § 1983 claims against her for failure to intervene, investigate, and protect and for state-created danger.

La'Quetta next argues that the § 1983 claims against her should be dismissed because the Amended Complaint fails to identify La'Quetta's "personal involvement" in violating John Doe's constitutional rights.  [Dkt. 42-1 at 24].  La'Quetta argues that the Amended Complaint only alleges "general, collective and conclusory statements" without specifying La'Quetta's misconduct.  [*Id.*].  Because of this latter claim about "general, collective, and conclusory" allegations, the Court understands the argument

11

concerning "personal involvement" only to attack the lack of specificity of the allegations against La'Quetta.

Based on this understanding, the Court rejects La'Quetta's argument.  The case that La'Quetta cites to support her "personal involvement" argument concerns whether an individual can be liable for a civil rights violation by way of *respondeat superior*.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.") (citations omitted).  Plaintiff does not aim to reach La'Quetta through *respondeat superior*, but rather through her personal involvement.  To that end, and as Plaintiff points out, [*see* Dkt. 44 at 12–13], the Amended Complaint alleges that La'Quetta knew in early-2016 of Frazier's interactions with John Doe outside of school hours because her own son "joined Frazier and John Doe on several of their early outings."  [Am. Compl. ¶ 70].  Further, the Amended Complaint alleges that Frazier lived at La'Quetta's house "when some of the early abuse was alleged to have occurred."  [Compl. ¶ 77].  The Amended Complaint then alleges that "despite the obvious appearance of impropriety, [La'Quetta]–neither in her official capacity, nor in her individual capacity–questioned Frazier's behavior" until February 24, 2017, when she "filed a report with the Division of Child Protection and Permanency and detailed the unprofessional conduct of Frazier." [Am. Compl. ¶¶ 71, 73].  These allegations distinguish La'Quetta's role in this case from the roles of the other Defendants.  Thus, the Court rejects La'Quetta's motion on this issue.

### ii.  Count III: Failure to Train and Supervise

La'Quetta does not argue that Plaintiff's claim for failure to train should be dismissed but argues that she cannot be held liable for failure to supervise.  Thus, the Court will only address the legal standard for La'Quetta's argument concerning her failure to supervise.

There are two ways in which an individual can be held liable for failure to supervise under § 1983.  First "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).  Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)).

La'Quetta argues that the first theory of supervisory liability does not apply because La'Quetta was not a "policymaker."  [Dkt. 42-1 at 24–24].  The Court agrees, as the Amended Complaint does not identify a relevant policy which La'Quetta—rather than the Board—enacted or over which La'Quetta exercised supervisory authority, and which had any connection to John Doe's abuse.  The Amended Complaint criticizes the District's "anti-harassment policy" for taking "a reactive, rather than proactive, approach" to sexual harassment because the policy "is silent with respect to the supervision of school district employees by their superiors" to ensure that employees do not abuse students.  [Am. Compl. ¶¶ 126–27].  But the Amended Complaint

13

acknowledges that this is a policy of the District, not the School which La'Quetta controlled.  The Amended Complaint also alleges that La'Quetta "failed to implement effective rudimentary reporting procedures that would have informed it of Frazier's misconduct."  [Am. Compl. ¶ 152].  But the Amended Complaint does not plead any facts to suggest that anyone knew of and tried to report Frazier's conduct, but that an absence of reporting procedures prevented disclosure.  *Cf. Frugis v. Bracigliano*, 827 A.2d 1040, 1051–53 (N.J. 2003) (discussing lack of structure for school employees who observed a principal's "questionable and deviant" behavior to report observations).

La'Quetta next argues that the second theory of supervisory liability fails because the Amended Complaint does not allege that La'Quetta knew that Frazier was abusing Plaintiff or acquiesced to or participated in the abuse.  [Dkt. 42-1 at 25–26].  The Court disagrees.

With respect to La'Quetta's knowledge, the Amended Complaint alleges that Frazier took a noticeable interest in John Doe between early 2016 and February 2017, and that La'Quetta "neither in her official capacity, nor in her individual capacity … questioned Frazier's conduct" "despite the obvious appearance of impropriety."  [Compl. ¶ 71].  The Amended Complaint also alleges that some instances of abuse occurred in La'Quetta's home.  [Am. Compl. ¶ 153].  From these allegations, the Amended Complaint suggests that it is both possible and plausible that La'Quetta knew that Frazier was abusing John Doe and consented to the abuse.  [Am. Compl. ¶ 179].

While the Court agrees that the Amended Complaint does not allege that La'Quetta witnessed or learned of inappropriate sexual behavior of Frazier, LaQuetta's familial relationship with Frazier coupled with the fact that Frazier used LaQuetta's home for visits and sleep overs with Doe distinguish this case from others. *See, e.g.,*

14

*Thomas v. Bd. of Educ. of Brandywine Sch. Sch. Dist.*, 759 F. Supp. 2d 477, 497 (D. Del. 2010), *D.C.G. ex rel. E.M.G. v. Wilson Area Sch. Dist.*, No. CIV.A. 07-CV-1357, 2009 WL 838548, at *10 (E.D. Pa. Mar. 27, 2009); *Santiago v. Warminster Twp.*, 629 F.3d 121, 134 (3d Cir. 2010) (finding that allegations that a supervising police officer was present when another officer used excessive force "[gave] rise to the reasonable inference that he was aware" that unreasonable force was being used (citing *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3rd Cir. 2009))).

The Amended Complaint states that La'Quetta filed incident reports with DCPP and Source4Teachers in March 2017 for "unprofessional conduct."  [Am. Compl. ¶¶ 73–74].  The allegations set forth in the Amended Complaint on this issue are thin, and do not indicate that the reports identified a single incidence of sexual abuse, let alone an ongoing pattern of such abuse.  The Amended Complaint states it is "likely" DCPP and Source4Teachers investigated Frazier "as a result of" La'Quetta's reporting, but acknowledges that the state investigation did not uncover evidence of sexual abuse. [Am. Compl. ¶ 80].  But Given the unique circumstances of this case, including the intertwined professional and familial relationship between Frazier and LaQuetta, these allegations are sufficient to suggest that La'Quetta suspected that Frazier engaged in "unprofessional" conduct in 2017. The reports also permit an inference that La'Quetta "had knowledge of a 'known' and 'obvious' risk that the sexual abuse was ongoing or was practically certain to occur."  *Thomas v. Bd. of Educ. of Brandywine Sch. Sch. Dist.*, 759 F. Supp. 2d 477, 497 (D. Del. 2010) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).

Thus, the timing of the reporting is sufficient to demonstrate acquiescence having occurred late into the relationship between Frazier and Plaintiff. La'Quetta's

alleged knowledge of Frazier's abuse can be inferred by the filing of the reports to the DCPP and Source4Teachers. While reporting Frazier's "unprofessional" conduct appears inapposite of acquiescence, the timing and intertwined familial and professional relationship sufficiently undermines reaching that conclusion at this stage.

In sum, the Court finds that the Amended Complaint plausibly alleges that La'Quetta "actually knew" that Frazier was abusing John Doe and that La'Quetta "acquiesced" to Frazier's Conduct. As such, the Court will deny La'Quetta's motion to dismiss Plaintiff's § 1983 claim against La'Quetta for supervisory liability.

### iii. Count II: State-Created Danger

Plaintiff's last theory of liability under § 1983 which La'Quetta challenges is state-created danger. "As a general rule, there is no affirmative right to governmental protection under the Due Process Clause of the Fourteenth Amendment." *Bilbili v. Klein*, 249 F. App'x 284, 287 (3d Cir. 2007) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). The state-created danger doctrine is a "narrow exception to the general rule that the state has no duty to protect its citizens from private harms." *Henry v. City of Erie*, 728 F.3d 275, 286 (3d Cir. 2013). Under this exception, a "plaintiff can allege a substantive due process violation under § 1983 by showing that the harm suffered at the hands of third parties was a direct result of state action. *Bilbili*, 249 F. App'x at 287 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1208–09 (3d Cir. 1996)).

To state a claim for state-created danger, a plaintiff must meet the following elements:

(1)     the harm ultimately caused was foreseeable and fairly direct;

(2)     a state actor acted with a degree of culpability that shocks the conscience;

16

(3)     a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4)     a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (citations and quotations omitted).  "It is important to stress ... that under the fourth element ... '[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger.'"  *Id.* (quoting *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir. 1992)).

La'Quetta first argues that the state-created danger doctrine is irrelevant because it only applies where a private citizen is harmed by another private citizen.  [Dkt. 42-1 at 26–27].  As noted above, the state-created danger doctrine is an exception to the rule that "the state has no duty to protect its citizens from *private harms*."  *Henry*, 728 F.3d at 286 (emphasis added).  La'Quetta argues that Frazier was a "state actor ... acting under color of state law" when he violated John Doe's constitutional rights and, therefore, the state-created danger doctrine does not apply.

Plaintiff responds Frazier acted as a private citizen when he abused John Doe because much of the abuse occurred outside of school.  [Dkt. 44 at 14–15].  Plaintiff further argues that Frazier "deviated from his scope of employment" when abusing John Doe and, therefore, was not a state actor.  [Dkt. 44 at 14–15].

Fact issues preclude the Court from granting La'Quetta's motion on this issue. The Court acknowledges that district courts in this circuit have declined to permit state-

created danger claims alleging that a state actor injured a private individual. *See, e.g.*, *Jowett v. Churchill*, 2021 WL 3879084 at \*8 (D.N.J. Aug. 31, 2021) (citations omitted); *A.B. v. Vineland Bd. of Educ.*, No. CV1711509RBKKMW, 2019 WL 2354609, at \*6 (D.N.J. June 4, 2019); *Green v. Mount Carmel Area Sch. Dist.*, No. 4:18-CV-02218, 2019 WL 1787592, at \*8 n.6 (M.D. Pa. Apr. 24, 2019). *But see Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) ("[A] corrections officer's failure to intervene in a beating [by another corrections officer] can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."). But fact issues exist as to whether Frazier functioned as a "state actor" when abusing John Doe. While the Complaint alleges that Frazier began his relationship with John Doe while working as a substitute teacher, [*e.g.,* Am. Compl. ¶¶ 31, 34], and Frazier abused John Doe during school hours and on school grounds, [Am. Compl. ¶ 36], it also alleges that Frazier developed a relationship with John Doe and his mother outside of school, [Am. Compl. ¶¶ 40–47], the relationship continued after Frazier began to work for the Division of Youth and Family Services, [Am. Compl. ¶¶ 54–56], and Frazier abused John Doe outside of school. [*E.g.,* Am. Compl. ¶ 59]. As Plaintiff alleges, "Frazier's sexual abuse and exploitation of John Doe knew no bounds, occurring both on and off school grounds, and even in the home bathroom of Defendants Marty Small and La'Quetta Small-Frazier." [Am. Compl. ¶ 60]. Based on these allegations, the Court is reluctant to find at this stage of the litigation that Frazier acted under the color of state law during all his interactions with John Doe. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997) ("[N]ot all torts committed by state employees constitute state action, even if committed while on duty."); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3d Cir.1995) ("[A]n otherwise

18

private tort is not committed under color of law simply because the tortfeasor is an employee of the state.").

La'Quetta alternatively argues that the Amended Complaint fails to adequately allege the elements of a state-created danger claim. [Dkt. 42-1 at 28–29]. La'Quetta focuses on element (4) which requires Plaintiff to show that La'Quetta "affirmatively used ... her authority in a way that created a danger to [John Doe] or that rendered [John Doe] more vulnerable to danger than had the state not acted at all." *Bright*, 443 F.3d at 281. La'Quetta argues that the Amended Complaint does not allege facts showing that she affirmatively acted to create danger for John Doe. [Dkt. 42-1 at 29–30].

The Court agrees. Plaintiff argues that La'Quetta knew "of the abusive conduct, but her decision not to act in any way, created a danger that [John Doe] fell victim to – a danger that [La'Quetta] could have taken efforts to prevent or at least mitigate." [Dkt. 44 at 15]. But inaction and failure protect do not satisfy element (4) of the state-created danger theory. *Bright*, 443 F.3d at 282 ("[W]e have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised."); *Callaway v. Small*, -- F. Supp. 3d --, No. 1:21-CV-12058, 2021 WL 6062281, at *7 (D.N.J. Dec. 22, 2021) (Rodriguez, J.) (granting motion to dismiss state-created danger claim for failure to allege affirmative conduct by a state actor). While the Amended Complaint alleges that La'Quetta "affirmatively used her authority in a way that created a danger" to John Doe, this is a legal conclusion unsupported by any factual allegations. Because the Amended Complaint does not identify any affirmative conduct by La'Quetta that created danger for John Doe, the Court finds that Plaintiff has failed to adequately plead a § 1983 claim based on state-

19

created danger.  The Court will therefore grant La'Quetta's motion to dismiss Plaintiff's state-created danger claim.

### iv.  Summary of § 1983 Findings

For the reasons stated above, Counts II and III fail to state a claim against La'Quetta to the extent they seek to hold her liable in her official capacity.  Counts II and III also fail to state a claim for state-created danger. Dismissal of Count II's claim of failure to supervise is denied and La'Quetta does not argue against Count II's claim for failure to intervene, investigate, and protect or Count III's claim for failure to train; those claims remain.

### v.  Qualified immunity

La'Quetta argues that, if Plaintiff adequately pleads the elements of any § 1983 theory, qualified immunity insulates her from liability.  [Dkt. 42-1 at 32–34].  As noted above, only Plaintiff's § 1983 claims for failure to supervise, failure to intervene, investigate and protect (Count II) and failure to train (Count III) remain.

"State actors sued in their individual capacity under Section 1983 are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mann v. Palmerton Area Sch. Dist.*, 189 F. Supp. 3d 467, 478 (M.D. Pa. 2016), *aff'd*, 872 F.3d 165 (3d Cir. 2017), *as amended* (Sept. 22, 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine whether a state actor is entitled to qualified immunity, courts must perform a two-part inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged … make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

20

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations and quotations omitted).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

La'Quetta contends that qualified immunity shields her from liability.  She argues that element (1) is not satisfied because even if the Amended Complaint alleges that Frazier violated John Doe's constitutional rights, it does not allege that La'Quetta violated his rights.  [Dkt. 42-1 at 33–34].

Plaintiff argues that it is premature to apply qualified immunity which is a "question of fact."  [Dkt. 44 at 19].  This argument misses the mark.  While "qualified immunity issues … may require the kind of factual context that is available only on summary judgment or at trial," courts are "obligated to address" qualified immunity defenses raised in a motion to dismiss.  *Est. of King v. City of Jersey City*, No. 2:15-CV-6868-KM-MAH, 2018 WL 3201793, at *7 (D.N.J. June 29, 2018) (citing *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)).

The Court also rejects La'Quetta's argument that qualified immunity shields her from liability because she did not sexually assault John Doe herself.  Qualified immunity focuses on whether a plaintiff's constitutional rights were violated and how "clearly established" those rights were at the time of the violation.  *See Pearson*, 555 U.S. at 232. Qualified immunity does not concern who physically violated a plaintiff's constitutional rights or otherwise caused the violation.  Those issues are properly considered when

21

determining whether a plaintiff has stated a viable claim under § 1983, which creates a cause of action against state actors who "subject[] [a plaintiff], or cause[] [a plaintiff] to be subjected ... to the deprivation of" his or her rights.  42 U.S.C. § 1983.  And § 1983 permits injured parties to sue state actors for violations of the plaintiffs' constitutional rights even if those state actors did not physically violate the plaintiffs' rights.  *See, e.g.*, *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005) ("A supervising authority may be liable under § 1983 for failing to train police officers when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact, notwithstanding the qualified immunity of an officer at the scene.").

Finding that La'Quetta is entitled to qualified immunity because she did not abuse John Doe herself would put qualified immunity at odds with § 1983 and undermine well-established theories of § 1983 liability.  Courts routinely recognize and rule on failure to train[2] and failure to intervene[3] claims, among others, involving state actors and entities which do not physically violate a plaintiff's constitutional rights. These theories of liability recognize that some state actors or entities may be liable for

---

[2] *See, e.g.*, *Meza v. Jackson Twp.*, No. 318CV15206BRMDEA, 2021 WL 2549319, at *11 (D.N.J. June 22, 2021) ("For a § 1983 claim of failure to train or supervise municipal employees, a plaintiff must show that failure to provide training or supervision amounted to 'deliberate indifference' to the rights of persons with whom the employee will come into contact." (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014))).

[3] *See, e.g.*, *Meza v. Jackson Twp.*, No. 318CV15206BRMDEA, 2021 WL 2549319, at *10 (D.N.J. June 22, 2021) ("For an officer '[t]o be liable under a failure to intervene theory, the plaintiff must have demonstrated that [her] underlying constitutional rights were violated, that the officer had a duty to intervene, and that the officer must have had a realistic and reasonable opportunity to intervene.'" (quoting *White v. City of Vineland*, Civ. A. No. 11608308, 2020 WL 6638579, at *6 (D.N.J. Nov. 12, 2020))); *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 294 (D.N.J. 2015) (finding that police officers who were in the room for and failed to stop an allegedly unlawful strip search "could likewise be found liable for failure to intervene.").

contributing to or permitting the violation of a plaintiff's constitutional rights, even if others ultimately cause the constitutional injury. *See, e.g.*, *Gilles*, 427 F.3d at 207. But qualified immunity would render these theories of liability meaningless if it categorically shielded such state actors and entities from liability. La'Quetta has offered no authority to support such a finding.

The Amended Complaint alleges that John Doe suffered a violation of his clearly established Fourteenth Amendment rights. *Maier ex rel. B.T. v. Canon McMillan Sch. Dist.*, No. CIV.A. 08-0154, 2009 WL 2591098, at *5 (W.D. Pa. Aug. 20, 2009) ("The law of this jurisdiction is clear that, under the Fourteenth Amendment, students have a constitutional right to be free from sexual assault by their teachers." (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989))). La'Quetta does not argue otherwise. The Court therefore rejects La'Quetta's argument that qualified immunity shields her from liability for failing to supervise and failure to train and intervene.

### c. Counts V, VI: Negligence, Gross Negligence, and Recklessness Against All Defendants

Plaintiff waived their negligence claim against Spaventa and Caldwell, and their vicarious liability negligence claim against the Board. Thus, La'Quetta is the only remaining Defendant for Plaintiff's negligence claims.

To sustain a negligence claim, a plaintiff must establish "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (quoting *Polzo v. Cnty. of Essex*, 960 A.2d 375 (N.J. 2008)). "Gross negligence has the same elements as ordinary negligence because '[n]egligence differs from gross negligence only in degree, not in kind.'" *Zelnick v. Morristown-Beard Sch.*, 137 A.3d 560, 567 (N.J. Super. Ct. Law. Div. 2015) (quoting *Monaghan v.*

*Holy Trinity Church*, 646 A.2d 1130 (N.J. Super Ct. App. Div. 1994). "Whereas negligence is 'the failure to exercise ordinary or reasonable care' that leads to a natural and probable injury, gross negligence is 'the failure to exercise slight care or diligence.'" *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 754 (N.J. 2016) (quoting Introductory Notes, Model Jury Charge (Civil) § 5.12 "Gross Negligence" (2009)). "Reckless conduct is the conscious disregard … to a known or obvious risk of harm to another." *Steinberg*, 142 A.3d at 755 (citations and quotations omitted) (ellipses in original).

"[F]oreseeable risk is the indispensable cornerstone of any formulation of a duty of care." *Dunphy v. Gregor*, 642 A.2d 372, 376 (N.J. 1994). "While foreseeability alone does not create a duty … there can be no duty unless harm to another is reasonably foreseeable. *J.S. v. R.T.H.*, 693 A.2d 1191, 1193 (N.J. Super Ct. App. Div. 1997), aff'd, 714 A.2d 924 (N.J. 1998) (citations omitted). "In the duty of care analysis, foreseeability 'is based on the defendant's knowledge of the risk of injury and is susceptible to objective analysis.'" *Vizzoni v. B.M.D.*, 212 A.3d 962, 970 (N.J. Super. Ct. App. Div. 2019) (quoting J.S. v. R.T.H., 155 N.J. 330, 337, 714 A.2d 924, 928 (N.J. 1998)). "That knowledge may arise from actual awareness … or knowledge may be constructive when the defendant was in a position to foresee and discover the risk of harm[.]" *Id.* (citations and quotations omitted).

"Once the foreseeability of an injured party is established, … considerations of fairness and policy govern whether the imposition of a duty is warranted." *Carvalho v. Toll Bros. & Devs.*, 675 A.2d 209, 212 (N.J. 1996) (quoting Carter Lincoln–Mercury, Inc. v. EMAR Group, Inc., 638 A.2d 1288, 1294 (N.J. 1994)). "The assessment of fairness and policy 'involves identifying, weighing, and balancing several factors—the

24

relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Id.* (quoting *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110 (NJ. 1993)).

The Amended Complaint alleges that La'Quetta owed duties to John Doe based on her role as an educator and as the owner of a home where Frazier abused John Doe. [Am. Compl. ¶ 149]. The Court must address the duty applicable to each theory of liability.

### i. Duty as School Official

"School officials have a general duty 'to exercise reasonable supervisory care for the safety of students entrusted to them, and [are accountable] for injuries resulting from failure to discharge that duty.'" *Jerkins ex rel. Jerkins v. Anderson*, 922 A.2d 1279, 1285 (N.J. 2007) (quoting *Caltavuturo v. City of Passaic*, 307 A.2d 114, 117 (N.J. Super. Ct. App. Div. 1973)). Put differently, "school officials must reasonably supervise children throughout the school day." *Jerkins ex rel. Jerkins v. Anderson*, 922 A.2d 1279, 1284–86 (N.J. 2007). This duty requires educators to "protect the children in their charge from foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others." *Id.* (quoting *L.W. v. Toms River Reg'l Schs. Bd. of Educ.*, 915 A.2d 535 (N.J 2007)). "This duty may be violated, not only in the commission of acts but also in a neglect or failure to act." *Caltavuturo*, 307 A.2d at 117.

New Jersey courts have recognized that sexual abuse of minors, inside and outside of schools, "is often secretive, clandestine, and furtive," *J.S. v. R.T.H.*, 155 N.J. 330, 340, 714 A.2d 924, 929 (1998); *Child M. v. Fennes*, No. A-0873-15T2, 2016 WL 4473253, at *5 (N.J. Super. Ct. App. Div. Aug. 25, 2016). For this reason, courts apply a "particularized" foreseeability standard, whereby a duty "to take reasonable steps to

prevent or warn of" abuse is limited to cases where "the defendant had particular knowledge or special reason to know that a particular plaintiff or identifiable class of plaintiffs would suffer" sexual abuse. *Child M. v. Fennes*, No. A-0873-15T2, 2016 WL 4473253, at *5 (N.J. Super. Ct. App. Div. Aug. 25, 2016) (citations and quotations omitted).

Plaintiff's negligence, gross negligence, and recklessness claims allege that La'Quetta failed "to promptly and effectively respond to the instances of known sexual harassment and abuse," abuse which would not have occurred but-for Defendants' failure. [Am. Compl. ¶ 150]. The Amended Complaint further alleges that Defendants "failed to implement effective rudimentary reporting procedures that would have informed [Defendants] of Frazier's misconduct," and that this failure was significant because Defendants "grossly disregarded critical information, either in their hands or easily accessible thereto, that called for scrutiny of Frazier's activities." [Am. Compl. ¶ 152].

La'Quetta argues principally the Amended Complaint fails to allege a factual basis for her duty to protect John Doe from Frazier's abuse because it fails to plausibly allege that she knew of the abuse and, therefore, that the harm to John Doe was foreseeable. [Dkt. 42-1 at 38]. Based on this failure to allege knowledge, La'Quetta also contends that School's reporting structure cannot provide the basis for a negligence claim against La'Quetta. [Dkt. 42-1 at 27]. According to La'Quetta, the "mere fact of a sexual assault on school grounds … is not sufficient to sustain" a negligence claim against her. [Dkt. 42-1 at 37–38].

The Court disagrees.  As decided above, the Amended Complaint provides a sufficient factual basis for Plaintiff's claim that La'Quetta knew that Frazier sexually abused John Doe on school grounds.  Unlike Plaintiff's § 1983 claim, which requires knowledge of a constitutional violation, Plaintiff's negligence claim concerns La'Quetta's actual or *constructive* knowledge of the *risk* of harm to John Doe.  *Vizzoni*, 212 A.3d at 970.  The Amended Complaint alleges that La'Quetta was aware that Frazier spent time with John Doe outside of school.  [Am. Compl. ¶ 42].  La'Quetta's awareness of Frazier's extramural interactions with John Doe, coupled with her role as principal of the School, permits an inference that La'Quetta knew that Frazier "took an interest" in John Doe at school and spent one-on-one time with John Doe during the school day.  Based on these facts, and stated objectively, the question for the Court is whether a principal who knows that a substitute teacher takes an interest in a child and spends one-on-one time with that child inside and outside of school knows or has "particular knowledge or special reason to know" that a particular plaintiff or identifiable class of plaintiffs would suffer" sexual abuse.  *Child M.*, 2016 WL 4473253, at *5.

This question presents a close call.  On the one hand, the Court's research did not identify—nor has La'Quetta identified—cases where New Jersey state or federal courts granted a school employee's motion to dismiss a negligence claim based on negligent failure to protect students from sexual abuse or assault on school grounds.  Most of the cases reviewed were decided on summary judgment or in post-trial motions.  *See, e.g.*, *Frugis v. Bracigliano*, 827 A.2d 1040, 1051–53 (N.J. 2003) (upholding directed verdict in favor of plaintiffs on negligence claim); *L.E. v. Plainfield Pub. Sch. Dist.*, 194 A.3d 105, 111 (N.J. Super. Ct. App. Div. 2018) (denying defendants' motion for summary judgment); *S.P. v. Collier High Sch.*, 725 A.2d 1142, 1150 (N.J. Super. Ct. App. Div.

27

1999), *abrogated by Jones v. Morey's Pier, Inc.*, 165 A.3d 769 (N.J. 2017) (summary judgment).

On the other hand, plaintiffs that survived motions to dismiss typically allege details about the plaintiff student or the abuser suggesting a sexual assault at school was foreseeable.  For example, in *Lockhart v. Willingboro High School*, 170 F. Supp. 3d 722, 732 (D.N.J. 2015), Judge Simandle denied a motion to dismiss a negligence claim based on a school's failure to prevent a student-on-student sexual assault during the school day.  A teacher instructed the plaintiff, a teenage girl in a special education classroom, and a male peer to return to their empty classroom to retrieve items that the students left behind.  *Id.* at 727.  While in the empty classroom the male student sexually assaulted the plaintiff.  *Id.*  Beyond the assault itself, the complaint alleged that the plaintiff had previously been assaulted in an empty classroom by another student two years prior and that the school was notified.  *Id.* at 727.  The complaint also alleged that the school defendants were aware of a psychological evaluation which included statements from the plaintiff that her peers had repeatedly "touched her private body parts or tried to have sex against her wishes."  *Id.* at 728.  The doctor conducting the evaluation concluded that "[t]here is a great likelihood of future abuse against this young woman."  *Id.* at 728 (alteration in original).  Plaintiffs sued for negligence, among other things, and the school defendants moved to dismiss.

Judge Simandle denied the motion, focusing on the allegations suggesting that the plaintiff's sexual assault was foreseeable.  He found it "foreseeable that leaving a classroom space unsupervised would have created a substantial risk of student-on-student sexual assault against [the plaintiff], due to the pattern of sexual assaults or sexual harassment directed at her by other students at the school over the two years

prior." *Id.* at 738.  Judge Simandle also emphasized that Plaintiff was a "a student with intellectual impairments who, according to [a doctor's] opinion, was especially vulnerable to sexual assault."  *Id.*  Based on these allegations, Judge Simandle concluded that the plaintiff plausibly pled her negligence claims.

Likewise, in *Jones v. Ewing Township Board of Education*, (D.N.J. Nov. 9, 2010), Judge Wolfson allowed a plaintiff's negligence claim to survive a motion to dismiss against a school and its superintendents.  No. 3:09-CV-3536 FLW, 2010 WL 4669875, at *1, *3–*4 (D.N.J. Nov. 9, 2010).  In that case, the plaintiff student was sexually assaulted by a peer at school.  *Id.* *1.  The complaint alleged that the peer had previously been arrested for assaulting another student on school grounds, that the plaintiff previously notified the school on numerous occasions that the peer had been harassing her, and that the peer had been involved with numerous other incidents with other students.  *Id.* at *1.  *But see R.A. v. W. Essex Reg'l Sch. Dist. Bd. of Educ.*, No. A-0329-19, 2021 WL 3854203, at *7 (N.J. Super. Ct. App. Div. Aug. 30, 2021) (finding that plaintiffs adequately pled negligence claim against school defendants where plaintiffs alleged that they were sexually assaulted by a peer who previously assaulted other students, but where the plaintiffs only alleged generally that the school knew or had reason to know of the peer's "history of sexually assaultive and abusive behavior").

In contrast to the complaints in *Lockhart* and *Jones*, Plaintiff does not allege specific facts suggesting that Frazier's assault of John Doe was foreseeable.  Unlike *Lockhart*, the Amended Complaint fails to plead facts about John Doe suggesting a history or pattern of sexual abuse known to La'Quetta or anyone else at the school.  And unlike *Jones*, Plaintiff does not allege any facts about Frazier suggesting a history or pattern of sexual abuse known to La'Quetta or anyone else at the school.  *Cf. Doe v.*

*Dimovski*, 783 N.E.2d 193, 200 (Ill. App. 2003) (finding that a female student adequately pled foreseeability of sexual abuse by a teacher where she pled facts suggesting that another student previously complained to the school about the teacher's sexual abuse).  But there are sufficient circumstantial facts related to LaQuetta's knowledge of same-bed sleepovers and the special interest Frazier took in John Doe socially and on school grounds.

Thus, while this case is also distinguishable from cases involving student-on-student sexual harassment, where courts found that the school's negligence could be inferred from the school's failure to have an adult supervise students, those differences are not fatal to the complaint at this stage. *See, e.g., L.E. v. Plainfield Pub. Sch. Dist.*, 194 A.3d 105, 111–12 (N.J. Super. Ct. App. Div. 2018) ("We have recognized that ["t]eachers must at times be present to oversee students on school playgrounds and in hallways, classrooms, lunchrooms and auditoriums.'" (quoting *Kibler v. Roxbury Bd. of Educ.*, 919 A.2d 878 (N.J. Super. Ct. App. Div. 2007))).  Here, John Doe was supervised by Frazier, an adult substitute teacher ostensibly charged with protecting John Doe from harm.  Plaintiff has cited no authority for the proposition that schools owe a duty to supervise teachers during all one-on-one interactions with students.  Likewise, Plaintiff does not cite binding authority stating that it is foreseeable that any adult teacher would sexually abuse a student. *See Doe v. Lawndale Elementary Sch. Dist.*, 287 Cal. Rptr. 3d 154, 169–70 (Cal. Ct. App. 2021) "[S]exual abuse by members of an organization that provide[s] activities exclusively for children—like an elementary school district—is reasonably foreseeable, even where the organization had no knowledge that [the employee] had previously sexually or physically abused anyone or had a propensity to do so.").

In this regard, the Amended Complaint lacks the factual details upon which other courts have relied to deny motions to dismiss.  However, the unique circumstances of this case, where LaQuetta has personal, familial knowledge of the circumstances related to sleepovers and social outings, coupled with her professional in school observations, are sufficient to create a plausible inference of negligence, recklessness, and gross negligence.

### ii.  Premises Liability

"[T]he duty of the owner or occupier to such a person is gauged by the right of that person to be on the land. That status is determined by which of three classifications applies to the entrant, namely, that of a business invitee, licensee, or trespasser." *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113 (N.J. 1993).  "A social guest is a gratuitous licensee who enters the homeowner's premises with an 'invitation.'" *Grecco v. Sullivan*, No. A-1124-09T3, 2010 WL 3720298, at *3 (N.J. Super. Ct. App. Div. Sept. 17, 2010) (quoting *Berger v. Shapiro*, 152 A.2d 20 (N.J. 1959)).  The parties here agree that John Doe was a social guest.

> A possessor of land is subject to liability for physical harm caused to licensees [social guests] by a condition on the land if, but only if,
> (a)      The possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees [social guests], and should expect that they will not discover or realize the danger."
> (b)      he fails to exercise reasonable care to make the condition safe, or to warn the licensees [social guests] of the condition and the risk involved, and
> (c)      the licensees [social guests] do not know or have reason to know of the condition and the risk involved.

*Parks v. Rogers*, 825 A.2d 1128, 1132 (N.J. 2003) (quoting Restatement (Second) of Torts § 342) (bracketed language in original).

The Amended Complaint alleges that La'Quetta failed to warn Plaintiff or John Doe of Frazier's "known sexual proclivity towards children, or to take reasonable steps to safeguard minor social guests within their home from Frazier."  [Am. Compl. ¶ 153]. The Amended Complaint also alleges that Frazier abused John Doe in the bathroom of La'Quetta's home.  [Am. Compl. ¶ 60].

La'Quetta argues that the Amended Complaint fails to establish that La'Quetta owed a duty to warn because the Amended Complaint fails to allege La'Quetta knew that John Doe was present in her home, that La'Quetta knew of Frazier's "sexual proclivity towards children," or that La'Quetta knew of the ongoing abuse.  [Dkt. 42-1 at 41].

Fact issues preclude the Court from granting La'Quetta's motion to dismiss on this issue.  The Court first rejects La'Quetta's argument that her lack of knowledge of John Doe's presence in her house requires the Court to conclude that no duty exists. Whether a social-guest duty can exist without La'Quetta's knowledge depends on whether Frazier himself was a social guest at the time of the abuse, whether he had the authority as a social guest to invite John Doe to La'Quetta's home, and whether that authority included the ability to use the property for the purposes of sexual abuse. *Witter v. Sterlingbrook Equine, Inc.*, No. CV1914799MASDEA, 2022 WL 1471248, at *3 (D.N.J. May 10, 2022) (finding that a property owner owed social-guest duty to the social guest of a neighbor who had authority to use the property for a particular purpose); *Stackhouse v. Bryant*, No. A-5284-12T3, 2014 WL 2131710, at *1 (N.J. Super. Ct. App. Div. May 23, 2014) (affirming trial court's conclusion that defendant parents owed social-guest duty to attendees of a backyard pool party that defendants' children

32

threw without the parents' knowledge).  *But see Ard v. Fawley*, 735 N.E.2d 14, 18 (Ohio Ct. App. 1999) (finding that one social guest of the defendant did not have the authority to confer social guest status on a third party and, therefore, that defendant owed no social-guest duty to the third party who entered defendant's property without his knowledge).  *See also Fla. v. Jardines*, 569 U.S. 1, 9 (2013) ("The scope of a license—express or implied—is limited not only to a particular area but also to a specific purpose. ").  These are fact issues that the Court cannot resolve at this stage.

The Court also disagrees with La'Quetta's argument that the failure to allege facts supporting her actual knowledge of Frazier's abuse of John Doe or propensity for child abuse preclude liability.  The premises liability claim hinges on whether La'Quetta knew or *should have known* that Frazier was abusing John Doe in La'Quetta's home.  *See Parks*, 825 A.2d at 1132.  The Amended Complaint alleges that La'Quetta knew that Frazier spent time outside of school with John Doe, [Am. Compl. ¶ 70], and eventually filed complaints concerning Frazier's "unprofessional conduct."  [Am. Compl. ¶ 74].  These facts permit a plausible inference that La'Quetta should have known that Frazier was sexually abusing John Doe.  The Court will therefore deny La'Quetta's motion on this issue.

### d. Count VIII: Intentional Infliction of Emotional Distress Against District Defendants and Frazier, Small, La'Quetta

Plaintiff waived Count VIII against Spaventa and Caldwell, and vicarious liability against the Board.  Thus, the remaining defendants for Count VIII are Frazier and Marty and La'Quetta Small, but Frazier and Small have not moved to dismiss this claim.  The Court will therefore only consider La'Quetta's motion to dismiss this claim.

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must establish that the defendant's conduct "(1) was extreme and outrageous, (2) was intentional or reckless, (3) caused emotional distress, and (4) that distress was severe." *Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 323 (D.N.J. 2021) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)). "In order to establish 'extreme and outrageous' conduct, a plaintiff must sufficiently plead factual allegations to show the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *M.H. by D.H. v. C.M.*, No. 320CV01807BRMTJB, 2020 WL 6281686, at *10 (D.N.J. Oct. 27, 2020) (quoting *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001)).

In *M.H. by D.H. v. C.M*, the court granted a motion by a school and school employees to dismiss the plaintiff's IIED claim based on the plaintiff's sexual abuse at school. 2020 WL 6281686, at *11. In that case, the plaintiff, a student with multiple disabilities, alleged that she was sexually assaulted and harassed by her boyfriend at school. *Id.* at *2. After plaintiff showed signs of depression, her mother contacted the school to inquire about her daughter's wellbeing. *Id.* The school informed the mother that the daughter was dating a peer, suggested that the relationship was the cause of the plaintiff's depression, and promised to investigate. *Id.* The plaintiff's mother advised the school that plaintiff should not be dating at all due to her disabilities and instructed the school to separate her daughter from her boyfriend. *Id.* The school failed to investigate as promised and the abuse persisted. *Id.* The plaintiff sued the school and several employees for intentional infliction of emotional distress, among other things.

The school defendants moved to dismiss.  The court granted the motion, finding that the complaint failed to allege "extreme and outrageous conduct." *Id.* *11. (citations omitted).  The Court also found that "nothing in the Complaint indicates the Moving Defendants recklessly allowed or intended for any of this to happen to [the plaintiff]." *Id.*

Following *M.H.* the Court will grant La'Quetta's motion to dismiss Plaintiff's IIED claim.  As in *M.H.*, the Court finds that the Amended Complaint does not satisfy the "elevated threshold" for finding outrageous conduct.  *Id.* at *11.  Indeed, the factual allegations against La'Quetta are even thinner than those rejected in *M.H.*, where the plaintiff's mother complained to the school about her daughter's relationship with her abuser and the depression that followed.  *Id.* at *2.  As discussed above, the Amended Complaint does not allege facts suggesting that John Doe's mother contacted the school about John Doe's relationship with Frazier, or that La'Quetta otherwise knew of John Doe's abuse.  Because the Amended Complaint fails to allege "extreme and outrageous" conduct, the Court will grant La'Quetta's motion to dismiss Plaintiff's IIED claim.

### e.  Count IX: New Jersey Child Sexual Abuse Act ("CSAA"), N.J.S.A § 2A:61b-1 Against All Defendants

"Enacted in 1992, the CSAA, N.J.S.A. 2A:61B−1, established the first statutory cause of action for sexual abuse in New Jersey." *Hardwicke v. Am. Boychoir Sch.*, 188 N.J. 69, 84, 902 A.2d 900, 909 (2006).  The CSAA defines "sexual abuse" as "sexual contact or sexual penetration between a child under the age of 18 years old and an adult." N.J.S.A. 2A:61B−1(a)(1).  The CSAA establishes two categories of abusers: active abusers who inflict the abuse, and passive abusers who "knowingly permit[] or acquiesces in sexual abuse by any other person." *Id.*; *see also Hardwicke*, 902 A.2d at

910.  Originally, the CSAA defined passive abusers to include a "parent, foster parent, guardian or other person standing in loco parentis *within the household.*"  *See Hardwicke*, 902 A.2d at 910–11 (emphasis added).  But in 2019, the statute was amended to remove the phrase "within the household" (the "2019 Amendment").  2019 N.J. Sess. Law Serv. Ch. 120 (Senate 477).  The 2019 Amendment contains a December 1, 2019 effective date and does not indicate that the Legislature intended for the revisions to apply retroactively.

La'Quetta argues that the CSAA amendment is not retroactive and that she cannot be held liable under the CSAA as a passive abuser because she never stood *in loco parentis* as to John Doe "within the household."  [Dkt. 42-1 at 44–47].  The District Defendants also argue that the 2019 Amendment is not retroactive and that the School was not a "household" for the purposes of the CSAA.  [Dkt. 41-1 at 56–64].  Plaintiff responds that whether La'Quetta stood *in loco parentis* as to John Doe is a fact issue that cannot be resolved at this stage.  [Dkt. 44 at 18].  Plaintiff concedes that the 2019 Amendment is not retroactive but argues that the Court should treat the amendment as retroactive for policy reasons.  [Dkt. 44 at 18].  Plaintiff also argues that, because the Amended Complaint alleges that abuse occurred in La'Quetta's house, she can still be held liable for abuse "within the household" even if she the School was not a "household."  [*Id.*].

The Court begins with the argument by La'Quetta and the District Defendants that the 2019 Amendment is not retroactive.  New Jersey courts "have long followed a general rule of statutory construction that favors prospective application of statutes." *Gibbons v. Gibbons*, 432 A.2d 80, 83 (N.J. 1981) (collecting cases).  But courts should not apply this rule mechanically.  *See id.*  Instead, "[t]wo questions inhere in the

36

determination whether a court should apply a statute retroactively." *Twiss v. State, Dep't of Treasury, Off. of Fin. Mgmt.*, 591 A.2d 913, 915–16 (N.J. 1991). "The first question is whether the Legislature intended to give the statute retroactive application. If so, the second question is whether retroactive application is an unconstitutional interference with vested rights or will result in a manifest injustice." *Johnson v. Roselle EZ Quick LLC*, 143 A.3d 254, 264 (N.J. 2016). "Both questions must be satisfied for a statute to be applied retroactively." *Id.*

With respect to the first question, a court may find legislative intent for retroactive application "(1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant." *James v. New Jersey Mfrs. Ins. Co.*, 83 A.3d 70, 77 (N.J. 2014) (citations omitted). "The Legislature may demonstrate its intent to apply a statute retroactively either by stating so in the language of the statute or in the pertinent legislative history...." *Id.* at 77–78 (citation and quotations omitted).

The relevant legislative history demonstrates that the Legislature intended for the 2019 Amendment only to apply prospectively. The Senate Judiciary Committee's Statement for the 2019 Amendment states that the removal of "in the household" from the CSAA is "intended to only apply prospectively." S. Judiciary Comm. Statement for S.B. No. 477-L.2019, March 7, 2019 (available at https://www.njleg.state.nj.us/bill-search/2018/S477/bill-text?f=S0500&n=477_S1). The Court finds that this legislative history shows conclusively that the Legislature intended for the 2019 amendment to apply prospectively only. Because the 2019 Amendment's effective date is December 1, 2019, the alleged misconduct occurred before the 2019 effective date, the Court will

apply the pre-amendment version of the CSAA to Plaintiff's CSAA claim against
La'Quetta and the District Defendants.

Further, the Court rejects Plaintiff's argument that the Court should apply the
2019 Amendment retroactively on policy grounds.  Plaintiff essentially argues that the
refusal to apply the 2019 Amendment retroactively is arbitrary and unfair.  [Dkt. 44 at
18].  Plaintiff contends that, if all the abuse at issue here happened on November 30,
2019, the eve of the 2019 Amendment's effective date, it would violate "common sense
notions of justice" not to apply the 2019 Amendment retroactively.  [*Id.*].  Plaintiff
argues that, because some of the abuse occurred within one year of the effective date,
the same logic and concern for justice should apply.  [*Id.* at 19].  But where, as here, the
"Legislature has clearly spoken it is the privilege of that body to establish public policy …
the judiciary must not ignore the policy thus established on the ground that its views
differ with those plainly expressed by the Legislature." *Ayres v. Dauchert*, 328 A.2d 1, 6
(N.J. Super. Ct. App. Div. 1974).

Applying the pre-2019 Amendment standard, a "a passive abuser is (1) a person
(2) standing *in loco parentis* (3) within the household." *Hardwicke*, 902 A.2d 900 at
911 (citing N.J. Stat. Ann. § 2A:61B-1a(1).

The Court begins its analysis with La'Quetta's argument concerning element (2).
La'Quetta does not dispute that she is a "person" for the purposes of the CSAA, but
argues that she did not "stand *in loco parentis*."

"In loco parentis literally translated means 'in the place of a parent.'" *Hardwicke*,
902 A.2d at 913 (quoting *In loco parentis*, Black's Law Dictionary 803 (8th ed. 2004)).
As such, "the status of *in loco parentis* is reserved for individuals who function as a
parent." *Dale v. Boy Scouts of Am.*, 734 A.2d 1196, 1218 (1999), *rev'd and remanded on*

*other grounds*, 530 U.S. 640 (2000).  "Characteristics of that relationship include the responsibility to maintain, rear and educate the child, as well as the duties of supervision, care and rehabilitation."  *Id.* (citations and quotations omitted).

The Court agrees with La'Quetta that the Amended Complaint does not allege that La'Quetta stood *in loco parentis* as to John Doe at her home, but plausibly alleges an *in loco parentis* relationship as to La'Quetta's position as principal of the School. The Amended Complaint does not allege any facts about La'Quetta's interactions with John Doe or Plaintiff that suggest an *in loco parentis* relationship in La'Quetta's home. Rather, the Amended Complaint alleges that, outside of school, Plaintiff communicated with Frazier and entrusted John Doe's care to Frazier, and that Frazier assumed responsibility for John Doe's care.  The Amended Complaint does not plead any facts suggesting that La'Quettta interacted with John Doe in her home, let alone that she assumed "duties of supervision [and] care" for John Doe.  *Dale*, 734 A.2d at 1218. Likewise, the Amended Complaint does not allege that Plaintiff communicated with La'Quetta before permitting John Doe to go to La'Quetta's house.  The mere fact that John Doe was present in La'Quetta's house—even if La'Quetta knew of his presence— does not permit a plausible inference that Plaintiff "functioned as a parent" for John Doe.  *Dale*, 734 A.2d at 1218.

However, the Amended Complaint plausibly alleges that, as the principal of the School, La'Quetta had an *in loco parentis* relationship with John Doe.  The Supreme Court of New Jersey has found that

> [t]he law imposes a duty on children to attend school and on
> parents to relinquish their supervisory role over their
> children to teachers and administrators during school hours.
> While their children are educated during the day, parents

> transfer to school officials the power to act as the guardians
> of those young wards.

*Frugis v. Bracigliano*, 827 A.2d 1040, 1050 (N.J. 2003).  Thus, "for many purposes 'school authorities ac[t] in loco parentis.'" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655 (1995) (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986)). Because the Amended Complaint alleges that La'Quetta was an administrator at the School, the Amended Complaint pleads that La'Quetta stood *in loco parentis* with respect to John Doe at the School.

The Court next considers whether the District Defendants and La'Quetta were members of John Doe's "household" for the purposes of the CSAA and concludes that they were not.  "[A] determination as to a party's status as a 'household member' must be based upon the qualities and characteristics of the particular relationship and not upon a mechanistic formula in a definition." *Hardwicke*, 902 A.2d at 915 (quoting *Storch v. Sauerhoff*, 757 A.2d 836, 841 (N.J. Super. Ct. Ch. Div. 2000)).  "'[W]ithin the household' includes some aspect of 'residential' custody." *Y.G. v. Bd. of Educ. for Twp. of Teaneck*, No. A-5146-09T2, 2011 WL 1466277, at *3 (N.J. Super. Ct. App. Div. Apr. 19, 2011).

"New Jersey courts ... have declined to hold a day school 'within the household' for purposes of the CSAA." *Bryson v. Diocese of Camden, N.J.*, 909 F. Supp. 2d 364, 370–71 (D.N.J. 2012) (citing cases); *see also J.P. v. Smith*, 134 A.3d 977, 988 (N.J. Super Ct. App. Div. 2016) (concluding that a high school was not a "household" even though the plaintiff attended school-sponsored overnight trips).  For example, in a non-precedential decision in *Y.G. v. Board of Education for Township of Teaneck*, the Superior Court of New Jersey concluded that a middle school and high school were not

households because they did not "include [the] aspect of 'residential' custody" implicit in the term "household. 2011 WL 1466277, at *3. The *Y.G.* court distinguished the schools at issue there from a boarding school which "provide[d] ... amenities normally associated with a home environment for its students who lived there full time" in addition to playing the role of "parental substitute." *Id.*

This conclusion that day schools generally are not "households" for the purposes of the CSAA

> comports with a reasonable reading of the text of the statute. The CSAA was enacted to broaden the class of persons who could be potentially liable [for sexual abuse], but the insertion of "within the household" must be read as a limiting factor on passive liability. The legislature could have omitted the phrase and extended potential liability to all persons who stood in loco parentis of the victim. The legislature chose not to do so. The legislature chose also to insert the definite article, "the household," which generally restricts the phrase's meaning to the household which cares for plaintiff, rather than, for instance, an institution or organization of which plaintiff is a member.

*Bryson v. Diocese of Camden*, N.J., 909 F. Supp. 2d 364, 370 (D.N.J. 2012) (citations and quotations omitted).

Applying this law, the Court finds that Plaintiff has failed to allege facts that, if accepted as true, would permit a finding that La'Quetta and the District Defendants were "in the household" under the CSAA. The Amended Complaint includes few details about the School other than it was the location where Frazier met John Doe and where some abuse occurred. These allegations do not suggest that John Doe's relationship with the School "include[d] some aspect of 'residential' custody." *Y.G.*, 2011 WL 1466277, at *3. Nor do these allegations suggest that the School "provided services and amenities normally associated with ... a home" rather than a school. *Bryson*, 909 F.

41

Supp. 2d at 370.  So, while the Amended Complaint alleges that John Doe was a "member" of the school, it fails to allege facts suggesting that the school was a "household."  *Bryson*, F. Supp. 2d at 370.  Moreover, the Amended Complaint does not include a single allegation about La'Quetta's or District Defendants' conduct at the School to suggest that they had a custodial or otherwise "intimate relationship" with John Doe that might support an inference they were "within John Doe's household."  *Id.* at 369.

In sum, the Amended Complaint does not plead facts to suggest that La'Quetta stood *in loco parentis* as to John Doe in her house.  The Amended Complaint also fails to allege that La'Quetta—as principal of the School—or the District Defendants were "in John Doe's household."  The Court will therefore grant the motions to dismiss Plaintiff's CSAA claim against La'Quetta and the District Defendants.

## V.   Conclusion

For the reasons discussed above, the Court will grant the District Defendants' motion to dismiss the claims against Spaventa and Caldwell alleged in Counts II, III, V, VI, and VIII, and IX; and Counts I–III, V–IX as alleged against the Board.  The Court will also grant La'Quetta's motion to dismiss Count II and Count III as to official-capacity claims and Counts VIII and IX.  These claims are dismissed without prejudice, and the Court will allow Plaintiff thirty (30) days to file an amended complaint.

An appropriate order will follow.

Dated: February 2, 2023

　　　　　　　　　　　　　　　　 /s/ Joseph H. Rodriguez
　　　　　　　　　　　　　　　　Hon. Joseph H. Rodriguez, USDJ