**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JANE DOE, on behalf of JOHN DOE, her minor child, | |
| Plaintiff, | |
| v. | Civil Action No.:1:21-CV-11189 |
| MARTY SMALL, SR., in his official capacity as Mayor of Atlantic City, New Jersey, and individually, | |
| LA'QUETTA SMALL-FRAZIER, in her official capacity as Former Principal of Pennsylvania Avenue School, and individually, | **SECOND AMENDED COMPLAINT AND JURY DEMAND** |
| KAYAN AHMED FRAZIER, an individual, | |
| Defendants. | |

Plaintiff Jane Doe, on behalf of her minor child, John Doe, by and through their attorneys,

Lento Law Group, P.C., bring this action for damages and other legal and equitable relief against

Defendants Marty Small, Sr., La'Quetta Small-Frazier, Barry Caldwell, Paul A. Spaventa, Atlantic

City Board of Education, and Kayan Ahmed Frazier ("Defendants"), alleging as follows:

## I.  LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Jane Doe, on behalf of John Doe, her minor child
(Address withheld to maintain anonymity) - Note: "Jane Doe" and "John Doe" have been substituted for
the Plaintiff's name and the name of Plaintiff's minor child, respectively, to protect their anonymity.

Marty Small, Sr.
City of Atlantic City, New Jersey
Office of the Mayor
1301 Bacharach Boulevard
Atlantic City, New Jersey 08401

La'Quetta Small-Frazier
116 N. Presbyterian Avenue
Atlantic City, New Jersey 08401

Kayan Ahmed Frazier
Inmate Registration No.: 72688-050
Federal Detention Center – Philadelphia
700 Arch Street
Philadelphia, Pennsylvania 19106

## JURISDICTION AND VENUE

1.      Plaintiff brings this action pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* (collectively, "Title IX"), as more fully set forth herein.

2.      This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so related to the Title IX claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

4.      This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as all Defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## PARTIES

6.      At all times relevant hereto, Plaintiff Jane Doe, is an adult resident citizen of the County of Atlantic, State of New Jersey. She brings this action on behalf of her minor son, John Doe.

7.      At all times relevant hereto, Defendant Marty Small, Sr. ("Mayor Small"), is an adult resident citizen of the County of Atlantic, State of New Jersey, and is the current Mayor of Atlantic City, New Jersey.

8.      At all times relevant hereto, Defendant La'Quetta Small-Frazier ("Small-Frazier"), is an adult resident citizen of the County of Atlantic, State of New Jersey, and is the wife of Mayor Small. Small-Frazier is currently the Principal of Atlantic City High School, but served as Principal of the Pennsylvania Avenue School at the time that many of the events complained of herein occurred.

9.      At all times relevant hereto, Defendant Barry Caldwell, is an adult resident citizen of the County of Atlantic, State of New Jersey, and is the current Superintendent of the Atlantic City School District, having assumed the role in 2017.

10.     At all times relevant hereto, Defendant Paul A. Spaventa, is believed to have been an adult resident citizen of the Counties of Gloucester and Camden, State of New Jersey, and is the former Interim Superintendent of the Atlantic City School District. He is believed to have held that position from 2015 to 2017 – the relevant time that some of the events or occurrences complained of herein occurred. Upon information and belief, he presently resides in the County of Milton, State of Delaware.

11.     At all times relevant hereto, Defendant Atlantic City Board of Education, is, per N.J.S.A. 18A:11-1 *et seq.*, a public entity operating under the New Jersey Department of Education, tasked with performing all acts and doing all things, consistent with law and the rules of the State Board of Education, necessary for the lawful and proper conduct, equipment, and maintenance of the public schools of the Atlantic City School District.

12.     Defendants Small-Frazier, Caldwell, Spaventa, and the Atlantic City Board of Education are hereinafter collectively referred to as the "Atlantic City School District" Defendants.

13.     At all times relevant hereto, Defendant Kayan Ahmed Frazier ("Frazier"), is an adult individual and former resident citizen of the County of Atlantic, State of New Jersey, but who is presently incarcerated (Inmate Registration No.: 72688-050) at the Federal Detention Center located at 700 Arch Street in the City of Philadelphia, State of Pennsylvania, on criminal charges arising out of the same events and occurrences complained of herein. At the time that many of the events and occurrences complained of herein took place, Frazier was an agent and/or employee of

Defendant Pennsylvania Avenue School, acting or failing to act, within the scope, course, and authority of his employment and his employer.

## APPLICABLE LAW AND POLICY

14.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states in relevant part that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[…]

15.    Title IX is implemented through the Code of Federal Regulations. *See* 34 C.F.R. Part 106.

16.    Specifically, 34 C.F.R. § 106.2(g) defines "Federal financial assistance" as:

> […] any of the following, when authorized or extended under a law administered by the Department:
>
> (1) A grant or loan of Federal financial assistance, including funds made available for:
>
>> (i)  The acquisition, construction, renovation, restoration, or repair of a building or facility or any portion thereof; and
>>
>> (ii) Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.
>
> (2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.
>
> (3) Provision of the services of Federal personnel.
>
> (4) Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.

> (5) Any other contract, agreement, or arrangement which has as one
> of its purposes the provision of assistance to any education
> program or activity, except a contract of insurance or guaranty.

17.     The Supreme Court of the United States recognized that a recipient of Federal financial
assistance intentionally violates Title IX, and is subject to a private action for damages, where the
recipient has actual notice of, and is "deliberately indifferent" to, the school employee's sex-based
misconduct.

18.     The Fourteenth Amendment to the United States Constitution provides in pertinent part
that no State shall "deny to any person within its jurisdiction the equal protection of the laws."
U.S. Const. amend. XIV, § 1.

19.     N.J.S.A. 18A:36-20, New Jersey's analog to § 1681(a) of Title IX provides, "No pupil in
a public school in this State shall be discriminated against in admission to, or in obtaining any
advantages, privileges or courses of study of the school by reason of race, color, creed, sex or
national origin."

20.     N.J.S.A. 2A:14-2, the state statute establishing a two-year statute of limitations in most
injury actions in New Jersey, was expanded in May of 2019 through the adoption of P.L.2019,
c.120, which added section N.J.S.A. 2A:14-2a, regarding the statute of limitations for actions at
law resulting from certain sexual crimes against a minor.

21.     In relevant part, N.J.S.A. 2A:14-2a, the provisions of which having gone into effect on
December 1, 2019, expanded the statute of limitations for victims of child sexual abuse to pursue
claims against their abusers until thirty-seven (37) years after their eighteenth birthday; in other
words, until the victim turns fifty-five (55), or alternatively, within seven (7) years "from the date
of reasonable discovery of the injury and its causal relationship to the act, whichever date is later."

22.     Importantly, and directly applicable here, the adoption of P.L.2019, c.120 and a subsequent law, P.L.2019, c.239, also amended the New Jersey Tort Claims Act by adding N.J.S.A. 59:2-1.3, which provides in relevant part that:

    a.  Notwithstanding any provision of the "New Jersey Tort Claims Act," N.J.S.A. 59:1-1 et seq., to the contrary:

                            …

        (2)     Immunity from civil liability granted by that act to a public entity or public employee shall not apply to an action at law for damages as a result of a sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1) being committed against a minor under the age of 18, which was caused by the negligent hiring, supervision or retention of any public employee.

23.     The statute removes the requirement of providing a notice of claim to the public entity, as would otherwise be required under N.J.S.A. 59:8-8 of the New Jersey Tort Claims Act.

24.     The Atlantic City Board of Education has also adopted its own anti-harassment policy. (Attached as **Exhibit "A"**). Section G. of this policy, entitled, "Harassment, Intimidation, and Bullying Investigation," provides in part that, "The Board requires a thorough and complete investigation to be conducted for each report of violations and complaints which either identify harassment, intimidation, or bulling or describe behaves that indicate [same]." The section goes on to elaborate how such an investigation is to be conducted, and how its findings are to be provided to parents of students involved in such occurrences.

## GENERAL FACTUAL ALLEGATIONS

### Defendant Kayan Frazier Meets and Grooms John Doe

25.     Defendant Marty Small is the current Mayor of Atlantic City, having been re-elected to a one-year term following the City's November 2020 Special Election. Prior to his role as Mayor, Small was elected as 2nd Ward councilman to the city council of Atlantic City in 2003.

26.     Defendant La'Quetta Small-Frazier is the wife of Mayor Small, and is the current Principal of Atlantic City High School. Prior to her assuming that role in 2019, she was the Principal of the Pennsylvania Avenue School, from 2013 to 2018.

27.     During this time, while Small-Frazier was Principal of the Pennsylvania Avenue School, the Atlantic City Board of Education hired Small-Frazier's cousin, Kayan Frazier, as a substitute teacher within the school district.

28.     Upon information and belief, Small-Frazier's role as Principal of the Pennsylvania Avenue School and as wife of an influential Atlantic City politician played a part in the hiring of Mr. Frazier in March of 2015, as Frazier – then being twenty-two (22) years-old – lived with the Smalls at their residence at the time.

29.     Upon being hired, Frazier was assigned to work within numerous schools within the Atlantic City School District to serve as a substitute teacher, including, the Uptown Complex; Sovereign Avenue School; Dr. Martin Luther King, Jr. School; Texas Avenue School; Richmond Avenue School; Brighton Avenue School; and Pennsylvania Avenue School.

30.     Given the student populations of these schools, it is estimated that Mr. Frazier had access to approximately 4,000 students during his employ within the Atlantic City School District.

31.     It was through Frazier's employment as a substitute teacher at the Pennsylvania Avenue School that, in approximately early-2016, Frazier first came in contact with Plaintiff's minor son, John Doe, who was a student at the elementary school at the time.

32.     Upon information and belief, Mr. Frazier had a reputation amongst his students as being the "cool" teacher, making efforts to relate and connect with individual students on a personal level to establish a rapport and befriend his students.

33.     Frazier took a particular interest in John Doe.

34.     Frazier would often try to relate and connect with John Doe, spending a disproportionate amount of time with him as compared to other students, and would even go so far as to take John Doe out of class for walks in the hallway so that they could talk privately.

35.     No other employees or agents of the Atlantic City Board of Education questioned Frazier about this behavior, nor did they inquire if John Doe was alright or experiencing any kind of distress.

36.     On numerous occasions, Frazier would take John Doe to the privacy of the school library, ostensibly to chat; however, it was later revealed by John Doe through the subsequent criminal investigation that these trips to the library often resulted in Frazier sexually assaulting John Doe.

37.     Again, no other employees or agents of the Atlantic City Board of Education questioned Frazier about this behavior, nor did they inquire if John Doe was alright or experiencing any kind of distress.

38.     In Spring of 2016, Frazier witnessed Jane Doe drop John Doe off for school one morning. Later that day, Frazier approached John Doe and asked him to relay a message to his mother, Jane Doe, telling her that Frazier thought she was attractive and that he would like to take her to dinner.

39.     John Doe subsequently relayed Frazier's message to Jane Doe, and Jane Doe later confronted Frazier, informing him that she felt it was inappropriate of him to instruct her son to relay such a message. The conversation ultimately resulted in Frazier and Plaintiff exchanging cell phone numbers so that the two could communicate directly.

40.     Using this pretense, Frazier began to befriend Jane Doe so that he could be closer to John Doe.

41.     Thereafter, the apparent friendship between Frazier and John Doe continued, and Frazier and Plaintiff became more acquainted as well, as Frazier would sometimes call Plaintiff to talk about John Doe's performance in school and see about his general welfare.

42.     Eventually, Jane Doe came to have some degree of trust in Frazier, and so, in roughly May or June of 2016 when Frazier informed Jane Doe that he was taking the Smalls' son – John Doe's minor friend and Frazier's cousin – out to the movies and to Chuck E. Cheese, Jane Doe granted permission to allow John Doe to attend.

43.     By approximately June or July of 2016, Frazier increased his time with John Doe, both with and without other children being present.

44.     Frazier continued to ingratiate himself into John Doe's home and school life – maintaining a presence while John Doe was at school attempting to manage a normal social life for a child of that age.

45.     In or around Fall of 2016, Frazier indicated to Plaintiff that he was having a sleepover with his cousins who were roughly John Doe's age, and thus, he asked Jane Doe if John Doe could sleepover as well.

46.     Jane Doe gave permission for John Doe to attend.

47.    Ultimately, the sleepover concluded without apparent incident, and as a result, Jane Doe felt comfortable allowing her son to spend more time at Frazier's house, with sleepovers becoming more regular.

48.    Jane Doe began noticing changes in John Doe's personality, affect, and in his grades.

49.    Although Plaintiff had no reason to attribute her son's personality and attitude changes to Frazier at the time, it is now known that Frazier had been continually and repeatedly sexually abusing John Doe.

50.    After John Doe's estranged biological father passed away, Frazier – despite instruction from Jane Doe not to tell John Doe – revealed to John Doe news of his father's death in an effort to continue to maintain the emotional and physical control he had over John Doe.

51.    When Jane Doe discovered that Frazier had disclosed the news to John Doe, Jane Doe prohibited Frazier from seeing John Doe and ended contact with Frazier.

52.    During this falling-out period between Jane Doe and Frazier, Jane Doe became aware of rumors within her community that Frazier was having inappropriate and sexually abusive conduct with children, and that, as a result, he had been terminated from substitute teaching within the Atlantic City School District.

53.    At the time, Jane Doe did not give credence to these rumors as Frazier had never exhibited to Jane Doe any signs or indications of inappropriate conduct towards John Doe.

54.    It was not until approximately October of 2018, after having had little to no contact with Frazier for a period of roughly six months, that Jane Doe learned that Frazier was then working for the Division of Child Protection and Permanency (formerly, the Division of Youth and Family Services, i.e., DYFS).

55.     As a result of the nature of such a job – likely placing Frazier in contact with children – Jane Doe concluded that if the Division of Child Protection and Permanency felt comfortable hiring Frazier, then surely there was no validity to the rumors circulating within her community as to Frazier's sexually inappropriate conduct.

56.     Consequently, upon learning of Frazier's new position, Jane Doe once again felt comfortable allowing Frazier back into her and John Doe's life, especially since John Doe's father had passed away.

57.     Indeed, from the moment that Frazier met John Doe and targeted him on the premises of the Pennsylvania Avenue School, Frazier sexually abused John Doe.

58.     At various times, Frazier would often direct John Doe to dance with his underwear down and penis exposed while Frazier photographed it.

59.     Frazier would photograph John Doe through various acts of sexual abuse "on a regular basis" at Frazier's old residence in Atlantic City and his then-apartment in Somers Point.

60.     Indeed, Frazier's sexual abuse and exploitation of John Doe knew no bounds, occurring both on and off school grounds, and even in the home bathroom of Defendants Marty Small and La'Quetta Small-Frazier.

**<u>The Federal Criminal Investigation</u>**

61.     Defendant Kayan Frazier first came onto the Federal Bureau of Investigation's radar in February of 2019, when the Child Exploitation Task Force of the Atlantic City Resident Agency regional office (ACRA-CETF) received a tip from the National Center for Missing and Exploited Children (NCMEC)'s CyberTipline, Report #44206185.

62.     The tip was made by the social media blogging website Tumblr, which reported that an account with username "ley26ley26" had uploaded images depicting suspected child pornography from September 8, 2018 through November 18, 2018, in violation of Tumblr's content policy.

63.     After cross-referencing the IP address through which these images were uploaded against subpoenaed Comcast service provider records, law enforcement became aware that Frazier was the individual suspected of uploading the sexually explicit images.

64.     After obtaining a Communications Data Warrant on March 22, 2019, law enforcement officers surveilled Frazier's Google account and observed in excess of one-thousand (1,000) images and videos depicting child pornography.

65.     Pursuant to these findings, on April 15, 2019, law enforcement executed a search warrant and raided Frazier's apartment, finding both Frazier and John Doe present within the home, as well as a wealth of other sexually explicit materials depicting the sexual abuse and exploitation of children, including John Doe.

66.     Frazier was subsequently arrested following the search.

67.     As a result, Frazier was charged as follows: with one count of receipt of child pornography in violation of Title 18, United States Code, Section 2252A(a)(2)(A) and (b)(1); one count of distribution of child pornography in violation of Title 18, United States Code, Section 2252A(a)(2)(A) and (b)(1); and one count of production of child pornography in violation of Title 18, United States Code, Section 2251(a) and (e).

68.     John Doe indicated to FBI Special Agent Daniel A. Garrabrant during questioning following Frazier's arrest that Frazier threatened to harm John Doe's family members if he did not comply with Frazier's sexually abusive demands or if he told anyone about said abuse.

69.     Additionally, John Doe reported that Frazier would often show him pornographic photographs of young boys on his Samsung phone, and that on two separate occasions, Frazier, while posing as a female online, using a fictious catfishing persona named "Katalina", Frazier obtained photographs and/or video of the exposed penises of a minor cousin and a minor friend (identified in the Federal Criminal Complaint as "Minor Male 4" and "Minor Male 5", respectively).

<u>**Actual Knowledge of Frazier's Abusive Conduct by<br>the Atlantic City School District Defendants**</u>

70.     Defendant La'Quetta Small-Frazier became aware, approximately in early-2016 that her cousin, Kayan Frazier, was interacting with a student – John Doe – outside of school hours, and was taking him out and hosting him overnight, as her son initially joined Frazier and John Doe on several of their early outings, such as to the movies and Chuck E. Cheese.

71.     Upon information and belief, and despite the obvious appearance of impropriety, Small-Frazier – neither in her official capacity, nor in her individual capacity – questioned Frazier's behavior.

72.     As a direct result of Small-Frazier knowledge of Frazier's inappropriate and abusive conduct, she eventually prohibited her son from joining Frazier and John Doe on their weekend outings.

73.     It was not until February 24, 2017, however, that Small-Frazier filed a report with the Division of Child Protection and Permanency and detailed the unprofessional conduct of Frazier.

74.     Additionally, at that time, in February 2017, Small-Frazier also completed a Source4Teachers incident report form that cited Frazier for unprofessional conduct and recommended that he be removed from his substitute teaching position within the school district.

75.     Source4Teachers is an educational staffing management company that pairs schools with substitute teachers in their area and fills vacancies as needed.

76.     On March 15, 2017, Small-Frazier sent correspondence to Wesley Wallace, the District Manager of Source4Teachers, once again reiterating Frazier's inappropriate conduct.

77.     Small-Frazier's nearly year-long delay in reporting Frazier and indifference to his inappropriate and illegal conduct was a result of fear that her familial connection to Frazier, and the fact that Frazier was living in her home when some of the early abuse was alleged to have occurred, could have potentially adverse ramifications on both her career aspirations within the Atlantic City School District and her husband's political aspirations within Atlantic City more broadly.

78.     Despite Small-Frazier's reporting of Frazier's misconduct, Frazier was placed at five (5) schools in the Atlantic City School District over the course of thirteen (13) days in the month of March 2017, and thus, continued to have access to John Doe on school grounds and continually sexually abused and exploited John Doe.

79.     That same month, however, the Institutional Abuse Investigation Unit (IAIU) of the Department of Children and Families for the State of New Jersey began an investigation concerning Frazier's employment as a full-time substitute teacher within the Atlantic City School District, likely as a result of Small-Frazier's reporting.

80.     The investigation revealed:

>    a.    Frazier allowed a young minor male student to visit him at his residence and sleep in his bed. John Doe did not disclose any sexual contact when interviewed by IAIU at the time.

      b.  Frazier had communicated by text message with a different nine-year-old male student after school hours, which was a violation of the school's policy.

      c.  Frazier was interviewed during the IAIU's investigation and denied any inappropriate conduct, but admitted that he let John Doe sleep in his bed, claiming he was a mentor for John Doe and referred to him as his son.

      d.  Frazier also acknowledged that he had been texting the nine-year-old male.

81.    As a result of this investigation, on April 3, 2017, Frazier was terminated as a substitute teacher within the Atlantic City School District; however, no formal investigation was conducted by the Atlantic City Board of Education into Frazier's reported misconduct or the allegations of sexual harassment circulating within the community.

## The Effect of Frazier's Abuse on John Doe

82.    As a direct and proximate result of the years of repeated sexual abuse and exploitation John Doe suffered at Defendant Kayan Frazier's hand, John Doe has been caused to sustain severe and persistent emotional, psychological, and psychosocial imbalance.

83.    Frazier's ongoing sexual abuse of John Doe, both on and off school grounds, subjected John Doe to a continuously sexually hostile environment.

84.    The sexually hostile environment created by Frazier's exploitative and abusive conduct was so severe, so pervasive, and so objectively offensive, that it deprived John Doe of equal access to the educational opportunities and benefits provided by the school.

85.    This is most evident by the severe behavioral shift Frazier's continued abused caused in John Doe and the effect this behavioral shift caused on John Doe's performance at schools controlled and operated by the Atlantic City School District Defendants.

86.     In addition to a significant decline in academic performance, the oppositional, aggressive, and volatile temperament which arose in John Doe as a result of the abuse inflicted on him by Frazier, caused significant disruption with respect to John Doe's education at schools controlled and operated by the Atlantic City School District Defendants.

87.     Today, John Doe continues to suffer emotional and behavioral outbursts as a result of the trauma he sustained from Frazier's repeated abuse.

88.     In all, John Doe was caused, both by Frazier himself and by the deliberately indifferent Atlantic City School District Defendants to be subjected to repeated sexual abuse and exploitation on school grounds and a continuously sexually hostile environment while at school, and as a result, John Doe suffered severe and ongoing emotional and psychiatric harm, for which, treatment has

**COUNT II**
**§ 1983 VIOLATION**
**FAILURE TO INTERVENE, INVESTIGATE, & PROTECT FROM ATTACK**
**AS TO LA'QUETTA SMALL-FRAZIER**
**(42 U.S.C. § 1983)**

89.     Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

90.     Under the Fourteenth Amendment to the United States Constitution, John Doe had the right as a public school student to personal security, bodily integrity, and equal protection under the law.

91.     Defendant Defendant La'Quetta Small-Frazier repeatedly violated John Does right to personal security, bodily integrity, and equal protection under the law.

92.     Defendant La'Quetta Small-Frazier was a state actor, acting under the color of state law at the time of some or all of these violations by her.

93.     Defendant La'Quetta Small-Frazier had a duty to intervene, investigate, and protect John Doe from sexual attack, and she did not fulfill that duty.

94.    This duty arose, in part, from the Atlantic City School District's own anti-harassment policy (*See* Exhibit "A", Section G.).

95.    Defendant La'Quetta Small-Frazier had a reasonable opportunity to intervene and investigate, but did not do so at all, thus allowing harm to occur to Plaintiff.

96.    Despite her knowledge of same, whether actual or constructive, Defendant La'Quetta Small-Frazier failed to timely intervene and investigate, and thus, subjected John Doe to violations of his right to personal security, bodily integrity, and equal protection under the law by:

     a.   failing to promptly report known sexual harassment;

     b.   failing to promptly investigate known sexual harassment;

     c.   failing to promptly and appropriately discipline the perpetrator of this sexual harassment through timely termination, and;

     d.   manifesting deliberate indifference to the sexual harassment.

97.    Defendant La'Quetta Small-Frazier, through her actions or inactions, have advanced unconstitutional customs, practices, or policies by failing to timely intervene, investigate and protect John Doe from violations of his aforesaid rights by Defendant La'Quetta Small-Frazier, and Defendant Kayon Frazier.

98.    Defendant La'Quetta Small-Frazier is or was at the time of the events complained of herein, an administrator or policymaker for the purpose of promulgating and/or implementing these unconstitutional customs, practices, or policies within the Atlantic City School District, and were thus acting under color of state law.

99.    John Doe has suffered extreme emotional distress and psychological damage, and his character and standing in his community have suffered, as a direct and proximate result of the sexually abusive and exploitative conduct that was furthered by the failures of Defendant

La'Quetta Small-Frazier, manifesting deliberate indifference towards John Doe's rights under Title IX.

### COUNT III
### § 1983 VIOLATION
### FAILURE TO TRAIN AND SUPERVISE
### AS TO LA'QUETTA SMALL-FRAZIER
### (42 U.S.C. § 1983)

100.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

101.    Under the Fourteenth Amendment to the United States Constitution, John Doe had the right as a public school student to personal security, bodily integrity, and equal protection under the law.

102.    Defendant Kayan Frazier and Defendant La'Quetta Small-Frazier both repeatedly violated these rights of John Doe.

103.    Defendant La'Quetta Small-Frazier was a state actors acting under the color of state law at the time some of all of these violations by Defendant Kayan Frazier and Defendant La'Quetta Small-Frazier occurred.

104.    Defendant La'Quetta Small-Frazier adopted policies of inadequate training and supervision within the school district, and as a result of these inadequate policies, John Doe suffered harm.

105.    Specifically, Defendant La'Quetta Small-Frazier adopted policies with respect to training of school district administrators and staff that were inadequate insofar as their ability to train these school district employees to, among other things, detect signs of sexual harassment, abuse, or exploitation in students, and to report signs or allegations of same.

106.    In fact, the Atlantic City School District's own anti-harassment policy (Exhibit "A") is silent with respect to the training of school district employees to detect signs of sexual harassment,

abuse, or exploitation in students, and further, only requires verbal reporting for alleged violations that were actually witnessed or upon which they "received reliable information." (*See* Exhibit "A", Section E.)

107.     Whether allegations of sexual harassment, abuse, or exploitation are based on "reliable information" requires investigation of said allegations, but such an investigation cannot occur but-for reporting of said allegations which itself is only required contingent upon the initial determination by the would-be reporter that the allegations are reliable.

108.     This policy is paradoxical, untenable, and ultimately leaves an undue amount of discretion in school district employees with respect to the reporting of potential violations.

109.     Further, the Defendant La'Quetta Small-Frazier adopted policies with respect to supervision of school district administrators and staff that were inadequate insofar as the supervision of these employees by their superiors, such that sexually harassing, abusive, or exploitative conduct by school district employees could not occur, and such that, in the event of any such occurrence, these acts were timely detected and reported.

110.     The Atlantic City School District's anti-harassment policy is silent with respect to the supervision of school district employees by their superiors so as to ensure there is no sexually harassing, abusive, or exploitative conduct perpetrated upon students by school district employees, or to ensure compliance with reporting requirements in the event that such conduct does occur.

111.     Rather, the Atlantic City School District's anti-harassment policy takes a reactive, rather than proactive, approach to such employee misconduct.

112.     Thus, the failures of the Defendant La'Quetta Small-Frazier, both in practice and as reflected in the district's lax policies, to adequately train and supervise school district employees amounted to deliberate indifference to the fact that inaction would, and proximately did, result in

the violation of John Doe's rights by Defendant Kayan Frazier, and by Defendant La'Quetta Small-Frazier.

113.    Plaintiff and their counsel hereby allege that the subject school that Plaintiff attended during the timeline of his abuse "provided services and amenities normally associated with a home, rather than a school." *Bryson, 909 F. Supp. 2d at 370.*

114.    Defendant La'Quetta Small-Frazier's conduct at the school, was specific enough to suggest that they had a custodial and/or intimate relationship with John Doe that would support an inference that they were "within John Doe's household." *Id. At 369.*

115.    Defendant La'Quetta Small-Frazier understood her role, and the facts previously pleaded strongly suggest that Defendant La'Quetta Small-Frazier stood in *loco parentis* as to John Doe in her house.

116.    Therefore, as principal of the subject School, Defendant La'Quetta Small-Frazier was "in John Doe's household," and therefore owed him a duty to protect him from the exact type of harm he suffered from.

**COUNT IV**
**"MASHA'S LAW" VIOLATIONS**
**AS TO DEFENDANT KAYAN FRAZIER**
**(18 U.S.C. § 2255)**

117.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

118.    "Masha's Law" (18 U.S.C. 2255), provides in relevant part that:

> Any person who, while a minor, was a victim of a violation of section… 2251… [or] 2252A… and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustained or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and

21

other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

119.   Defendant Kayan Frazier was criminally charged with violations of 18 U.S.C. 2251, specifically, subsections (a) and (e); and 18 U.S.C. 2252A, specifically, subsections (a)(2)(A) and (b)(1).

120.   John Doe was a victim of Defendant Kayan Frazier's violations of these federal statutes.

121.   John Doe was a minor when these violations occurred.

122.   As a result of Defendant Kayan Frazier's violations of these federal statutes, John Doe has suffered personal injury.

### COUNT V
### NEGLIGENCE
### AS TO ALL DEFENDANTS

123.   Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

124.   All Defendants named herein owed a duty of care to John Doe.

125.   Specifically:

    a.   Defendant La'Quetta Small-Frazier owed John Doe a duty of care as Principal of the Pennsylvania Avenue School, where John Doe was then a student;

    b.   Defendant Kayan Frazier owed John Doe a duty of care as a substitute teacher within the Pennsylvania Avenue School, where John Doe was then a student;

    c.   Defendant Marty Small, Sr. and Defendant La'Quetta Small-Frazier (in separate act of negligence) owed John Doe a duty of care based upon premises liability to warn John Doe, then a guest in their home, of the known dangerous condition

presented by the presence of Kayan Frazier within the home. This duty was heightened by virtue of John Doe being a minor.

126.   All Defendants have breached their respective duty of care to Plaintiff's minor child in that they all failed to take ordinary reasonable care in the execution of their respective professional or personal responsibilities imposed by law and as complained of herein.

127.   Specifically, but-for the failure of the above-named Defendants to promptly and effectively respond to the instances of known sexual harassment and abuse perpetrated by Defendant Kayan Frazier, continued sexual harassment and abuse perpetrated by Defendant Frazier upon John Doe on school grounds would not have occurred.

128.   Further, but-for the failure of Defendant Kayan Frazier himself to comport his behavior in a professional manner commensurate with his position as a public school substitute teacher, and to refrain from inflicting sexual harassment and abuse upon a student, the harm which befell John Doe both on and off school grounds would not have occurred.

129.   Finally, but-for the failure of Defendants Marty Small, Sr. and La'Quetta Small-Frazier to warn Jane Doe or John Doe about Kayan Frazier's known sexual proclivity towards children, or to take reasonable steps to safeguard minor social guests within their home from Frazier, the sexual assault which transpired in the bathroom of the Small home would not have occurred.

130.   It is reasonably foreseeable that John Doe and similarly situated students within the Atlantic City School District, and thus, under the care, supervision, and charge of Defendant Kayan Frazier, could have been harmed in the same or similar manner in which John Doe was harmed when a school district and its constituent administrators and school staff fail to take appropriate and timely action in addressing known teacher-on-student sexual harassment and abuse.

131.    It is also reasonably foreseeable that a minor child social guest within a homeowner's home, such as John Doe within the Small home, could be harmed when said child or their parent is not warned about the presence within the home of an individual with a sexual proclivity towards children, or if adequate safeguards are not put in place to keep said individual away from children within the home.

132.    Therefore, the respective failures of all Defendants were both the actual and proximate cause of the damages caused to John Doe.

**COUNT VI**
**GROSS NEGLIGENCE, RECKLESSNESS**
**AS TO ALL DEFENDANTS**

133.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

134.    All Defendants, as plead in the previous Count (Count V), had a duty of care towards John Doe to take reasonable steps to prevent Defendant Kayan Frazier from using the authority, access, and instrumentalities afforded him by his position within the Atlantic City School District, to target, groom, and sexually abuse children, including John Doe.

135.    All Defendants acted in a negligent, careless, or reckless manner, and/or in a grossly negligent manner with gross and callous indifference to the consequences, and thus breached their aforestated duties of care.

136.    John Doe was an individual of whom all Defendants knew or should have known of the probability of harm which was foreseeably occasioned by the reckless indifference of the Defendants to the consequences of their actions and/or omissions.

137.    As a direct and proximate result thereof, John Doe was caused to suffer and continues to suffer significant and permanent damages.

**COUNT VII**
**ASSAULT AND BATTERY**
**AS TO DEFENDANT KAYAN FRAZIER**

138.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

139.    As complained of herein, Defendant Kayan Frazier, on a multitude of occasions, attempted to, and in fact, did, cause harmful, offensive, and sexually violent physical contact with John Doe.

140.    As a direct and proximate result of the willful, wanton, malicious, and intentional actions of Defendant Kayan Frazier, John Doe has suffered severe physical abuse and extreme emotional distress and psychological damage as previously complained of herein, which may prove to be permanent.

**COUNT VIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AS TO DEFENDANT KAYAN FRAZIER**

141.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

142.    Defendant Kayan Frazier, when engaging in the repeated acts of sexual assault and exploitation of John Doe as complained of herein, acted intentionally or with reckless disregard, so as to cause John Doe significant and permanent damages.

143.    Defendant Frazier's repeated acts of sexual assault and exploitation of John Doe as complained of herein constitutes behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

144.     Further, the Defendants acted intentionally or with reckless disregard in failing to timely report, intervene, investigate, and/or address the outrageous sexual misconduct of Defendant Frazier.

145.     Given the knowledge of Frazier's conduct possessed by the Defendants and the power and authority afforded them in their respective positions within the school district to stop same, their failure to act so as to safeguard John Doe from further sexual abuse constitutes behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

146.     The actions, therefore, of Defendant Frazier actually and proximately caused damages to John Doe so severe that no reasonable person, let alone a minor child, could be expected to endure it, and thus, has resulted in significant and permanent harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe, on behalf of John Doe, her minor child, prays for relief as to all counts as follows:

1) For judgement against the Defendants jointly, severally, and alternatively, for general, compensatory, and punitive damages, with interest;

2) Reasonable attorney's fees and costs of suit pursuant to 18 U.S.C. 2255; and

3) For such other further relief as the Court may deem equitable and just.

Additionally, as to Count IV, Plaintiff prays for judgement against Defendant Kayan Frazier in the form of the liquidated damages statutorily imposed under 18 U.S.C. 2255 in the amount of $150,000 per violation.

**LENTO LAW GROUP, P.C.**

_Joseph D. Lento_

**JOSEPH D. LENTO, ESQUIRE**
**NJ State Bar No. 013252008**
LENTO LAW GROUP, P.C.
jdlento@lentolawgroup.com
DATED:  March 3, 2023

27