**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JANE DOE, on behalf of JOHN DOE, her minor child,<br><br>        Plaintiff,<br><br>   v.<br><br>MARTY SMALL, SR., in his official capacity as Mayor of Atlantic City, New Jersey, and individually,<br><br>LA'QUETTA SMALL, in her official capacity as Former Principal of Pennsylvania Avenue School, and individually,<br><br>KAYAN AHMED FRAZIER, an individual,<br><br><br>MISSION ONE EDUCATIONAL STAFFING SERVICES, LLC, Aka, dba, t/a, Education Staffing Solutions, Aka, dba, t/a, Source4Teachers, Aka, dba, t/a, ESS, A Delaware Corporation<br>9202 S Northshore Drive<br>Suite 200<br>Knoxville, TN 37922<br><br><br><br>        Defendants. | Civil Action No.:1:21-CV-11189<br><br><br>**THIRD AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff Jane Doe, on behalf of her minor child, John Doe, by and through their attorneys, Lento Law Group, P.C., bring this action for damages and other legal and equitable relief against Defendants Marty Small, Sr., La'Quetta Small, Kayan Ahmed Frazier, and Mission One Educational Staffing Services LLC, Aka, dba, t/a, Education Staffing Solutions, Aka, dba, t/a, Source4Teachers, Aka, dba, t/a, ESS  ("Defendants"), alleging as follows:

## I.    LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Jane Doe, on behalf of John Doe, her minor child
(Address withheld to maintain anonymity) - Note: "Jane Doe" and "John Doe" have been substituted for
the Plaintiff's name and the name of Plaintiff's minor child, respectively, to protect their anonymity.

Marty Small, Sr.
City of Atlantic City, New Jersey
Office of the Mayor
1301 Bacharach Boulevard
Atlantic City, New Jersey 08401

La'Quetta Small
116 N. Presbyterian Avenue
Atlantic City, New Jersey 08401

Kayan Ahmed Frazier
Inmate Registration No.: 72688-050
Federal Detention Center – Philadelphia
700 Arch Street
Philadelphia, Pennsylvania 19106

Mission One Educational Staffing Services, LLC,
Aka, dba, t/a, Education Staffing Solutions,
Aka, dba, t/a, Sources4Teachers
Aka, dba, t/a, ESS, A Delaware Corporation
9202 S Northshore Drive
Suite 200
Knoxville, TN 37922

## JURISDICTION AND VENUE

1.      Plaintiff brings this action pursuant to Title IX of the Education Amendments of 1972, 20

U.S.C. § 1681 *et seq.* (collectively, "Title IX"), as more fully set forth herein.

2.      This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§

1331 and 1343.

3.      This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant

to 28 U.S.C. § 1367(a), as such claims are so related to the Title IX claims that they form part of

the same case or controversy and arise out of a common nucleus of operative fact.

4.      This is also an action to redress the deprivation of Plaintiff's constitutional rights under the

Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5.     Furthermore, as to defendant Mission One Educational Staffing Services, LLC, Aka, dba, t/a, Education Staffing Solutions, Aka, dba, t/a, Sources4Teachers, Aka, dba, t/a, ESS, (hereinafter ESS) is also founded upon diversity of citizenship, 28 U.S.C. § 1332.  Plaintiff is a citizen of the State of New Jersey.  ESS is a citizen of the state of Delaware where it is incorporated and Tennessee where it has its national headquarters.  The amount of the controversy, exclusive of costs and fees, significantly exceeds $75,000.00.

6.     Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as all Defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

**PARTIES**

7.     At all times relevant hereto, Plaintiff Jane Doe, is an adult resident citizen of the County of Atlantic, State of New Jersey. She brings this action on behalf of her minor son, John Doe.  The plaintiff and her son use fictitious names to protect their privacy and to avoid further public ridicule, humiliation, community contempt, and other emotional suffering and adverse consequences which would result from public disclosure of their actual names.

8.     At all times relevant hereto, Defendant Marty Small, Sr. ("Mayor Small"), is an adult resident citizen of the County of Atlantic, State of New Jersey, and is the current Mayor of Atlantic City, New Jersey.

9.     At all times relevant hereto, Defendant La'Quetta Small, is an adult resident citizen of the County of Atlantic, State of New Jersey, and is the wife of Mayor Small. Small is currently the Principal of Atlantic City High School, but served as Principal of the Pennsylvania Avenue School at the time that many of the events complained of herein occurred.

10.     At all times relevant hereto, Defendant Kayan Ahmed Frazier ("Frazier"), is an adult individual and former resident citizen of the County of Atlantic, State of New Jersey, but who is

presently incarcerated (Inmate Registration No.: 72688-050) at the Federal Detention Center located at 700 Arch Street in the City of Philadelphia, State of Pennsylvania, on criminal charges arising out of the same events and occurrences complained of herein. At the time that many of the events and occurrences complained of herein took place, Frazier was an agent and/or employee of Defendant Pennsylvania Avenue School, acting or failing to act, within the scope, course, and authority of his employment and his employer.

11.     At all times material hereto, based on information and belief, defendant ESS was a corporation existing by virtue of a state other than New Jersey, with its national headquarters located in Tennessee.  ESS is and was engaged in the business of hiring, vetting, performing background checks on, testing, and training individuals who were provided as substitute teachers to school districts throughout the nation.

12.     At all times material hereto, based on information and belief, defendant ESS hired, vetted, performed a background check on, tested, and trained Frazier and then provided him as a substitute teacher to the Atlantic City Board of Education and the Pennsylvania Avenue School where the events involved in this lawsuit began.

13.     At all times material hereto, ESS knew and/or should have known that Frazier would come into close proximity with minor children whom ESS had a responsibility to protect from physical and emotional harm.

## APPLICABLE LAW AND POLICY

14.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states in relevant part that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[…]

15.    Title IX is implemented through the Code of Federal Regulations. *See* 34 C.F.R. Part 106.

16.    Specifically, 34 C.F.R. § 106.2(g) defines "Federal financial assistance" as:

> […] any of the following, when authorized or extended under a law administered by the Department:
>
> (1) A grant or loan of Federal financial assistance, including funds made available for:
>
>> (i) The acquisition, construction, renovation, restoration, or repair of a building or facility or any portion thereof; and
>>
>> (ii) Scholarships, loans, grants, wages, or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.
>
> (2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.
>
> (3) Provision of the services of Federal personnel.
>
> (4) Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.
>
> (5) Any other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

17.    The Supreme Court of the United States recognized that a recipient of Federal financial assistance intentionally violates Title IX, and is subject to a private action for damages, where the recipient has actual notice of, and is "deliberately indifferent" to, the school employee's sex-based misconduct.

18.     The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

19.     N.J.S.A. 18A:36-20, New Jersey's analog to § 1681(a) of Title IX provides, "No pupil in a public school in this State shall be discriminated against in admission to, or in obtaining any advantages, privileges or courses of study of the school by reason of race, color, creed, sex or national origin."

20.     N.J.S.A. 2A:14-2, the state statute establishing a two-year statute of limitations in most injury actions in New Jersey, was expanded in May of 2019 through the adoption of P.L.2019, c.120, which added section N.J.S.A. 2A:14-2a, regarding the statute of limitations for actions at law resulting from certain sexual crimes against a minor.

21.     In relevant part, N.J.S.A. 2A:14-2a, the provisions of which having gone into effect on December 1, 2019, expanded the statute of limitations for victims of child sexual abuse to pursue claims against their abusers until thirty-seven (37) years after their eighteenth birthday; in other words, until the victim turns fifty-five (55), or alternatively, within seven (7) years "from the date of reasonable discovery of the injury and its causal relationship to the act, whichever date is later."

22.     Importantly, and directly applicable here, the adoption of P.L.2019, c.120 and a subsequent law, P.L.2019, c.239, also amended the New Jersey Tort Claims Act by adding N.J.S.A. 59:2-1.3, which provides in relevant part that:

> a.  Notwithstanding any provision of the "New Jersey Tort Claims Act," N.J.S.A. 59:1-1 et seq., to the contrary:
>
> …
>
> (2)     Immunity from civil liability granted by that act to a public entity or public employee shall not apply to an action at law for damages as a result of a sexual assault, any other

> crime of a sexual nature, a prohibited sexual act as defined
> in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse
> as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1)
> being committed against a minor under the age of 18, which
> was caused by the negligent hiring, supervision or retention
> of any public employee.

23.     The statute removes the requirement of providing a notice of claim to the public entity, as

would otherwise be required under N.J.S.A. 59:8-8 of the New Jersey Tort Claims Act.

24.     The Atlantic City Board of Education has also adopted its own anti-harassment policy.

(Attached as **Exhibit "A"**). Section G. of this policy, entitled, "Harassment, Intimidation, and

Bullying Investigation," provides in part that, "The Board requires a thorough and complete

investigation to be conducted for each report of violations and complaints which either identify

harassment, intimidation, or bulling or describe behaves that indicate [same]." The section goes

on to elaborate how such an investigation is to be conducted, and how its findings are to be

provided to parents of students involved in such occurrences.

25.     New Jersey recognizes the duty to protect school students from sexual assaults.  There is a

duty of a school district to "fulfill its most basic obligation—to protect the children in its care."

*Frugis v. Bracigliano*, 177 N.J. 250, 270, 827 A.2d 1040, 1051 (2003).

26.     New Jersey also recognizes causes of action for the negligent hiring negligent hiring,

supervision, or retention" of an employee resulting in the sexual abuse of a minor. *Desai v. W.

Windsor-Plainsboro Reg'l Sch. Dist. Bd. of Educ.*, No. A-1571-21, 2022 WL 17726626, at *3 (N.J.

Super. Ct. App. Div. Dec. 16, 2022).

27.     ESS was responsible for the hiring, supervision, retention, and other matters as it related to

the substitute teacher it provided to the Atlantic City School District, Frazier, and ESS knew that

it was acting on behalf of and in the place of the School District and that it would be responsible

for providing substitute teachers who would be in close and personal proximity to minor students whose physical and mental health was, in part, their responsibility.

## GENERAL FACTUAL ALLEGATIONS

### Defendant Kayan Frazier Meets and Grooms John Doe

28.     Defendant Marty Small is the current Mayor of Atlantic City, having been re-elected to a one-year term following the City's November 2020 Special Election. Prior to his role as Mayor, Small was elected as 2nd Ward councilman to the city council of Atlantic City in 2003.

29.     Defendant La'Quetta Small is the wife of Mayor Small, and is the current Principal of Atlantic City High School. Prior to her assuming that role in 2019, she was the Principal of the Pennsylvania Avenue School, from 2013 to 2018.

30.     Defendant ESS was a business entity responsible for hiring, vetting, performing background checks on, testing, and training individuals who were provided as substitute teachers to school districts throughout the nation.

31.     At all times material hereto, based on information and belief, defendant ESS hired, vetted, performed a background check on, tested, and trained Frazier and then provided him as a substitute teacher to the Atlantic City Board of Education and the Pennsylvania Avenue School where the events involved in this lawsuit began.

32.     ESS knew that it was acting on behalf of and in the place of the School District and that it would be responsible for providing substitute teachers who would be in close and personal proximity to minor students whose physical and mental health was, in part, their responsibility.

33.     During this time, while Small was Principal of the Pennsylvania Avenue School, the Atlantic City Board of Education hired Small's cousin, Kayan Frazier, as a substitute teacher

within the school district.  ESS was the hiring intermediary that acted as the agent of the School District and acted in the place of the School District.

34.     At all times material hereto, ESS and its agents were acting under color of state law.

35.     Upon information and belief, Small's role as Principal of the Pennsylvania Avenue School and as wife of an influential Atlantic City politician played a part in the hiring of Mr. Frazier in March of 2015, as Frazier – then being twenty-two (22) years-old – lived with the Smalls at their residence at the time.

36.     Upon being hired, Frazier was assigned to work within numerous schools within the Atlantic City School District to serve as a substitute teacher, including, the Uptown Complex; Sovereign Avenue School; Dr. Martin Luther King, Jr. School; Texas Avenue School; Richmond Avenue School; Brighton Avenue School; and Pennsylvania Avenue School.

37.     Given the student populations of these schools, it is estimated that Mr. Frazier had access to approximately 4,000 students during his employ within the Atlantic City School District.

38.     It was through Frazier's employment as a substitute teacher at the Pennsylvania Avenue School that, in approximately early-2016, Frazier first came in contact with Plaintiff's minor son, John Doe, who was a student at the elementary school at the time.

39.     Upon information and belief, Mr. Frazier had a reputation amongst his students as being the "cool" teacher, making efforts to relate and connect with individual students on a personal level to establish a rapport and befriend his students.

40.     Frazier took a particular interest in John Doe.

41.     Frazier would often try to relate and connect with John Doe, spending a disproportionate amount of time with him as compared to other students, and would even go so far as to take John Doe out of class for walks in the hallway so that they could talk privately.

42.     No other employees or agents of the Atlantic City Board of Education questioned Frazier about this behavior, nor did they inquire if John Doe was alright or experiencing any kind of distress.

43.     On numerous occasions, Frazier would take John Doe to the privacy of the school library, ostensibly to chat; however, it was later revealed by John Doe through the subsequent criminal investigation that these trips to the library often resulted in Frazier sexually assaulting John Doe.

44.     Again, no other employees or agents of the Atlantic City Board of Education questioned Frazier about this behavior, nor did they inquire if John Doe was alright or experiencing any kind of distress.

45.     In Spring of 2016, Frazier witnessed Jane Doe drop John Doe off for school one morning. Later that day, Frazier approached John Doe and asked him to relay a message to his mother, Jane Doe, telling her that Frazier thought she was attractive and that he would like to take her to dinner.

46.     John Doe subsequently relayed Frazier's message to Jane Doe, and Jane Doe later confronted Frazier, informing him that she felt it was inappropriate of him to instruct her son to relay such a message. The conversation ultimately resulted in Frazier and Plaintiff exchanging cell phone numbers so that the two could communicate directly.

47.     Using this pretense, Frazier began to befriend Jane Doe so that he could be closer to John Doe.

48.     Thereafter, the apparent friendship between Frazier and John Doe continued, and Frazier and Plaintiff became more acquainted as well, as Frazier would sometimes call Plaintiff to talk about John Doe's performance in school and see about his general welfare.

49.     Eventually, Jane Doe came to have some degree of trust in Frazier, and so, in roughly May or June of 2016 when Frazier informed Jane Doe that he was taking the Smalls' son – John Doe's

minor friend and Frazier's cousin – out to the movies and to Chuck E. Cheese, Jane Doe granted permission to allow John Doe to attend.

50.     By approximately June or July of 2016, Frazier increased his time with John Doe, both with and without other children being present.

51.     Frazier continued to ingratiate himself into John Doe's home and school life – maintaining a presence while John Doe was at school attempting to manage a normal social life for a child of that age.

52.     In or around Fall of 2016, Frazier indicated to Plaintiff that he was having a sleepover with his cousins who were roughly John Doe's age, and thus, he asked Jane Doe if John Doe could sleepover as well.

53.     Jane Doe gave permission for John Doe to attend.

54.     Ultimately, the sleepover concluded without apparent incident, and as a result, Jane Doe felt comfortable allowing her son to spend more time at Frazier's house, with sleepovers becoming more regular.

55.     Jane Doe began noticing changes in John Doe's personality, affect, and in his grades.

56.     Although Plaintiff had no reason to attribute her son's personality and attitude changes to Frazier at the time, it is now known that Frazier had been continually and repeatedly sexually abusing John Doe.

57.     After John Doe's estranged biological father passed away, Frazier – despite instruction from Jane Doe not to tell John Doe – revealed to John Doe news of his father's death in an effort to continue to maintain the emotional and physical control he had over John Doe.

58.     When Jane Doe discovered that Frazier had disclosed the news to John Doe, Jane Doe prohibited Frazier from seeing John Doe and ended contact with Frazier.

59.     During this falling-out period between Jane Doe and Frazier, Jane Doe became aware of rumors within her community that Frazier was having inappropriate and sexually abusive conduct with children, and that, as a result, he had been terminated from substitute teaching within the Atlantic City School District.

60.     At the time, Jane Doe did not give credence to these rumors as Frazier had never exhibited to Jane Doe any signs or indications of inappropriate conduct towards John Doe.

61.     It was not until approximately October of 2018, after having had little to no contact with Frazier for a period of roughly six months, that Jane Doe learned that Frazier was then working for the Division of Child Protection and Permanency (formerly, the Division of Youth and Family Services, i.e., DYFS).

62.     As a result of the nature of such a job – likely placing Frazier in contact with children – Jane Doe concluded that if the Division of Child Protection and Permanency felt comfortable hiring Frazier, then surely there was no validity to the rumors circulating within her community as to Frazier's sexually inappropriate conduct.

63.     Consequently, upon learning of Frazier's new position, Jane Doe once again felt comfortable allowing Frazier back into her and John Doe's life, especially since John Doe's father had passed away.

64.     Indeed, from the moment that Frazier met John Doe and targeted him on the premises of the Pennsylvania Avenue School, Frazier sexually abused John Doe.

65.     At various times, Frazier would often direct John Doe to dance with his underwear down and penis exposed while Frazier photographed it.

66.     Frazier would photograph John Doe through various acts of sexual abuse "on a regular basis" at Frazier's old residence in Atlantic City and his then-apartment in Somers Point.

67.     Indeed, Frazier's sexual abuse and exploitation of John Doe knew no bounds, occurring both on and off school grounds, and even in the home bathroom of Defendants Marty Small and La'Quetta Small.

**The Federal Criminal Investigation**

68.     Defendant Kayan Frazier first came onto the Federal Bureau of Investigation's radar in February of 2019, when the Child Exploitation Task Force of the Atlantic City Resident Agency regional office (ACRA-CETF) received a tip from the National Center for Missing and Exploited Children (NCMEC)'s CyberTipline, Report #44206185.

69.     The tip was made by the social media blogging website Tumblr, which reported that an account with username "ley26ley26" had uploaded images depicting suspected child pornography from September 8, 2018 through November 18, 2018, in violation of Tumblr's content policy.

70.     After cross-referencing the IP address through which these images were uploaded against subpoenaed Comcast service provider records, law enforcement became aware that Frazier was the individual suspected of uploading the sexually explicit images.

71.     After obtaining a Communications Data Warrant on March 22, 2019, law enforcement officers surveilled Frazier's Google account and observed in excess of one-thousand (1,000) images and videos depicting child pornography.

72.     Pursuant to these findings, on April 15, 2019, law enforcement executed a search warrant and raided Frazier's apartment, finding both Frazier and John Doe present within the home, as well as a wealth of other sexually explicit materials depicting the sexual abuse and exploitation of children, including John Doe.

73.     Frazier was subsequently arrested following the search.

74.     As a result, Frazier was charged as follows: with one count of receipt of child pornography in violation of Title 18, United States Code, Section 2252A(a)(2)(A) and (b)(1); one count of distribution of child pornography in violation of Title 18, United States Code, Section 2252A(a)(2)(A) and (b)(1); and one count of production of child pornography in violation of Title 18, United States Code, Section 2251(a) and (e).

75.     John Doe indicated to FBI Special Agent Daniel A. Garrabrant during questioning following Frazier's arrest that Frazier threatened to harm John Doe's family members if he did not comply with Frazier's sexually abusive demands or if he told anyone about said abuse.

76.     Additionally, John Doe reported that Frazier would often show him pornographic photographs of young boys on his Samsung phone, and that on two separate occasions, Frazier, while posing as a female online, using a fictious catfishing persona named "Katalina", Frazier obtained photographs and/or video of the exposed penises of a minor cousin and a minor friend (identified in the Federal Criminal Complaint as "Minor Male 4" and "Minor Male 5", respectively).

### Actual Knowledge of Frazier's Abusive Conduct by the Atlantic City School District Defendants

77.     Defendant La'Quetta Small became aware, approximately in early-2016 that her cousin, Kayan Frazier, was interacting with a student – John Doe – outside of school hours, and was taking him out and hosting him overnight, as her son initially joined Frazier and John Doe on several of their early outings, such as to the movies and Chuck E. Cheese.

78.     Upon information and belief, and despite the obvious appearance of impropriety, Small – neither in her official capacity, nor in her individual capacity – questioned Frazier's behavior.

79.     As a direct result of Small knowledge of Frazier's inappropriate and abusive conduct, she eventually prohibited her son from joining Frazier and John Doe on their weekend outings.

80.     It was not until February 24, 2017, however, that Small filed a report with the Division of Child Protection and Permanency and detailed the unprofessional conduct of Frazier.

81.     Additionally, at that time, in February 2017, Small also completed a Source4Teachers incident report form that cited Frazier for unprofessional conduct and recommended that he be removed from his substitute teaching position within the school district.

82.     Source4Teachers is an educational staffing management company that pairs schools with substitute teachers in their area and fills vacancies as needed.

83.     On March 15, 2017, Small sent correspondence to Wesley Wallace, the District Manager of Source4Teachers, once again reiterating Frazier's inappropriate conduct.

84.     Small's nearly year-long delay in reporting Frazier and indifference to his inappropriate and illegal conduct was a result of fear that her familial connection to Frazier, and the fact that Frazier was living in her home when some of the early abuse was alleged to have occurred, could have potentially adverse ramifications on both her career aspirations within the Atlantic City School District and her husband's political aspirations within Atlantic City more broadly.

85.     Despite Small's reporting of Frazier's misconduct, Frazier was placed at five (5) schools in the Atlantic City School District over the course of thirteen (13) days in the month of March 2017, and thus, continued to have access to John Doe on school grounds and continually sexually abused and exploited John Doe.

86.     That same month, however, the Institutional Abuse Investigation Unit (IAIU) of the Department of Children and Families for the State of New Jersey began an investigation concerning Frazier's employment as a full-time substitute teacher within the Atlantic City School District, likely as a result of Small's reporting.

87.     The investigation revealed:

a.  Frazier allowed a young minor male student to visit him at his residence and sleep in his bed. John Doe did not disclose any sexual contact when interviewed by IAIU at the time.

b.   Frazier had communicated by text message with a different nine-year-old male student after school hours, which was a violation of the school's policy.

c.  Frazier was interviewed during the IAIU's investigation and denied any inappropriate conduct, but admitted that he let John Doe sleep in his bed, claiming he was a mentor for John Doe and referred to him as his son.

d.  Frazier also acknowledged that he had been texting the nine-year-old male.

88.     As a result of this investigation, on April 3, 2017, Frazier was terminated as a substitute teacher within the Atlantic City School District; however, no formal investigation was conducted by the Atlantic City Board of Education into Frazier's reported misconduct or the allegations of sexual harassment circulating within the community.

### The Effect of Frazier's Abuse on John Doe

89.     As a direct and proximate result of the years of repeated sexual abuse and exploitation John Doe suffered at Defendant Kayan Frazier's hand, John Doe has been caused to sustain severe and persistent emotional, psychological, and psychosocial imbalance.

90.     Frazier's ongoing sexual abuse of John Doe, both on and off school grounds, subjected John Doe to a continuously sexually hostile environment.

91.     The sexually hostile environment created by Frazier's exploitative and abusive conduct was so severe, so pervasive, and so objectively offensive, that it deprived John Doe of equal access to the educational opportunities and benefits provided by the school.

92.     This is most evident by the severe behavioral shift Frazier's continued abused caused in John Doe and the effect this behavioral shift caused on John Doe's performance at schools controlled and operated by the Atlantic City School District Defendants.

93.     In addition to a significant decline in academic performance, the oppositional, aggressive, and volatile temperament which arose in John Doe as a result of the abuse inflicted on him by Frazier, caused significant disruption with respect to John Doe's education at schools controlled and operated by the Atlantic City School District Defendants.

94.     Today, John Doe continues to suffer emotional and behavioral outbursts as a result of the trauma he sustained from Frazier's repeated abuse.

95.     In all, John Doe was caused, both by Frazier himself and by the deliberately indifferent Atlantic City School District Defendants to be subjected to repeated sexual abuse and exploitation on school grounds and a continuously sexually hostile environment while at school, and as a result, John Doe suffered severe and ongoing emotional and psychiatric harm, for which, treatment has

**COUNT I**
**§ 1983 VIOLATION**
**FAILURE TO INTERVENE, INVESTIGATE, & PROTECT FROM ATTACK**
**AS TO LA'QUETTA SMALL AND ESS**
**(42 U.S.C. § 1983)**

96.     Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

97.     Under the Fourteenth Amendment to the United States Constitution, John Doe had the right as a public school student to personal security, bodily integrity, and equal protection under the law.

98.     Defendants La'Quetta Small and ESS repeatedly violated John Does right to personal security, bodily integrity, and equal protection under the law.

99.     Defendants La'Quetta Small and ESS were state actors, acting under the color of state law at the time of some or all of these violations by them.

100.    Defendant La'Quetta Small had a duty to intervene, investigate, and protect John Doe from sexual attack, and she did not fulfill that duty.

101.    This duty arose, in part, from the Atlantic City School District's own anti-harassment policy (*See* Exhibit "A", Section G.).

102.    Defendant La'Quetta Small had a reasonable opportunity to intervene and investigate, but did not do so at all, thus allowing harm to occur to Plaintiff.

103.    Despite her knowledge of same, whether actual or constructive, Defendant La'Quetta Small failed to timely intervene and investigate, and thus, subjected John Doe to violations of his right to personal security, bodily integrity, and equal protection under the law by:

    a.  failing to promptly report known sexual harassment;

    b.  failing to promptly investigate known sexual harassment;

    c.  failing to promptly and appropriately discipline the perpetrator of this sexual harassment through timely termination, and;

    d.  manifesting deliberate indifference to the sexual harassment.

104.    Defendant La'Quetta Small, through her actions or inactions, have advanced unconstitutional customs, practices, or policies by failing to timely intervene, investigate and protect John Doe from violations of his aforesaid rights by Defendant La'Quetta Small, and Defendant Kayon Frazier.

105.    Defendant La'Quetta Small is or was at the time of the events complained of herein, an administrator or policymaker for the purpose of promulgating and/or implementing these

18

unconstitutional customs, practices, or policies within the Atlantic City School District, and were thus acting under color of state law.

106.    Defendant ESS had a duty to properly hire Frazier, vet and investigate Frazier, and properly train and supervise Frazier, and protect John Doe from sexual attack, and it did not fulfill that duty.

107.    Despite ESS's duty, and its knowledge that Frazier was unfit to teach and come into contact with school-age children, whether actual or constructive, Defendant ESS failed to timely hire, vet, intervene, supervise, and investigate, and thus, subjected John Doe to violations of his right to personal security, bodily integrity, and equal protection under the law.

108.    John Doe has suffered extreme emotional distress and psychological damage, and his character and standing in his community have suffered, as a direct and proximate result of the sexually abusive and exploitative conduct that was furthered by the failures of Defendant La'Quetta Small, manifesting deliberate indifference towards John Doe's rights under Title IX.

**COUNT II**
**§ 1983 VIOLATION**
**FAILURE TO TRAIN AND SUPERVISE**
**AS TO LA'QUETTA SMALL**
**(42 U.S.C. § 1983)**

109.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

110.    Under the Fourteenth Amendment to the United States Constitution, John Doe had the right as a public school student to personal security, bodily integrity, and equal protection under the law.

111.    Defendant Kayan Frazier and Defendant La'Quetta Small both repeatedly violated these rights of John Doe.

112.    Defendants La'Quetta Small and ESS were state actors acting under the color of state law at the time some or all of these violations by Defendant Kayan Frazier, Defendant ESS,  and Defendant La'Quetta Small occurred.

113.    Defendant s La'Quetta Small and ESS adopted policies of inadequate training and supervision within and outside of the school district, and as a result of these inadequate policies, John Doe suffered harm.

114.    Specifically, Defendant La'Quetta Small adopted policies with respect to training of school district administrators and staff that were inadequate insofar as their ability to train these school district employees to, among other things, detect signs of sexual harassment, abuse, or exploitation in students, and to report signs or allegations of same.

115.    Whether allegations of sexual harassment, abuse, or exploitation are based on "reliable information" requires investigation of said allegations, but such an investigation cannot occur but-for reporting of said allegations which itself is only required contingent upon the initial determination by the would-be reporter that the allegations are reliable.

116.    Defendant ESS adopted and implemented policies with respect to training of Frazier and other substitute teachers that were inadequate insofar as their ability to train these teachers  how to properly interact with students and their parents, including proper boundaries as to what information a teacher should provide to students vis-à-vis their parents.

117.    In fact, the Atlantic City School District's own anti-harassment policy (Exhibit "A") is silent with respect to the training of school district employees to detect signs of sexual harassment, abuse, or exploitation in students, and further, only requires verbal reporting for alleged violations that were actually witnessed or upon which they "received reliable information." (*See* Exhibit "A", Section E.)

118.    This policy is paradoxical, untenable, and ultimately leaves an undue amount of discretion in school district employees with respect to the reporting of potential violations.

119.    Further, the Defendant La'Quetta Small adopted policies with respect to supervision of school district administrators and staff that were inadequate insofar as the supervision of these employees by their superiors, such that sexually harassing, abusive, or exploitative conduct by school district employees could not occur, and such that, in the event of any such occurrence, these acts were timely detected and reported.

120.    The Atlantic City School District's anti-harassment policy is silent with respect to the supervision of school district employees by their superiors so as to ensure there is no sexually harassing, abusive, or exploitative conduct perpetrated upon students by school district employees, or to ensure compliance with reporting requirements in the event that such conduct does occur.

121.    Rather, the Atlantic City School District's anti-harassment policy takes a reactive, rather than proactive, approach to such employee misconduct.

122.    Thus, the failures of the Defendants La'Quetta Small and ESS, both in practice and as reflected in both ESS's and the district's lax policies, to adequately train and supervise school district employees (including substitute teachers to be placed by ESS into the schools) amounted to deliberate indifference to the fact that inaction would, and proximately did, result in the violation of John Doe's rights by Defendant Kayan Frazier, Defendant ESS, and by Defendant La'Quetta Small.

123.    Plaintiff and their counsel hereby allege that the subject school that Plaintiff attended during the timeline of his abuse "provided services and amenities normally associated with a home, rather than a school." *Bryson, 909 F. Supp. 2d at 370.*

124.    Defendant La'Quetta Small's conduct at the school, was specific enough to suggest that they had a custodial and/or intimate relationship with John Doe that would support an inference that they were "within John Doe's household." *Id. At 369.*

125.    Defendant La'Quetta Small understood her role, and the facts previously pleaded strongly suggest that Defendant La'Quetta Small stood in *loco parentis* as to John Doe in her house.

126.    Therefore, as principal of the subject School, Defendant La'Quetta Small was "in John Doe's household," and therefore owed him a duty to protect him from the exact type of harm he suffered from.

## COUNT III
## "MASHA'S LAW" VIOLATIONS
## AS TO DEFENDANT KAYAN FRAZIER
## (18 U.S.C. § 2255)

127.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

128.    "Masha's Law" (18 U.S.C. 2255), provides in relevant part that:

> Any person who, while a minor, was a victim of a violation of section… 2251… [or] 2252A… and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustained or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

129.    Defendant Kayan Frazier was criminally charged with violations of 18 U.S.C. 2251, specifically, subsections (a) and (e); and 18 U.S.C. 2252A, specifically, subsections (a)(2)(A) and (b)(1).

130.    John Doe was a victim of Defendant Kayan Frazier's violations of these federal statutes.

131.    John Doe was a minor when these violations occurred.

132.    As a result of Defendant Kayan Frazier's violations of these federal statutes, John Doe has suffered personal injury.

**COUNT IV**
**NEGLIGENCE**
**AS TO ALL DEFENDANTS**

133.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

134.    All Defendants named herein owed a duty of care to John Doe.

135.    Specifically:

    a.    Defendant La'Quetta Small owed John Doe a duty of care as Principal of the Pennsylvania Avenue School, where John Doe was then a student;

    b.    Defendant Kayan Frazier owed John Doe a duty of care as a substitute teacher within the Pennsylvania Avenue School, where John Doe was then a student;

    c.    Defendant Marty Small, Sr. and Defendant La'Quetta Small (in separate act of negligence) owed John Doe a duty of care based upon premises liability to warn John Doe, then a guest in their home, of the known dangerous condition presented by the presence of Kayan Frazier within the home. This duty was heightened by virtue of John Doe Defendant being a minor.

    d.    Defendant ESS owned John Doe a duty of care to properly hire, investigate, test, train, perform background checks on, place, retain, and supervise Defendant Kayan Frazier to protect the minor students in the school where ESS, in conjunction with the other defendants, placed Frazier as a substitute teacher and placed Frazier in proximity with students whom the defendants had a duty to protect.

136.    All Defendants have breached their respective duty of care to Plaintiff's minor child in that they all failed to take ordinary reasonable care in the execution of their respective professional or personal responsibilities imposed by law and as complained of herein.

137.    Specifically, but-for the failure of the above-named Defendants to properly investigate, train, vet, supervise, hire, and place Frazier, and to promptly and effectively respond to the instances of known sexual harassment and abuse perpetrated by Defendant Kayan Frazier, continued sexual harassment and abuse perpetrated by Defendant Frazier upon John Doe on school grounds would not have occurred.

138.    Further, but-for the failure of Defendant Kayan Frazier himself to comport his behavior in a professional manner commensurate with his position as a public school substitute teacher, and to refrain from inflicting sexual harassment and abuse upon a student, the harm which befell John Doe both on and off school grounds would not have occurred.

139.    Finally, but-for the failure of Defendants Marty Small, Sr. and La'Quetta Small to warn Jane Doe or John Doe about Kayan Frazier's known sexual proclivity towards children, or to take reasonable steps to safeguard minor social guests within their home from Frazier, the sexual assault which transpired in the bathroom of the Small home would not have occurred.

140.    It is reasonably foreseeable that John Doe and similarly situated students within the Atlantic City School District, and thus, under the care, supervision, and charge of Defendant Kayan Frazier, could have been harmed in the same or similar manner in which John Doe was harmed when a school district and its constituent administrators and school staff fail to take appropriate and timely action in addressing known teacher-on-student sexual harassment and abuse.

141.    It is also reasonably foreseeable that a minor child social guest within a homeowner's home, such as John Doe within the Small home, could be harmed when said child or their parent

is not warned about the presence within the home of an individual with a sexual proclivity towards children, or if adequate safeguards are not put in place to keep said individual away from children within the home.

142.    Therefore, the respective failures of all Defendants were both the actual and proximate cause of the damages caused to John Doe.

**COUNT V**
**GROSS NEGLIGENCE, RECKLESSNESS**
**AS TO ALL DEFENDANTS**

143.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

144.    All Defendants, as plead in the previous Count (Count IV), had a duty of care towards John Doe to take reasonable steps to prevent Defendant Kayan Frazier from using the authority, access, and instrumentalities afforded him by his position within the Atlantic City School District, to target, groom, and sexually abuse children, including John Doe.

145.    All Defendants acted in a negligent, careless, or reckless manner, and/or in a grossly negligent manner with gross and callous indifference to the consequences, and thus breached their aforestated duties of care.

146.    John Doe was an individual of whom all Defendants knew or should have known of the probability of harm which was foreseeably occasioned by the reckless indifference of the Defendants to the consequences of their actions and/or omissions.

147.    As a direct and proximate result thereo

148.

149.    f, John Doe was caused to suffer and continues to suffer significant and permanent damages.

**COUNT VI**
**ASSAULT AND BATTERY**
**AS TO DEFENDANT KAYAN FRAZIER**

150.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

151.    As complained of herein, Defendant Kayan Frazier, on a multitude of occasions, attempted to, and in fact, did, cause harmful, offensive, and sexually violent physical contact with John Doe.

152.    As a direct and proximate result of the willful, wanton, malicious, and intentional actions of Defendant Kayan Frazier, John Doe has suffered severe physical abuse and extreme emotional distress and psychological damage as previously complained of herein, which may prove to be permanent.

**COUNT VII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AS TO DEFENDANT KAYAN FRAZIER**

153.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

154.    Defendant Kayan Frazier, when engaging in the repeated acts of sexual assault and exploitation of John Doe as complained of herein, acted intentionally or with reckless disregard, so as to cause John Doe significant and permanent damages.

155.    Defendant Frazier's repeated acts of sexual assault and exploitation of John Doe as complained of herein constitutes behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

156.     Further, the Defendants acted intentionally or with reckless disregard in failing to timely report, intervene, investigate, and/or address the outrageous sexual misconduct of Defendant Frazier.

157.     Given the knowledge of Frazier's conduct possessed by the Defendants and the power and authority afforded them in their respective positions within the school district to stop same, their failure to act so as to safeguard John Doe from further sexual abuse constitutes behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

158.     The actions, therefore, of Defendant Frazier actually and proximately caused damages to John Doe so severe that no reasonable person, let alone a minor child, could be expected to endure it, and thus, has resulted in significant and permanent harm.

**COUNT VIII**
**NEGLIGENCE**
**AS TO ESS**

159.     Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

160.     Defendant ESS named herein owed a duty of care to John Doe.

161.     Specifically:

a.   Defendant ESS owed John Doe a duty of care as a provider of substitute teachers to the Pennsylvania Avenue School, where John Doe was then a student;

b.   Specifically, Defendant ESS owned John Doe a duty of care to properly hire, investigate, test, train, perform background checks on, place, retain, and supervise Defendant Kayan Frazier to protect the minor students in the school where ESS, in conjunction with the other defendants, placed Frazier as a substitute teacher and

27

placed Frazier in proximity with students whom the defendants had a duty to protect.

162.   Defendant ESS  has breached its duty of care to Plaintiff's minor child in that ESS failed to take ordinary reasonable care in the execution of its professional or personal responsibilities imposed by law and as complained of herein.

163.   Specifically, but-for the failure of the above-named Defendant to properly investigate, train, vet, supervise, hire, and place Frazierthe sexual harassment and abuse perpetrated by Defendant Frazier upon John Doe on school grounds would not have occurred.

164.   It is reasonably foreseeable that John Doe and similarly situated students within the Atlantic City School District, and thus, under the care, supervision, and charge of Defendant Kayan Frazier, could have been harmed in the same or similar manner in which John Doe was harmed when an entity responsible for placing substitute teachers within a school district fail to take appropriate and timely action to make certain that the teacher's it places are properly vetted, investigated, trained, and supervised.

165.

Therefore, the respective failures of all Defendants were both the actual and proximate cause of the damages caused to John Doe.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jane Doe, on behalf of John Doe, her minor child, prays for relief as to all counts as follows:

1) For judgement against the Defendants jointly, severally, and alternatively, for general, compensatory, and punitive damages, with interest;

2) Reasonable attorney's fees and costs of suit pursuant to 18 U.S.C. 2255; and

3)  For such other further relief as the Court may deem equitable and just.

Additionally, as to Count III, Plaintiff prays for judgement against Defendant Kayan Frazier in the form of the liquidated damages statutorily imposed under 18 U.S.C. 2255 in the amount of $150,000 per violation.

**LENTO LAW GROUP, P.C.**

***ss/ Lawrence A. Katz, Esquire***
LAWRENCE A. KATZ
Counsel for Plaintiff.
NJ Bar No. 027051988
LENTO LAW GROUP, P.C
3000 Atrium Way - Suite 200
Mt. Laurel, NJ 08054
P: (856) 652-2000   Ext. 497
F: (856) 375-1010
lakatz@lentolawgroup.com

MICHAEL FARHI, ESQUIRE
Co-Counsel for Plaintiff
KATES NUSSMAN ELLIS
FARHI & EARLE, LLP
190 Moore Street, Suite 306
Hackensack, NJ 07601
(201) 488-7211 (PH)
mfarhi@nklaw.com

DATED:  April 10, 2023